IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BRUNSON COMMUNICATIONS, INC

     *Plaintiff,*

                                        Civil Action No.: 02 CV. 3223

v.

ARBITRON, INC.

     *Defendant.*

<u>ORDER</u>

     AND NOW, this _ day of _, 2002, upon consideration of Defendant Arbitron, Inc.'s Motion to Dismiss pursuant to F.R.Civ.P. 12(b)(6), and Plaintiff s opposition thereto, it is hereby

     ORDERED, ADJUDGED and DECREED that said motion is GRANTED, the within action be, and the same hereby is, DISMISSED with prejudice for failure to state a claim.

                           BY THE COURT:

                           U.S.D.J.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

-------------------------------------------------------------- x

BRUNSON COMMUNICATIONS, INC

        *Plaintiff,*

                                      Civil Action No.: 02 CV. 3223

      v.

ARBITRON, INC.

        *Defendant.*

-------------------------------------------------------------- *x*

## DEFENDANT'S MOTION TO DISMISS PURSUANT TO F.R.CIV.P. 12(b)(6)

    Defendant Arbitron, Inc., by its undersigned attorneys, hereby moves this Court for an Order, pursuant to F.R.Civ.P. 12(b)(6), dismissing Plaintiff s Complaint with prejudice. The grounds for said Motion are that the Complaint fails to allege facts upon which relief can be granted as a matter of law. In support of its said Motion, Defendant incorporates the facts and argument set forth in its attached Memorandum of Law and the Declaration of Marshall Snyder, with Exhibits.

    Defendant requests oral argument of this Motion.

                           Respectfully submitted,

                           **SPECTOR GADON & ROSEN, P.C.**

Date: July 8, 2002

                           By-
                                 David B. Picker, Esq.
                                 Bruce Bellingham, Esq.
                           7 Penn Center
                           1635 Market Street, 7''' Floor
                           Philadelphia, PA 19103
                           (215) 241-8888 / (215) 241-8844 (Fax)

Alfred Fabricant
Marc Lieberstein
OSTROLENK, FABER, GERB & SOFFEN,
    LLP
1180 Avenue of the Americas
New York, New York 10036
Tel.: (212) 382-0700
Fax: (212) 382-0888

Attorneys for Defendant Arbitron, Inc.

FA27745\00 I \p)eadings\Dismiss.mot.wpd

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

                                                     x

BRUNSON COMMUNICATIONS, INC

        Plaintiff,

                                   Civil Action No.: 02 CV. 3223

    v.

ARBITRON, INC.

        *Defendant.*

MEMORANDUM IN SUPPORT OF MOTION TO
<u>DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)</u>

                    SPECTOR GADON & ROSEN, P.C.
                    David B. Picker, Esq.
                    Bruce Bellingham, Esq.
                    7 Penn Center
                    1635 Market Street, 7" Floor
                    Philadelphia, PA 19103
                    (215) 241-8888 / (215) 241-8844 (Fax)

                    Alfred Fabricant
                    Marc Lieberstein
                    OSTROLENK, FABER, GERB & SOFFEN,
                      LLP
                    1180 Avenue of the Americas
                    New York, New York 10036
                    Tel.: (212) 382-0700
                    Fax: (212) 382-0888

                    Attorneys for Defendant Arbitron, Inc.

# TABLE OF CONTENTS

PaLye No.

1. PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . I

11. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ARGUMENT
5

    A. The Rule 12(b)(6) Standard . . . . . . . . . . . . . . . . . . . .

     B. Plaintiffs Shennan Antitrust Claims Fail as a Matter of Law . . . . . . . . . . . . . . . . . . . 6

     1. Plaintiff s Complaint Fails to Allege Facts to Support
       an Antitrust Claim Under § I of the Sherman Act        . . . . . . . . .

        (a) Plaintiff s Complaint Fails to Sufficiently Allege a Conspiracy . . . . . . . . . . . . 8
        (b) Plaintiff Fails to Define and Allege a Plausible Market . . . . . . . . . . . . . . . . . . 9

       (c) Plaintiff s Complaint Fails to Allege
          Any Cognizable Antitrust Injuly     . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
          . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

     2. Plaintiff s Complaint Fails to Allege Facts to
       Support a Claim Under §2 of the Sherman Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
       (a) Plaintiff Failed to Plead Intent Sufficigptly . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
       (b) Plaintiff Fails to Sufficiently Plead Antitrust Injua . . . . . . . . . . . . . . . . . . . . . . 15
       (c) Plaintiff Allegations Belie Any Probability of Monopol . . . . . . . . . . . . . . . . . . 15

   C.          PLAINTIFF'S LANHAM ACT CLAIM SHOULD BE DISMISSED
       BECAUSE THE ARBITRON PPM TEST DATA IS NOT A
        COMMERCIAL SERVICE NOR USED FOR COMMERCIAL PURPOSES . . . . . . 16

       (a) The Complaint Does Not Allege Arbitron Made
         Any False Statements About Brunson or WGTW . . . . . . . . . . . . . . . . . . . . . . . 17

       (b) Failure to Include WGTW in the PPM Test
         Does Not Constitute a Lanham Act Violation . . . . . . . . . . . . . . . . . . . . . . . . . 17

## TABLE OF CONTENTS (continued)

. . . . . . . . . . . . . . . . . 5   . 7

Page No.

(c)        The Alleged Deception Is Immaterial,
        Unlikely to Influence Purchasing Decisions
        and/or Result in Declining Sales to Plaintiff . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

(d)        Arbitron's Conduct and Statements About Its PPM Test
        Data Were Not "Commercial Advertising or Promotion . . . . . . . . . . . . . . . . . . 18

D. PLAINTIFF'S DISPARAGEMENT CLAIM IS BASELESS . . . . . . . . . . . . . . . . . . . . . . . . . . 19
E. PLAINTIFF'S COMPLAINT FAILS TO ALLEGE FACTS
SUPPORTING ITS TORTIOUS INTERFERENCE CLAIM . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
IV. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

-ii-

TABLE OF AUTHORITIES

Paee No.

Cases

*Allstate Transp. Co., Inc. v. Southeastern Pennsylvania Transp. Auth.,*
1998 U.S. Dist. LEXIS 1740, *10 (E.D. Pa. 1998) (Appendix 8) . . . . . . . . . . . . . . . . . . . . . . 21-23

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,*
    429 U.S. 477 (1977)

*City ofPittsburgh v. West Penn. Power Co.,*
    147 F.3d 256 (3d Cir 1998)

*Commonwealth ofPennsylvania v. PepsiCo, Inc.,*
    836 F.2d 173 (3d. Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ....

    *Copperweld Corp. v. Independence Tube Corp.,*
    467 U.S. 752 (1984) .

    *Deep South Pepsi-Cola Bottling Co. v. PepsiCo, Inc.,*
    1989-1 Trade Cas. (CCH) ¶ 68,560 1989 U.S. Dist. LEXIS 4639,
    18-19 (S.D.N.Y. 1989) (Appendix 4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10-12

    *Edward J. Sweeney & Sons, Inc. v. Texaco, Inc.,*
    637 F.2d 105 (3d Cir. 1980) .

    *Eichorn v. AT&T Corp.,*
    248 F.3d 131 (3d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7-9,11,12

    *Garshman v. Universal Resources Holding, Inc.,*
    824 F.2d 223 (3d Cir. 1987)

    *Kelco Disposal, Inc. v. Browning-Ferris Industries, Inc.,*
    845 F.2d 404 (2d Cir. 1988)

    *Lights of America, Inc. v. Consumers Union of United States, Inc.,*
    2002 Cal. App. Lexis 2000 (2002) (unpublished) (Appendix 6) . . . . . . . . . . . . . . . . 20

    *Lynchval Systems, Inc. v. Chicago Consulting Actuaries, Inc.,*
    1996 U.S. Dist. Lexis 14568, *21 (N.D. 111. 1996) (Appendix 7) . . . . . . . . . . . . . . 20

-iii-

13 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5-6

. . . . . . . . 8 . . . . . . . . . . . . 8 . . . . . 6 . . . . . . . . . . 12

<u>TABLE OF AUTHORITIES</u>

Page No.

*Mathews v. Lancaster General* Hosp.,
87 F.3d 624 (3d Cir. 1996)
*Mogul v. General Motors Corp.,*
391 F. Supp. 1305 (E.D. Pa. 1975), *affd,* 527 F.2d 645 (3d Cir. 1976) . . . . . . . . . . . . . . . . . . . . . . .  10
*Monsanto Co. v. Spray-Rite Serv. Corp.,*
465 U.S. 752 (1984)
*Morse v. Lower Merion School Dist.,*
132 F.3d 902 (3d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5
*Oreck Corp. v. Whirlpool Corp.,*
579 F.2d 126 (2d Cir.), *cert. denied,* 439 U.S. 946 S.Ct. 340, 58 L.Ed.2d 338 (1978) . . . . . . . . . .  13
*Pastore v. Bell Telephone Co. of Pennsylvania,*
24 F.3d 508 (3d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14,16
*Queen City Pizza v. Domino's Pizza,*
124 F.3d 430 (3d Cir. 1997)
*Queen City Pizza v. Domino's Pizza*
124 F.3d 430 (3d Cir. 1997).
*Re-Alco Industries, Inc. v. National Centerfor Health Education, Inc.,*
812 F. Supp. 387 (S.D.N.Y. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7,13
*Rossi v. Standard Roofing, Inc.,*
156 F.3d 452 (3d Cir. 1998)
*Rototherm Corp. v. Penn Linen & Uniform Serv., Inc.,*
1997 U.S. Dist. LEXIS 10057, *41 (E.D. Pa. 1997) (Appendix 3) . . . . . . . . . . . . . . . . . . . . . . .  6,21-22

*Rutman Wine Co. v. E. & J Gallo Winery,*
829 F.2d 729 (9" Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ...

Synygy, *Inc. v. Scott-Levin, Inc.,*
51 F.Supp.2d 570 (E.D. Pa. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17-21

-iv-

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9       . . . . . . 8
. . . . . . . . . . . . . . . . . . . . . . 9   . . . . . . . . . . . . . . . . . . . . . . . . 8
. . . 13
. . . . . . . . . . . . . . . . . . . 7

<u>TABLE OF AUTHORITIES</u>

<u>Pa2e No.</u>

*The Arbitron Company v. Tropicana Product Sales, Inc.,*
1993 U.S. Dist. Lexis 5587, *33-34 (S.D.N.Y. 1993) (Appendix 5) . . . . . . . . . . . . . . . . . . .  15,16
*Tunis Bros. Co., Inc. v. Ford Motor Co.,*
952 F.2d 715 (3d Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9-10,13
*U.S. Healthcare, Inc. v. Blue Cross Greater Phila.,*
898 F.2d 914 (3d. Cir.), *cert. denied,* 498 U.S. 816 (1990)
*Unisource Worldwide, Inc. v. Heller,*
1999 U.S. Dist. LEXIS 8530, *8 (E.D. Pa. 1999) (Appendix 2) .
*United States v. E.I. Du Pont de Nemours & Co.,*
351 U.S. 377 (1956) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10,11

<u>Federal Statutes</u>

15 U.S.C. § I . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7-9
15 U.S.C. §2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

<u>Federal Rules of Civil Procedure</u>

Fed. R. Civ. Proc. 12 (b)(6)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4,5
Fed. R. Civ. Proc. 56  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  I
Fed. R. Civ. Proc. 8(a)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  . . . . . . . . . . .

Fed. R. Civ. Proc. 9(g) ...                . . . . . . . . . . . . . . . . . . . . . .

. . . 17      . . . . 5                    . . . 6

. . . . . . . . . . . . . . . . . . . . . . 21

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

------------------------------------------------------------------ x

BRUNSON COMMUNICATIONS, INC

        *Plaintiff,*

                                 Civil Action No.: 02 CV. 3223 V.

ARBITRON, INC.

        *Defendant.*

------------------------------------------------------------------ X

### MEMORANDUM IN SUPPORT OF MOTION TO
### DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)

        Defendant Arbitron, Inc. ("Arbitron"), by its undersigned attorneys, respectfully submits this Memorandum of Law in support of its Motion, pursuant to F.R.Civ.P. 12(b)(6), to dismiss

the Complaint of Plaintiff Brunson Communications, Inc. ("Brunson"or "Plaintiff") for failure to state a claim.

### 1.      PRELIMINARY STATEMENT

        Brunson's Complaint purports to set forth four claims for relief. (i) antitrust injury under Sections 1& 2 of the Shennan Act; (ii) false advertising under the Lanham Act; (iii) commercial disparagement, and; (iv) tortious interference with prospective contractual relations. A copy of the Complaint is annexed hereto as Appendix 1. Defendant Arbitron, Inc. ("Arbitron") files the instant Motion to Dismiss because the Complaint fails to set forth prima facie allegations necessary to support each ofthese claims and also fails to sufficiently plead sufficient factual allegations essential to the survival of its claims. Plaintiffs claims amount to nothing more than conclusory and speculative allegations which are legally insufficient to allow it to proceed with this lawsuit.

1



The gravamen of Plaintiff s lawsuit is that Arbitron has harmed Plaintiff s ability to compete in the Philadelphia broadcast television market. Plaintiff at the same time admits, however, that Arbitron is not even a competitor of Brunson. Complaint, IT 5 and 9. Brunson owns and operates a television station, WGTW Channel 48 ("WGTW') in the Philadelphia area and is in the business of broadcasting television programs and selling media time on its station. Complaint, 15. Arbitron is not a television broadcaster at all. Complaint, 19. Arbitron is a media research company which is primarily in the business of licensing proprietary syndicated market research data, including radio audience measurement data, to its customers throughout the United States.' Snyder Decl. at T 3. Arbitron's customers include radio broadcasters, advertising agencies and advertisers. Snyder Decl. at 13. Arbitron does not offer to its customers a commercial product which measures broadcast television viewing audiences in any U.S. city including Philadelphia. Snyder Decl. at 13.

Notwithstanding these irrefutable facts Plaintiff alleges, in essence, that it has suffered a competitive injury at the hands of Arbitron as a result of the **testing** by Arbitron in Philadelphia of a new type of experimental audience ratings meter for television and radio known as Arbitron's Personal Portable Meter ("PPM"). Complaint at 11 10, 32. In sum and substance, Plaintiff complains that WGTW was not timely included in Arbitron's initial test and therefore its viewership was not reported in the May/June 2002 distribution of test data which was distributed by Arbitron on a trial basis in July 2002. Complaint at 121.

The PPM has been in development by Arbitron for several years and its first and only U.S. test city is Philadelphia.. Snyder Decl. at 15. Arbitron is not commercially marketing the test data

' Arbitron has submitted the Declaration of Marshall L. Snyder ("Snyder Decl."), as well as supporting exhibits thereto. Should the Court deem it necessary, this motion may also be considered a motion for summary j udgment under Fed. R. Civ. Proc. Rule 5 6.

2

which it is compiling from the Philadelphia test and has only provided test data information to participants for evaluation purposes. Snyder Decl. at ¶ 7. Moreover, all participants who receive the PPM test data, are bound by written agreement not to use the PPM test data for commercial purposes. Snyder Decl. at 17 and Exhs. I and 2. Participants who receive the PPM test data have been advised and have agreed in writing that the PPM data is

> [B]eing provided solely as an advance opportunity to evaluate current data generated from the test deployment of **Arbitron's PPM** technology. This Evaluation Data and application may be used only by Licensee for internal purposes and analysis purposes. The Licensee is not permitted to use the evaluation data to buy, plan or sell media time.

*See* Snyder Decl. at 17 and Exhs. 1, 2. Arbitron also places a "WARNING" in each release of PPM test data which states that "any use of these estimates and data for the buying, planning and/or selling of media time is strictly prohibited." Snyder Decl. at 17.

Arbitron is solely responsible for the development and testing of the PPM and no other entity, including the Nielsen company, has played any role in the installation of test equipment, the encoding or decoding of test codes or the gathering or reporting of PPM test data. Snyder Decl. at ¶ 8. As Plaintiff alleges it is the Nielsen company, and not Arbitron, which commercially provides television audience ratings data to its subscribers in Philadelphia and elswhere in the United States. Complaint at 117. Plaintiff does not and cannot deny that at all times material to this action WGTW viewership has been and continues to be reported by Nielsen as part of its commercial ratings service.

As set forth more fully below, Plaintiff s claims are ripe for dismissal because of serious and material pleading deficiencies. On the Sherman Act claims, Plaintiff has simply failed to plead an agreement or conspiracy to violate the antitrust laws other than to allege a "bare bones" statement 3

of conspiracy without any supporting facts. In addition, Plaintiff has failed to allege a plausible definition of the relevant product market in which an injury to competition to the marketplace as a whole (and not an alleged injury to an individual competitor) has been alleged. Most blatant, of course, is Plaintiffs failure to allege any antitrust injury to competition in the marketplace. The Complaint merely asserts that Plaintiff has been injured as a result of Arbitron's exclusion of WGTW from the recent testing. Complaint at 138.

With respect to Plaintiff s Lanham Act and commercial disparagement claims, Plaintiff has not and can not allege that Arbitron has made any intentionally false or misleading statements about WGTW or its viewership. The Complaint fails to allege any disparaging statement by Arbitron and there is no support in the law for Plaintiff s allegation that Arbitron's omission of WGTW from the PPM test constitutes disparagement. Not only does Plaintiff fail to allege the publication of any false statements at all about WGTW or its business but, to the contrary, Plaintiff admits that Arbitron offered to include in its March test data release a statement to the effect that no test data from WGTW had been collected due to the station not being encoded in time to be included in the test report. Complaint, 130. Intent to harm Plaintiff is a prima facie element of a Lanham Act false advertising claim as well as a claim for commercial disparagement and is completely absent here.

Finally, Plaintiff s claim for tortious interference with prospective contractual relations is woefully deficient. Plaintiff s own Complaint concedes that the Arbitron data was merely test data and that Nielsen, not Arbitron, provides **commercial** television ratings to the marketplace. Complaint, 117. Plaintiff has not and can not plead that particular anticipated contracts would, with reasonable probability, have been entered into with WGTW - notwithstanding the Nielsen ratings for the period -- but for Arbitron's failure to include WGTW in its initial test report. This is particularly true in light ofthe fact that all participants agreed as a condition of receiving the test data

4

that they would not use the test data "to buy, plan or sell media time" Snyder Decl. at T 7. The dismissal of Plaintiff s claims is now mandated.'

11.    ARGUMENT

    A.                                                                    The Rule 12(b)(6) Standard

    While the Court must accept as true all of the allegations in the pleadings and must give Plaintiff the benefit of every favorable inference that can be drawn from the Complaint's allegations, this general rule is not without limitations. *Morse v. Lower Merion School Dist.,* 132 F.3d 902, 906 (3d Cir. 1997). As the Third Circuit explained in *Morse,* "a court need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss. " Id. at 906 (citations omitted). A Complaint is properly dismissed when a plaintiff "can prove no set of facts in support of the claim that would entitle him to relief " U*nisource Worldwide, Inc. v. Heller,* 1999 U.S. Dist. LEXIS 8530, *8 (E.D. Pa. 1999) (see Appendix 2, attached hereto).

    On a Rule 12(b)(6) motion, while the Court must primarily consider the allegations contained in the Complaint, certain documents may be taken into account. City *ofPittsburgh v. West Penn.*

    ' Although we believe unnecessary for the resolution of the present motion under Rule 12 (b)(6), it is important to note that WGTW was included as a participant as soon as it indicated its willingness to install the necessary technical equipment. Snyder Decl. at 15. In fact, throughout the test period Arbitron has added media outlets to the PPM test, and upon request did the same
for Brunson's WGTW station. Initially, after installation of its encoder, WGTW experienced
technical difficulties with its installation of Arbitron's PPM test encoder. Arbitron then assisted WGTW to correct the problems, and also took steps to notify recipients of the PPM test data that the media outlets included in the report represented only those outlets that were properly
encoding their signal for greater than 90% of the days in that survey period. Therefore, WGTW data was not included in the July, 2002 release of April/N4ay data. Snyder Decl. 15 and Exh. 3. The PPM at WGTW's location is now working properly and WGTW data will be included in
future test repots provided that WGTW continues to properly encode its data in accordance with Arbitron's standards and will receive copies of those reports provided that Plaintiff agrees to
execute the participant's agreement (Exhibit 2 to the Snyder Decl.) which, to date, Plaintiff has been unwilling to do. Snyder Decl. at 19 and 10, Exh. 4.

*Power Co.,* 147 F.3d 256, 259 (3d Cir 1998). Of particular importance to the instant case, the *City ofPittsburgh* Court explained that "a court may consider an undisputedly authentic document that a defendant attaches to a motion to dismiss if the plaintiff s claims are based on that document." Id. at 259 (citations omitted). In this case, documents such as the PPM Addendum Agreement, PPM Data Evaluation Agreement and Arbitron PPM test data (Snyder Decl. Exhs. 1, 2 and 3 respectively) must be considered.

## B.        Plaintiffs Sherman Antitrust Claims Fail as a Matter of Law

Although antitrust pleadings are governed by Rule 8(a) of the Federal Rules of Civil Procedure, a complaint must plead adequately each and every element of an antitrust violation. Courts have properly dismissed antitrust claims on the pleading where the plaintiff has failed to state facts sufficient to meet the necessary elements of an antitrust claim. As one court in this district explained,

> We should not shy away from dismissing an antitrust claim that is vague and conclusory in nature, for allegations of Section I conspiracy must be plead with a degree of specificity. 'A general allegation of conspiracy without a statement of the facts is an allegation of a legal conclusion and insufficient of itself to constitute a cause of action.'

*Rototherm Corp. v. Penn Linen & Uniform Serv., Inc.,* 1997 U.S. Dist. LEXIS 10057, *41 (E.D. Pa. 1997) (citations omitted) (see Appendix 3, attached hereto). The Third Circuit has held that dismissing antitrust claims on the pleadings is appropriate where, as in the instant case, the plaintiff could not succeed as a matter of law on the facts presented. *Garshman v. Universal Resources Holding, Inc.,* 824 F.2d 223, 230 (3d Cir. 1987) ("The allegation of unspecified contracts with unnamed other entities to achieve unidentified anti-competitive effects does not meet the minimum standards for pleading a conspiracy in violation of the Shennan Act."). Accordingly, an antitrust 6

complaint should be dismissed where a "plaintiff has failed adequately to define the relevant product market, to allege antitrust injury, or to allege conduct in violation of the antitrust laws." *Re-Alco Industries, Inc. v. National Centerfor Health Education, Inc.,* 812 F. Supp. 387, 391 (S.D.N.Y. 1993). As demonstrated below, Plaintiff has failed to meet this pleading burden.

### 1.    Plaintiffs Complaint Fails to Allege Facts to Support an Antitrust Claim Under §1 of the Sherman Act

The Sherman Act Section 1, 15 U.S.C. § 1, provides, in pertinent part:

> Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal ...

To state a cause of action under the Sherman Act, 15 U.S.C. § 1, courts apply the "rule of reason test,"' which requires: (1) that the defendants contracted, combined or conspired among each other; (2) that the combination or conspiracy produced adverse, anti-competitive effects within the relevant product and geographic markets; (3) that the objects of and the conduct pursuant to that contract or conspiracy were illegal; and (4) that the plaintiffs were injured as a proximate result of that conspiracy. *Queen City Pizza v. Domino's Pizza,* 124 F.3d 430, 442 (3d Cir. 1997).

Based on this standard, Plaintiff s pleadings are deficient as a matter of law as they do not sufficiently identify the other entities of the alleged conspiracy, the nature of the contract or agreement reached between the alleged co-conspirators, the concerted action taken by the alleged

' The "rule of reason" test is controlling unless the allegations fall into one of the categories judicially determined to be illegal *per se.* Activities which have been held to be illegal *per se* under the Sherman Act are "group boycotts, price fixing, resale price maintenance, tying arrangements and reciprocal dealing." *Eichorn v. AT&T Corp.,* 248 F.3d 131, 138 (3d Cir. 2001). Such allegations are not present here.

7

co-conspirators, the proximate injury caused by the conspiracy, or particularly describe how the alleged conspiracy produced anti-competitive effects in the relevant market.

(a)          **Plaintiff's Complaint Fails to Sufficiently Allege a Conspiracy**

To establish the conspiracy element above, Plaintiff must show concerted action, an essential element of the claim under §1 of the Sherman Act. *See Copperweld Corp. v. Independence Tube* Corp., 467 U.S. 752, 771 (1984) ("Section I of the Sher-man Act ... reaches unreasonable restraints of trade effected by a 'contract, combination ... or conspiracy' between *separate* entities. Itdoesnot reach conduct that is wholly unilateral.") (emphasis in original) (citations omitted). "Unilateral activity, no matter what its motivation, cannot give rise to § I liability, *see Edward J Sweeney & Sons, Inc. v. Texaco, Inc.,* 637 F.2d 105, 110-11 (3d Cir. 1980), because a company "has the right to deal, or refuse to deal, with whomever it likes, as long as it does so independently." *Rossi v. Standard Roofing, Inc.,* 156F.3d452,461 (3d Cir. 1998) (quoting *Monsanto Co. v. Spray-RiteServ. Corp.,* 465 U.S. 752, 761 (1984)). Moreover, Plaintiff is required as a matter of law to plead its allegations of conspiracy with particularity in order to survive a motion to dismiss. *Commonwealth of Pennsylvania v. PepsiCo, Inc.,* 836 F.2d 173, 181 (3d Cir. 1988). This is an exception to the notice pleadings requirements under Fed.R.Civ.P. Id.

Even assuming that all of the facts alleged in Plaintiff s Complaint herein are true, Plaintiff does not sufficiently allege a conspiracy between Arbitron and any entity let alone plead that conspiracy with particularity. For example, Plaintiff alleges only that "Arbitron was motivated in its false and misleading activity by **its own selfish desire** to obtain the benefit of working with the large network, plaintiff s competitors, who have most of the outlets in the markets." Complaint, 131 (emphasis added). This allegation of "selfish" unilateral activity does not state a claim for a violation of the Sherman Act as it fails to allege the required conspiracy.

8

Plaintiff also alleges that "Arbitron has utilized its monopoly power, in and with the assistance of Nielsen, and in concert with plaintiff s competitors, to promote and effect the exclusion from the market ... of plaintiff." Complaint, ¶ 38. Yet again, this asserted conclusion by Plaintiff of "assistance" by Neilsen and some undisclosed action in "concert" with Plaintiffs undisclosed 44competitors" is nothing in J ore than a vague, bare-bones conclusion of liability. Plaintiff fails to plead with particularity what "assistance" Nielsen provided and fails to identify the other «competitors" who have participated in this agreement or conspiracy to injure Plaintiff. Nor does Plaintiff address how Arbitron, a radio ratings business, has somehow obtained a monopoly over the television ratings business. *See* Complaint, 19.

The essence of Plaintiffs claims lies in the fact that Arbitron conducted a **test in Philadelphia** which allegedly excluded WGTW and that Arbitron thus failed to include WGTW viewership inforination in its test report. On its face, these allegations have nothing to do with anyone except Arbitrion and WGTW. Accordingly, the Complaint's allegations of Arbitron's unilateral activity in connection with its PPM test system, as well as its alleged unilateral act to omit Plaintiffs WGTW television station from the initial releases of PPM test data, do not state a claim under § I of the Sherman Act.

(b)       **Plaintiff Fails to Deflne and Allege a Plausible Market**

The purpose of the Sherman Act is to protect competition in the marketplace, not an alleged injury to an individual competitor. *Mathews v. Lancaster General Hosp.,* 87 F.3d 624,641 (3d Cir. 1996). Accordingly, under both Sections I and 2 of the Sherman Act, the courts have required that a complaint must allege a plausible definition of the relevant product market in which the injury to competition occurred. *Eichorn v. AT&T Corp.,* 248 F.3d 131,147- 48 (3d Cir. 2001); *Queen City Pizza v. Domino's Pizza,* 124 F.3d 430,437 (3d Cir. 1997); *Tunis Bros. Co., Inc. v. Ford Motor Co.,* 9

952 F.2d 715, 726 (3d Cir. 1991); *Mogul v. General Motors Corp.,* 391 F. Supp. 1305, 1312-13 (E.D. Pa. 1975), *affd,* 527 F.2d 645 (3d Cir. 1976); *Deep South Pepsi-Cola Bottling Co. v. PepsiCo, Inc.,* 1989-1 Trade Cas. (CCH) 168,560, 1989 U.S. Dist. LEXIS 4639, 18-19 (S.D.N.Y. 1989) (quoted below) (see Appendix 4, attached hereto). The relevant product market must include all products that are reasonably interchangeable. *United States v. E.L DuPont de Nemours &Co.,* 351 U.S. 377, 393 (1956).

Plaintiff s Complaint does not attempt to define any relevant product market in connection with its antitrust claims. Is the market the television audience measurement market in Philadelphia, the market for Arbitron PPM test data in Philadelphia or the television broadcast market in general? For this reason alone the Sherman Act claims must be dismissed.' If we assume for argument's sake that Plaintiff was attempting to define the relevant product market as either (i) the market in **Philadelphia for Arbitron's PPM** test data for television audience ratings, or (ii) the market in Philadelphia for all television audience ratings data, these allegations would nevertheless be legally insufficient to support an antitrust claim.

A single branded product as well as the distribution of a single branded product by a manufacturer or distributor has routinely been found to be too narrow a definition to support an antitrust claim. *See Deep South,* 1989 U.S. Dist. LEXIS 4639 at 19-20. The United States Supreme Court has held that definitions of a market in terms of a single brand of product are inherently implausible. *United States v. E.L Du Pont de Nemours & Co.,* 351 U.S. 377, 393 (1956) ("The determination ofthe competitive market for commodities depends on how different from one another

' Plaintiff s only insight into the relevant product market at issue is a vague statement in the Complaint is that the market injured by the alleged anti-competitive activities is "the market of broadcasting in the Philadelphia SMSA listener Market." Complaint, ¶ 38. 10

are the offered commodities in character or use, how far buyers will go to substitute one commodity for another."). Put simply, to test the charge of defendant that plaintiffs cannot show the requisite market, the Court must discover whether reasonable substitutes for the pertinent product are available to buyers. *Deep South,* 1989 U.S. Dist. LEXIS 4639 at 19-20. *Du Pont* contains a fitting example:

> [O]ne can theorize that we have monopolistic competition in every nonstandardized commodity with each manufacturer having power over the price and production of his own product. However, this power that, let us say, automobile or soft-drink manufacturers have over their trademarked products is not the power that makes an illegal monopoly. Illegal power must be appraised in terms of the competitive market for the product.

*Du Pont,* 351 U.S. at 392-93 (emphasis added). Following *Du Pont,* the Third Circuit explained in *Eichorn* that "[b]y defining the market so narrowly that it only includes the defendants, plaintiffs' proffered geographic and product markets are unrealistic." *Eichorn,* 248 F.3d at 147 (quoting *Du Pont,* 351 U.S. at 395) (internal citations omitted).

In *Deep South* plaintiffs alleged that defendants violated Sections 1 and 2 of the Sherman Act by conspiring to restrain trade and monopolize the market for the purchase and sale of "independent Pepsi-Cola soft drink bottling franchises in the United States." 1989 U.S. Dist. LEXIS at 18. The *Deep South* Court held in pertinent part:

> But the law is clear that the distribution of a **sinsde brand, like the** manufacture of a single brand, does not constitute a leizall
> coanizable market .... This means that just as PepsiCo could not monopolize the market for soft drinks by monopolizing only PepsiCola soft drinks, it cannot monopolize an alleged market for soft drink distribution of only Pepsi-Cola soft drinks. Plaintiffs have failed to set out a theoretically rational explanation to support its proposed relevant product market. Plaintiffs have failed to allege why Pepsi-Cola franchises are not interchangeable with franchises for the distribution of other soft drinks. Plaintiffs simply delineate the I I

> market without usim the methodology prescribed by the courts to define a market for antitrust 12un2oses -- analysis of the interchangeability of use or the cross-elasticity of demand for potential substitute products.

*Deep South,* 1989 U.S. Dist. LEXIS 4639 at *19-20 (emphasis added) (citations omitted).

In this case, Plaintiff has not and cannot reasonably define a product market for an antitrust violation which will survive a motion to dismiss. To the extent that Plaintiff would define the relevant product market as the market in Philadelphia for Arbitron's PPM test data for television audience measurement, such a definition would fail as a matter of law. Plaintiff s narrow market definition is unrealistic and not plausible. *Eichorn,* 248 F.3d at 147. Alternatively, if the defined market is expanded, as it must be, to include all television audience measurement data and reports in the Philadelphia area, this too necessitates dismissal because the only available commercial television ratings service and data is offered by Nielsen, not Arbitron. Complaint, ¶ 10. Arbitron does not offer a commercial television ratings service. Snyder Decl. at 17. Nor can Plaintiff allege that "reasonable substitutes" to the Arbitron test data are not widely available. Thus, using the broader market definition, Plaintiff s claims fail as well.

(c)        **Plaintiff's Complaint Fails to Allege
Any Cognizable Antitrust Injury**

Plaintiff has avoided expressly alleging the existence of a defined broader market for a very good reason. "[T]he antitrust laws . . . were enacted for the protection of competition, not competitors." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,* 429 U.S. 477, 489 (1977) (emphasis in original). Injury to one competitor, even if true is not a restraint of trade. *Tunis Bros. Co., Inc. v. Ford Motor Co.,* 952 F.2d 715, 725-26 (3d Cir. 199 *1); Kelco Disposal, Inc. v. Browning-Ferris Industries, Inc.,* 845 F.2d 404, 411 (2d Cir. 1988).

*12*

In this case, Plaintiff has not plead any antitrust injury to the defined marketplace as a whole, but rather has only alleged that WGTW was injured by the failure of Arbitron to include the station in its PPM test. Complaint, ¶ 13 - 16. This is simply not an antitrust injury. The Complaint is devoid of allegations that other actual or potential competitors of Plaintiff were foreclosed from the test data and the Complaint contains no other factual allegations showing that overall competition even in the implausible market Plaintiff suggests was affected. Instead, the Complaint only alleges that WGTW was harmed by being left out of the PPM data report. Complaint, 1132-33.

As the Court stated in *Re-Alco Industries:*

> In order to prevail on a monopolization claim, "[p]laintiff must prove an antitrust injury, which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants'acts unlawful." Brunswick Co1p. v. Pueblo Bowl-O-Mat, Inc., 429 U.S. 477, 97 S. Ct. 690, 697, 50 L.Ed.2d 701 (1977) (emphasis in original). An exclusive distributorship agreement between a manufacturer and a distributor causing harm to another distributor is not, standing alone, sufficient to show antitrust injury. Rutman Wine Co. v. E. & J. Gallo WinM, 829 F.2d 729, 735 (9th Cir. 1987). Rather, there is no violation unless the agreement is intended to or actually does harm COMDetition in the relevant market. Id.... Even if there were a conspiracy to shut out Re-Alco, there would not necessarily be an antitrust violation absent an antiCOMDetitive effect on the industry as a whole. See Oreck Co!12. v. Whirlpool CoU2., 579 F.2d 126, 130 (2d Cir.), cert. denied, 439 U.S. 946, 99 S.Ct. 340, 58 L.Ed.2d 338 (1978). Accordingly, plaintiffs claims under the Sherman Act are dismissed.

812 F. Supp. 387, 392 (S.D.N.Y. 1987) (emphasis added; citations deleted).

In this action, Plaintiff has not -- and cannot -- allege antitrust injury to any conceivable market. The Plaintiff alleges that "Arbitron has utilized its monopoly power, in and with the assistance ofNielsen, and in concert with plaintiff s competitors, to promote and effect the exclusion from the market ... of plaintiff." Complaint, 138. This allegation alone is reason to dismiss

Plaintiff s antitrust claim, since Plaintiff admits that the alleged injury was only to itself and not its competitors (and therefore the market).'

### 2.  Plaintiff's Complaint Fails to Allege Facts to Support a Claim Under §2 of the Sherman Act

Sherman Act Section 2, 15 U.S.C. § 2, provides, in pertinent part:

> Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a misdemeanor ....

Plaintiffs cause of action based on §2 of the Sherman Antitrust Act should likewise be dismissed based on the factual deficiencies in the Complaint. A cause of action under 15 U.S.C. §2 requires: 1) that the defendant has engaged in predatory or anti-competitive conduct with;

2) a specific intent to monopolize; and 3) a dangerous probability of achieving monopoly power. *Pastore v. Bell Telephone Co. of Pennsylvania,* 24 F.3d 508, 512 (3d Cir. 1994). None of these factors is present here.

### (a)  Plaintiff Failed to Plead Intent Sufficiently

Plaintiff is unable to show, and has not pled, the necessary intent element in its Complaint. The Complaint makes no allegations that Arbitron intends to monopolize the television audience measurement industry. If the Court accepts Plaintiffs own allegations as true, it is the Neilsen Company -- not Arbitron - which provides commercial television audience measurement data to subscribers in the Philadelphia market. Except for the PPM test data, Arbitron does not offer a

' Plaintiff also pleads only that the omission will cause WGTW harm at some future date with advertisers. Even this alleged injury, however, is belied by the undisputed fact that all
participants in the PPM test program and recipients of the PPM test data are prohibited from using the PPM test data for commercial purposes. Snyder Decl. 15, Exhs. 2, 3.

14

commercial television audience measurement product in Philadelphia or any other U.S. city. Snyder Decl. ~ 2.

The facts alleged in the Complaint also belie intent. For example, Plaintiff alleges that

> [r]eceiving no satisfaction Brunson continued to complain [to Arbitron]. Arbitron then embedded Brunson's signal, but only after completion of the survey. Brunson does not know whether the embedding was debugged in time to provide the data necessary for the second test results Arbitron plans to release at a later date.

Complaint, T20. Plaintiff also admits that Arbitron actually offered "to disclose the fact of the omission in a footnote..." Complaint, 130. Plaintiff, therefore, admits that Arbitron provided Brunson with a PPM encoder to install and offered to assist Brunson from at least April 2002 to the present. Indeed, as of this writing, Plaintiffs WGTW is a current participant in the PPM test program. Snyder Decl. 15. Plaintiff s alleged facts in the Complaint fail to support an allegation of "specific intent" to monopolize.

### (b)        Plaintiff Fails to Sufficiently Plead Antitrust 1pigry

In order to survive a motion to dismiss, Plaintiff must also allege an antitrust injury under §2 of the Sherman Act. *The Arbitron Company v. Tropicana Product Sales, Inc.,* 1993 U.S. Dist. Lexis 5587, *33-34 (S.D.N.Y. 1993) (see Appendix 5, attached hereto). As explained above, Plaintiffs Complaint merely alleges that it has been injured, not that competition in the relevant market as a whole has been injured. Complaint, 139. Accordingly, Plaintiff s antitrust claim under §2 of the Shennan Act should be dismissed. Id.

### (c)        Plaintiff Allegations Belie Any Probabilily of Monopoly

Last, as to the requirement that there be a dangerous probability of achieving monopoly power under §2 of the Sherman Act, Plaintiff s allegations contradict this required element of the antitrust claim. Plaintiff s Complaint admits that Arbitron's PPM is not a commercial service and 15

affirmatively avers that Nielsen provides the television audience measurement data in the Philadelphia market. Complaint 110, 38. Since Arbitron does not even have a commercial television ratings product for sale, it strains credulity that Plaintiff can plead or establish that there is a dangerous probability of Arbitron's achieving monopoly power in the relevant product market at this time. Snyder Decl. at ~ 2.

It is also undisputed that the participants in the Arbitron PPM test program have expressly agreed that the PPM data is not a commercial service, nor to be used for commercial purposes. Consequently, the Complaint fails to allege a plausible product market upon which Arbitron could reasonably achieve monopoly power, or one in which the Court could assess that Arbitron has a dangerous probability of achieving same. Plaintiff's antitrust claim under §2 of the Sherman Act should be dismissed. *See Pastore,* 24 F.3d at 512 (in the absence of showing a market, or that the defendant had monopoly power, the Third Circuit affirmed the lower courts grant of summary judgment dismissing the antitrust claims after converting the motion to dismiss).

C.    **PLAINTIFF'S LANHAM ACT CLAIM SHOULD BE DISMISSED BECAUSE THE ARBITRON PPM TEST DATA IS NOT A <u>COMMERCIAL SERVICE NOR USED FOR COMMERCIAL PURPOSES</u>**

Plaintiff's Complaint is also woefully deficient in pleading the required elements of a Lanham Act claim for false representation. To establish a false representation claim, the Third Circuit has interpreted the Lanham Act to require a plaintiff to show that:

> (1) the defendant has made false or misleading statements as to his or her's or another's products or services; (2) there is actual deception or at least a tendency to deceive a substantial portion of the intended audience; (3) the deception is material in that it is likely to influence purchasing decisions; (4) that the advertised goods traveled in interstate commerce; and 5) that there is a likelihood of in to the jury
>
> plaintiff in terms of declining sales and loss of good will.

16

lot

*Synygy, Inc. v. Scott-Levin, Inc.,* 51 F.Supp.2d 570,575 (E.D. Pa. 1999) (citing U.S. *Healthcare, Inc. v. Blue Cross Greater Phila.,* 898 F.2d 914, 922-23 (3d. Cir.), *cert. denied,* 498 U.S. 816 (1990)).

**(a)**    **The Complaint Does Not Allege Arbitron Made
<u>Any False Statements About Brunson or WGTW</u>**

Plaintiff s Complaint does not allege that Arbitron made a single express statement **about Brunson or WGTW.** For this reason alone, Plaintiff s Lanham Act claim should be dismissed.

**(b)**    **Failure to Include WGTW in the PPM Test
<u>Does Not Constitute a Lanham Act Violation</u>**

It is undisputed that Arbitron did not make or publish false or misleading statements about WGTW. Plaintiff is straining to concoct a Lanham Act claim by alleging that Arbitron's representatives make the following statements about the PPM test in general, a test that did not include WGTW data: (1) that Arbitron would "accurately and creditably measure the performance of the entire market" and (2) that the PPM survey was "accurate, credible and fair." Complaint, ¶ 28. Plaintiff then alleges that because WGTW was not included in the PPM test data, those "misleading" statements somehow injured Plaintiff. However, the omission of WGTW from the PPM test data does not mean that Arbitron's alleged statements about the PPM data are false or misleading. Those statements, must be taken in the context of the test report which expressly advised that viewing data from WGTW had not been included for the report period due to technical difficulties. *See* Snyder Decl. at 15, Exh. 4.

Even if the Court accepted as true the allegations that misrepresentations were made about Arbitron's PPM test data, the Complaint does not allege that these misrepresentations resulted in an injury, or even a likelihood of an injury, to Plaintiff. In this case, Plaintiff seeks not only monetary damages, but also injunctive relief, and hence, it must show actual damages. Synygy, Inc., 51 F.Supp.at577. The Complaint is devoid of any allegations concerning actual damages that Plaintiff 17

may have suffered from the alleged misrepresentations. Indeed, in view of the numerous steps Arbitron has taken to advise participants in the PPM test that the PPM test data is not to be used for commercial purposes, and is for internal use only, there is no set of facts or circumstances that could support Plaintiff s claim for damages. Accordingly, the Lanham Act claim should be dismissed for failure to state a claim upon which relief can be granted.

### (c)    The Alleged Deception Is Immaterial, Unlikely to Influence Purchasing Decisions and/or Result in Declinine Sales to Plaintiff

As noted above, the alleged misrepresentations are immaterial as they do not concern Brunson or WGTW. Moreover, in view of the steps Arbitron has taken to make sure its PPM test data is not viewed as a commercial service, and specifically that the PPM data is not to be used to buy, plan or sell media, Arbitron's alleged misrepresentations could not reasonably have influenced purchasing decisions. Snyder Decl. 17, Exhs. 1, 2 and 3. Further, the Complaint does not allege facts to support the likelihood of in ury from the, alleged misrepresentations.

### (d)    Arbitron's Conduct and Statements About Its PPM Test Data Were Not "Commercial Advertising or Promotion"

To support an alleged Lanham Act claim, the alleged misrepresentation must also take place as part of "commercial advertising or promotion." Id. "Commercial advertising or promotion" requires: (1) commercial speech; (2) **by a defendant in commercial competition with the plaintiff-,** 3) designed to influence customers to buy the defendant's commercial products; and that is sufficiently disseminated to the relevant purchasing public to constitute advertising or promotion within the industry. Synygy, Inc., 51 F.Supp.2d at 576 (emphasis added).

The Complaint does not make a prima facie showing that the alleged Arbitron representations about the PPM test data took place as part of "commercial advertising or promotion" as that term

18

is defined by the Third Circuit. First, Arbitron, a marketing research firm, is not in commercial competition with Plaintiff, a television broadcaster. Thus, the required element that Plaintiff be in commercial competition with Arbitron cannot be met here.

Moreover, the Complaint is devoid of any allegations that Arbitron's statements about its PPM test data, were designed to influence customers to buy Arbitron's PPM test data rather than Plaintiff's television advertising space. These products are apples and oranges. The undisputed facts are that Arbitron's agreements with participants in the PPM test program obligate them not to use the PPM test data for any commercial purposes. That is because the data has been gathered as part of a test for a new ratings meter in the United States. Snyder Decl. 15, Exhs. I and 2. The release of the PPM test data itself has a warning on every page which states "WARNING -- Any use of these estimates and data for the buying, planning and/or selling media time is strictly prohibited." Snyder Decl. ⊤ 7, Exh. 3. Thus, it is clear that at minimum, there can be no Lanham Act violation because Arbitron has taken numerous steps to make sure that the all representations concerning its PPM test data do not influence customers purchasing decisions. Actually, Plaintiff s Complaint fails to allege any facts to support the asserted Lanham Act claim.

## D.      **PLAINTIFF'S DISPARAGEMENT CLAIM IS BASELESS**

Plaintiff s cause of action for disparagement based on Arbitron's omission of WGTW from the PPM test data is baseless. "To state a claim for trade disparagement, a plaintiff must allege 1) a disparaging statement of fact that is untrue or a disparaging statement of opinion that is incorrect; 2) that no privilege attaches to the statement; and 3) that the plaintiff suffered a direct pecuniary loss as a result of the disparagement. Synygy, 51 F.Supp. at 578-579.

First, as noted above, Arbitron has never made any statements about Brunson or WGTW, let alone any disparaging statements. The Complaint fails to allege a single disparaging statement.

Second, there is no case law to support Plaintiff s claim that the omission of WGTW from Arbitron's PPM test data could result in disparagement. It would require a great leap of logic for the law to support a conclusion that by omission, i.e., without even saying anything, one could be liable for disparagement. *See Lights ofAmerica, Inc. v. Consumers Union of United States, Inc.,* 2002 Cal. App. Lexis 2000 (2002) (unpublished) (see Appendix 6, attached hereto); *Lynchval Systems, Inc. v. Chicago Consulting Actuaries, Inc.,* 1996 U.S. Dist. Lexis 14568, *21 (N.D. 111. 1996) (see Appendix 7, attached hereto).

Even ifthe omission ofWGTW could somehow constitute a disparagement, Plaintiff s claim for trade disparagement must fail because it has not plead special damages. Synygy, 51 F.Supp. at 578-579. Here, Plaintiff only alleges that "advertisers will hesitate to advertise with WGTW TV Channel 48 as a result of not having information" (Complaint, 133) and that this "will cause serious economic losses to a profitable and growing station" (Complaint, 122). As a matter of law, such allegations fall well short of the pleading requirements under Fed. R. Civ. P. 9(g) for disparagement, and fail to support Plaintiff's disparagement claim. *Synygy,* 51 F.Supp.2d at 578.

E.         **PLAINTIFF'S COMPLAINT FAILS TO ALLEGE FACTS**
           **SUPPORTING ITS TORTIOUS INTERFERENCE CLAIM**

To state a claim for tortious interference with prospective contractual relations under Pennsylvania law, a plaintiff must allege: (1) a prospective contractual relationship between the plaintiff and a third party; (2) purpose or intent to harm the plaintiff by preventing the relationship from accruing; (3) the absence of privilege or justification on the part of the plaintiff; and (4) the occurrence of actual harm or damage to the plaintiff as a result of the defendant's conduct. *Allstate* 20

*Transp. Co., Inc. v. Southeastern Pennsylvania Transp. Auth., 1998 U.S.* Dist. LEXIS 1740, *10 (E.D. Pa. *1998)* (see Appendix *8,* attached hereto). Plaintiffs Complaint fails to even allege any actual or prospective contractual relationship between Plaintiff and a third party, that Arbitron had an intent to harm the plaintiff, or that there was actual harm as a result of the alleged activities.

Plaintiffs claim for tortious interference with prospective contractual relations must be dismissed because the Complaint fails to identify a single entity, relationship or contract which Plaintiff alleges was not entered into, or lost due to Arbitron's alleged tortious interference. Even at the pleading stage, a plaintiff may not rest a claim for tortious interference with prospective contractual relations on a "mere hope that additional contracts or customers would have been forthcoming but for defendant's interference. Rather, the complaint must allege facts that, if true, would give rise to a **reasonable probability that particular** anticipated contracts would have been entered into." *Rototherm, 1997 U.S.* Dist. LEXIS *10057* at *36-37* (E.D. Pa. *1997)* **(emphasis added)** (citations omitted); *Allstate, 1998 U.S.* Dist. LEXIS *1740* at * 14. The Complaint offers only the conclusory allegation that "advertisers will hesitate to advertise with WGTW TV Channel *48* as a result of not having information." Complaint, *133.* As Plaintiff cannot identify any particular contract that was allegedly lost, much less establish a reasonable probability that the unidentified contract would have been entered into, its claim for tortious interference must be dismissed. *See Rototherm, 1997 U.S.* Dist. LEXIS *10057* at *36-37.*

In *Rototherm,* the plaintiff claimed that the defendants had breached an agreement to allow it to install its pilot system at their laundry facilities. The plaintiff in *Rototherm,* just like plaintiff in the instant action, alleged that the defendant's activities had interfered with the "economic relations between [plaintiff] and its prospective customers." *Rototherm, 1997 U.S.* Dist. LEXIS *10057* at *37.* In fact, the plaintiff in *Rototherm* offered substantially more concrete prospective *21*

injuries than Plaintiffs general allegation that "advertisers will hesitate to advertise with WGTW TV Channel 48." Complaint, $ 33. The plaintiff in *Rototherm* alleged that its "prospective customers included Government facilities as well as the private market, industrial laundries and textile retail companies ... hospitals, hotels and other commercial entities laundry [sic]." Id. The court, however, did not agree, finding that "such vague references to hoped-for contracts are not enough to withstand the defendants' motion to dismiss." Id. If the *Rototherm* plaintiff s alleged contracts were "vague references to hoped-for contracts," **then Plaintiffs alleged contracts** herein amount to nothing more than wishful thinking, particularly in light of the fact that all recipient of the PPM test data expressly agreed not to use the test data for commercial purposes, including any decision to buy, plan or sell media time. Snyder Decl. Exhs. 1, 2.

Further, the Complaint's allegations, as well as the undisputed facts, belie the required element of intent to interfere. Not only is Brunson's WGTW station now an active participant in the Arbitron PPM test program, but since Arbitron first learned of the inadvertent omission of WGTW from its PPM test program in April 2002, Arbitron has taken numerous steps to make sure that WGTW had a PPM encoder, that the PPM encoder was properly installed and operating at WGTW's television station, and that Arbitron was receiving properly coded information from WGTW. Snyder Decl. $ 5. These facts, as plead by Plaintiff in its Complaint, do not support allegations of intent. To the contrary, Arbitron assisted WGTW in correcting the problem **so that Arbitron could receive** properly coded information and make sure that WGTW's PPM test data could be reported in future releases of Arbitron's PPM test survey data. Moreover, if Arbitron receives properly coded information for the month of July from WGTW, it is expected **that Arbitron will release** WGTW's test survey data in the September release of the July PPM test survey data results. Snyder Decl. ~ 6, Exh. 4. Accordingly, neither the Complaint nor the undisputed facts support Plaintiff s cause of 22

action for tortious interference of prospective economic relationships as alleged in the Complaint. Finally, in order to sustain a claim for tortious interference with prospective contractual relations under Pennsylvania law, the Plaintiff must show actual damage to itself. Allstate, 1998 U.S. Dist. LEXIS 1740 at *14. Again, Plaintiff has not plead an actual injury to itself, rather Plaintiff offers only that "advertisers will hesitate to advertise with WGTW TV Channel 48." Complaint ¶ 33. Since Plaintiff cannot identify a single contract that was allegedly interfered with or lost, it is not surprising that Plaintiff can show no actual injuries.

IV.  	CONCLUSION

For all the foregoing reasons, Plaintiffs Complaint should be dismissed in its entirety for failure to state claims upon which relief can be granted.

Respectfully submitted,

**SPECTOR GADON & ROSEN, P.C.**

Date: July 8, 2002

3Q"

By: _____

David B. Picker, Esq.
Bruce Bellingham, Esq.
7 Penn Center
1635 Market Street, 7'" Floor
Philadelphia, PA 19103
(215) 241-8888 / (215) 241-8844 (Fax)

Alfred Fabricant
Marc Lieberstein
OSTROLENK, FABER, GERB & SOFFEN, LLP
1180 Avenue of the Americas
New York, New York 10036
Tel.: (212) 382-0700 / Fax: (212) **382-0888**

Attorneys for Defendant Arbitron, Inc.

23

FA2 7745\00 1 \pleadiiigs\MotionDismiss2.mem.wpd

24

AMcd T#- Fzbriomt~ JL%q.
X= A. Ueb=sWm, 9sq
0-RTK0LM9K, FABEL GERB & SOff W, LLP
118D Amme of the Amcdcas
-New yorl; Z40W Yolk 10036
Tekpbwe: (212) =24M
Fzcsit~- (212) 382-0899

_ Wd -

David IL Picker. Fsq.
Bn" Bouimbaza, E5%
SPECIX)Et~ GADOX & "M. P.C.
Scven Pem **Centw, 163S Ma\*et Sumel, 7L%** FUm
**?bWdrJpb\* Fermylvaiaia 19103**
**Wephorm- (215) Ul-Uss**
FW41milc (215) 2414W

Auonm*3 far Delmdmg

JN THE UMED STATES DISTit= CoURT voR

M PASTERN DNMCT OF PENNSYLVAM&

BRUMON COADIUMCATIONS, INC.

Pbbim

OYU Acdm No.: 02 CV. 3223

AMBITRON, INC.

### DECLARATION OF MARSHALL U WiM V SUPPMT OF MWAWANrg

mumum TO Mm-Iss RIMMIAn To Igm. IFL = P. 12&g6l

00";Q59.1

Zlj6 W * 02 24-513                    3m am              PAGE.92

T            aGSG-LZ8-0Tb-T        **Japstus** Tle4sJR14 I **etiuca**        -lTaza() P_o So tnr

07/08/2001 15:07 YAIL XIZ 4OZ1400        VO I AVAQIULI, A
       JUL 08 '02 15:32 FR PRBITRON LAW    4DEPT12 8613 TO 912123820988-CES P.03
       t-w                                                                    Ea. M

       AL eS '02 14-54 PR FIRSITRCN LAW DEFT. 418 312 8613 TO 91410SM592-ELSO P-02

             4                    1. SNYDM haft do.-Im *a following to be uv a and coma =der Penaby of
Paimr.

          I. I am ft Placutive Vice President of ArMarm Inc. &m4 P=Wkmi of Waddwkic
**I?crsongPwpl&MdarDevelopmemetArbW**= Ts*bEd%ftl)cclmdoniesqypmafArbkrmys **mcdon to Diumm**

          **2. Arbft=is&Me&alwmmbcowpmy*kchiopximwilyixilhtbvsinen oflicmdrc PwPnmY sYndicafed
muket rmamh dd% includim radio at&cncz mimnwmt &to, to its** CUUMMOM ftou&ut IM UMUA StattS.
APUIM's cusumn= include md'w broadcaters. **lvadsimg aVmWAOS** and adycrdsem. Arbitm does mot ufD:r its
customers a councercial product **VMCh MUMUVM bMadC:2SZ fCI9ViSjM ViOWIDS AUdiCMCeS** in XMY US, city including
PluladeWa,

          3. SInce 1992 Arbilma hm be= developing wd **ustins** diffm=t aspc= awbat is now **Imowz a die
PermoyW Paple Mder CTPM''~** The PIN is a pagm-akcd device dM is wom by C0USUmCWhwq&ut&edmLy.
T h r p q S = m m m a d c a U y d e t e c U    i n w d i b l e   c o d e s   t b a L b r o a d m u m
emb&4inihatudiapattimoftbekpwsra=jngudAgencodcnpm,,~AeAbyArhitro& Th,-13PM is **then pl=cd into a
base Aadou** tha rcchmM Ihm device and sea& &e **call=Ead** codes to Arbibm fw tabuktiom

          **4. kv late 2000.** *Arbim bqw* to fte =0 rfm ju PPM service In coAtwcdwj wilh **Participaft** Mt&:L **oudcft,
including lvlvviAon and** adio sWim& in ftladcl&& Arbimmode its **plaw** for **taft dw PPM savice well** ]=own.
Th fw% **ftougbout the ust pedoc% mbitrou has** added nwffia aidleb to 1hr. PFM W4 and mpars nqvca, &d
dw samc ft PlaiaW Bramon

          I    tions. Im's WOM Schdom Vibm Bnwom fha advised A*k= in ApYR 2002 That
WGTW ww not iwluded in tho ArUmon PPM      Arbitron reqmnded by providing ks ITM tr4t

       MUM

       YU6 90 *Q2 L41159                              212 302 Ma           PFM.03

             ass&-4LPS- 0 TIF- T      JaPAUS ITVmSje*w so eUUQfl          dza:zn zo so inc-

uY/uo/zuui ia;uo rAA rx& av& -Ls

ᴸ JLL Oe 102 IS'32 FR ARB ᴵ TRON UqW DEPT. 410 312 8613 TO 912123820MB-G58 P.04

JVL iM 102 14:54 FR ARBITRcH LFW DEPT. 410 312 OM3 TO 914108279592-SM P.03-

**encoder to WGrW for WGTVs insta3latiou and opumfion so tha W07W** could participm in **the PPM** ᴛᴹ

S. Wtially WOTWexpexioncedlechdcal difficullies with lu installation orAebia='s PW tent encodler Arbmm **tbca usizEed** WGTW to omrm the **pmblmms, md also took sftps to** notify **ftcipic~** ofthe PPM ᴛCSL dxm *x the ymed- mWeLs iwJuded in ffie nqmn remsenwd Only *those outlets 1bu waft* **pwparW** emdiag Wr sipal for gream own 9W9 ofthe days **in tbasurvcy**

mw4ft insuDationfn fime to                           cados &Wing diarecent N*tCSCV=iA
as well as for eight dVs, in theJuse test pajo& Wj"at mskt:nt usable codes ftm WGTW.
Asbirzon could not indbide WGTW Im **data in te July 2002,micen of** swl dam. Hylonerdaftil
July 1, 2002, Aibitron advised Bnmsom of this and =ad That it ᴠᴡᴹ *iimclvde WGTW dam in its*
fture relemes *fPPM tat data Wand when iticceives praperly meoded Whrmfwa from WOM
ᴀʟ eoW of &at low is aniuated hereto ɴ SAait 4.

7. Albitro" do" not CommervialY MMtK Ike us& dds wbicb it empiles ftm the PbRaftipbb ten and only pmndet tm dou in&~uon ior evalmdon poposcs. Pud*mhof **lbSPPM UA " hm agreed inwrifirAg 1W the** PPM dam is "beinsprovided, Melyas sin Admee **rippmtonity to evaluam emunt** dou Senmied from the tent 4oployment d AibitroWs PPM VmUmlogy 11is Evaleadon **Data** nd aphcation may U used only by Licensce lbr Wcrnal PWVa=and&nabRdxpft7ose& The **Limmet im imperniAWto un&c rvalvafta datatobay.plan** armUmedlatime." is t and2 ʜMW am CopiesoftbaPTMAddambno AWcenww USedwith

bft7ML)                                    -3-

AX 00 402 14:51                                     212 3W a~              PqW. 04

2956-L28-01*1_1              JGPAUS j1'ff14S-J&W IR eUUC(j              J12:2020 ɢᴏ Inc

07/08/2001 15:08 FAX 212 34Z 1z**  Case 2:02-cv-03223-MMB    Document 6    Filed 07/08/2002    Page 37 of 70

vainvLzna, rALDrjm
JUL 06 o2 is:32 FR ARBITRON LAW DEPT. 410 312 8613 'M 912123820MB-658 P.05

4::W,. S L c7d Be -M

t-t-W ej L V 11

juL es o2 14--54 FR ARBIMR04 LAW DEPT. 41B 312 (*13 TO 9141MV-9592-658 P-B4

cimmst Ashibm clicab and the Arbittm Lm. PM Dua SvQuadch Agmaom used br zww pardtipa= wba bove had no ptv-i*= reMoLdtio with Asbitron, wjpczdv*.

B. Avbimm alsophm a"WARMiWiri itsrc1cmaf11M Un datawbkb stacsMat '**W use of Omm** esd=zscs and data for **tha bqAnS plau*g mWat NUft afmadis tfmc is suictly** pmh%ibd:- ZZWbit 3 hamto is a rmple OW of The Messed PFM test &ᴜ𝐋 U Do ᴛꜱ~ zwdm of ZxL 3, AMMm expmuly d= WGTW was not inchdod in tht mlmscd ZPM dmL To **damt~bmjsnocomm=Wzm t for the PPM m 4m as it ixmmsjy;atmj**Vm jo nteuvse tckvisim and mfic muAisam to PhUmbIpW**

**9. Azbtm fm &*I* nVansIbIs for** ᴀᴍ **daveJapment sad tesdas of 6e PP)d vA m** *alba caft. brJudWS dw Michm Cmuipavy, h u played mayzate in %e 5astal* Won a fm t **equipzm=** db-. **emadins or d=mfimS** *oftut oWed U 6m gadumdug or repolftC oftest dam*

10. **The FM at WGIvirs kmWon is bow working pmqmly and WGTW dam wM be mcbMed in fixture test repmU pzovWd that WGTW confiman ra p"arly emode itsdata in accordmoce** wft **AshiMms sbmdanh md** wM **receive coples of1hon rtpmftpmvidcd** thaMainfiff **Arrm** to ego= to **pwUlpant's m8nmmt CUL 2) VMcb.** to **dstc~ Plainliff bas been uswiUft** to dl&

X14rw, 1411&~r ow~-
Dab-- JWy 8, 2002                                    btarshaU L Soydar
COMMI                                    -4
JM IN 502 14-251                                    212 3Ee OM
                                                     IM TOTAL PAGE.04

C1        2698 - 1.213 - 0 T  T      JOPMUS jTQr4s.AUjj me JrUt4oG      C,1z:?-0 an anInc
                                                     TOTAL PAM. 05

# Addendum

Date of Proposal:

This Agreement will serve as an Addendum to the existing License Agreements between

(hereinafter referred to as "Licensee") and Arbitron Inc. (hereinal!ter referred **to** as "Arbitron7).
The parties agree as follows:
Arbitron will provide Licensee with certain evaluation data

for the estimates generated from Arbitron's PPM test deployment in Philadelphia, Pennsylvania C'Evaluation Data"). To access the Evaluation Data and generate sample Arhitron will vmvide Licensee with access to an Arbitron application or an application that is licensed to Arbitron by a third party client application provider C'Application").

The Evaluation Data and Application are being provided solely as an advance opportunity to evaluate the current data generated from the test deployment of Arbitron's PPM technology. This Evaluation Data and Application may be used only by Licensee for internal business and analysis purposes. Licensee is not permitted to use the Evaluation Data to buy, plan or sell media time. However, Licensee may use limited amounts of the Evaluation Data in presentations to its clients. Licensee agrees that at no time whatsoever will it try to determine or discover the identity or location of any Arbitron survey respondent Licensee also

agrees that under no circumstances whatsoever will it directly or indirectly attempt to contact any Arbitron survey respondent.
The Evaluation Data are proprietary, confidential to, and copyrighted by Arbitron. The Application is proprietary, confidential **to** and copyrighted by either Arbitron or its third party provider. The unauthorized use of any of the Evaluation Data and/or the Application constitutes copyright infiingement. Arbitron and its third party provider make no warranties whatsoever with regard to the Evaluation Data and/or the Application used to process the Evaluation Data

al~u 'MI-M be liable for any ciaims or ~geisa l6ji-Ed t6 anse from the use of the Evaluation Data and/or the Application. The Evaluation Data only represents the opinion of Arbitron. Reliance on and use of the Evaluation Data and Application are at Licensee's own risk. Arbitron reserves the right to change the scope of the Evaluation Data provided and to cease to provide the Evaluation Data and access to the Application at any time.
All other terms and conditions of the existing agreements remain in full force and effect.

AGREED TO:

ACCEPTED BY:

ADDRESS

**CONTRACT MANAGER**

**DATE**

Arbitron Inc.
9705 Patuxent Woods Drive
Columbia, Maryland 21046-1572

E-MAK ADDRESS

BY WJTWWJMD SIGNATURE)

NAME MPE OR PRINT NAME OF PERSON SIGNING ABOVE)

TITLE                                        DATE

---AAR131TRON

LICENSEE

CITY                                    STATE    ZIP

© 2002 Arbitron Inc.

# Arbitron Inc. PPM Data Evaluation Agreement

Date of Proposal:

THIS AGREEMENT, effective this    day of 2002 , is between Arbitron Inc., a Delaware corporation, located at 9705 Patuxent Woods Drive, Columbia, MD 21046 ("Arbitron") and               a               corporation, located at                            ("Licensee").

**1. License Grants:** In exchange for abiding by the terms and conditions of this Agreement, and other good and valuable consideration the receipt of which is hereby acknowledged, Arbitron hereby grants to Licensee -a personal, non-transferable, non-exclusive, limited license to receive and use certain evaluation data for the P.Rtimates --geneFated--kom-,ArW#on!,~"eployatert-in Philadelphia, Pennsylvania ("Evaluation Data"). Arbitron hereby grants to Licensee a personal, non-transferable, non-exclusive, limited license to access and generate sample reports, via an Arbitron application or an application that is licensed to Arbitron by a third party application provider ("Application'). Title to the Evaluation Data and sample reports shall remain with Arbitron at all times. Arbitron expressly reserves any rights not expressly granted hereunder. Licensee hereby expressly acknowledges that to receive a license to use any other Arbitron data, to include, but not limited to, non-evaluation PPM data, it must execute a separate license agreement from Arbitron.

**2. Term:**       This Agreement shall become effective when countersigned by Arbitron's Contract Manager for a term beginning and ending as indicated below. The term of this Agreement begins on            and shall continue unless terminated pursuant to the terms of this Agreement ("Term"). The licenses granted hem-under shall automatically terminate at such time as Arbitron releases the first market of non-evaluation PPM data.

**3. Restrictions on Use:** The Evaluation Data and Application are being provided solely as an advance opportunity to evaluate the current data generated from the test deployment of Arbitronvs PPM technology. This Evaluation Data and Application may be used only by Licensee for internal business and analysis purposes. Licensee is not permitted to use the Evaluation Data to buy, plan or sell media time. However, Licensee may use limited amounts of the Evaluation  Data in its presentations to its clients. Quotations of the Evaluation Data must identify Arbitron as the source and that Evaluation Data are copyrighted. Users of the Evaluation Data provided herein should also understand and agree that the Evaluation Data arc subject to all qualifications and limitations stated in Arbitron's description of methodology. Users of the Evaluation Data provide herein are referred to the current policies of the Federal Trade Commission relating to the use of audience estimates.

**4. Respondent Confidentiality:** Licensee agrees that at no time whatsoever will it try to determine or discover the identity or location of any Arbitron survey respondent- Licensee also agrees that under no circumstances whatsoever will it directly or indirectly attempt to contact any Arbitron survey respondent.

**5. Warning:** The Evaluation Data are proprietary, confidential -to, ~md -copyrighted by Arbitron. The Application is     proprietary, confidential to and copyrighted by Arbitron or its third party provider. The unauthorized use of any of the Evaluation Data andlor the Application constitutes copyright infringement.

EVALUATION DATA REPRESENT ONLY THE OPINION OF ARBITRON. THE APPLICAT71ON PROVIDED HEREUNDER IS PROVIDED "AS IS - WHERE IS". RELIANCE ON AND USE OF THE EVALUATION DATA AND THE APPLICATION ARE AT LICENSEE'S OWN RISK IN NO EVENT SHALL ARBMON BE LIABLE FOR THE FAILURE OF ANY THIRD PARTY LICENSOR TO PROVIDE DATA OR SERVICES FOR *USE* IN CONNECTION WITH *THE* EVALUATION DATA ANDIOR APPLICATION LICENSED HEREUNDER.

**7. Liabilities and Limitations of Remedies:** THE SOLE AND EXCLUSIVE REMEDY AT LAW OR IN EQUITY FOR ARBITRONIS OR

EXPRESS OR IMPLIED, INCLUDING WITHOUT LIMITATION ANY WARRANTY OF MERCHANTABILITY OR FITNESS, AND THE SOLE AND EXCLUSIVE REMEDY FOR ARBFMONIS AND/OR ITS THIRD PARTY PROVIDER'S LIABILITY OF ANY IGND, INCLUDING WITHOUT LIMITATION LIABILITY OF NEGLIGENCE OR DELAY WITH RESPECT TO THE ARBITRON SERVICE, SHALL BE LIMITED TO AN AMOUNT NOT TO EXCEED $200 FOR ALL CLAIMS IN THE AGGREGATE. IN NO EVENT SHALL ARBITRON AND/OR ANY THIRD PARTY LICENSOR BE LIABLE FOR INCIDENTAL OR CONSEQUENTIAL DAMAGES, NOR SHALL THEY BE SUBJECT TO INJUNCTIVE RELIEF WITH *RESPECT* TO THE EVALUA71ON DATA AND/OR APPLICATION.

**8. Reservation of Rights:** Arbitron reserves tl~e right to exercise its professional research judgment in modif*g, waiving or suspending any policy, procedure or element of methodology that would appear to Arbitron to be unreasonable, illogical or impractical in light of known conditions. Arbitron reserves the right to change the scope of the Evaluation Data provided and to cease to provide the Evaluation Data and access to the Application at any time.

**9. Termination:** In addition to its rights of tennination stated elsewhere in this Agreement, Arbitron may, for any reason, terminate this Agreement immediately on written notice to Licensee. Licensee may, for any reason, terminate this Agreement immediately on written notice to Arbitron. Sections 3, 4, 6, 7 and 10 shall survive the termination of this Agreement and shall remain enforceable between the parties.

**10. Governing Law:** This Agreement, plus any supplemental documents and notices, shall be construed in accordance with the law of the State of New York, United States of America, exclusive of its     choice of law rules, and any disputes arising hereunder shall be litigated and adjudicated exclusively in the State and/or Federal Courts located in the State of New York or the State of Maryland, at Arbitron's option, and each party consents to and submits to both such jurisdictions.

**11. Entire Agreement; Modifications:** This Agreement sets forth the . entire and only agreement or understanding between the parties and shall supersede any and all prior agreements or understandings between the **parties, whether oral or written,** relating to the subject matter hereoL No party-shall be bound by any conditions, definitions, warranties or representations with respect to the subject  matter of this Agreement except as provided in this AgmemenL No amendment hereof shall be effective unless set forth in writing signed by authorized representatives ofboth parties.

**6. Disclaimer of Warranties:** ARBITRON AND      ITS THIRD PARTY LICENSORS MAKE NO WARRANTIES, *EXPRESS OR* IMPLIED, CONCERNING: DATA GATHERED OR OBTAINED BY ARBITRON; THE FUTURE METHODOLOGY EMPLOYED BY ARBITRON IN PRODUCING THE EVALUATION DATA; THE EVALUATION DATA PROVIDED thereafter

HEREIN AND ALL OTHER ASPECTS OF THE ARBITRON SERVICE. THE

**12. Severability:** A question regarding the legality, enforceability or validity of any Section or part hereof shall not affect any other Section, and if any Section or part hereof is determined illegal, invalid, unconstitutional or unenforceable, that Section or part shall be severed from this Agreement and the balance of this Agreement shall

remain in full force and effect for the remainder of the Term.

0 2002 Arbftn Inc.

PM rk°. F--·I · A--d AW rl

**AAREIITPON**

Initials here

13. Ass?.,gnment: Licensee shall not assign this Agreement without the express prior written consent of Arbitron. Any attempt to do so shall be null and void. Arbitron shall be entitled to assign this Agreement and its rights and obligations hereunder.

AGREED TO:

ACCEPTED BY:

LICENSEE
ADDRESS
Crry                                          7FA-TE       ZIP

E-K4AIL ADDRESS

BY (AL"W)WED S*HATURE)

NAME UYPE OR PRKT NAME OF PERSON SIGNING ABOM

TITLE                                         DATE

CONTRACT mANAGER
DATE
**Arbitron Inc.**
9705 Patuxent Woods Drive
Columbia, Maryland 21046-1572

3

**vnitampnia** Fm UUtlet - TV

**AdH Ratings -Total Day**
Total Men Age 18+, Entire DMA

PPM Parameters
Start Date:     2128/02
End Date:      3/27/02
Population:   2,696,370
Avg. Daily
Intab:              357

**Broadcast TV**

| Monday-Sunday | AQH | | NMR Meter/Diary | |
|---|---|---|---|---|
| | Rating | Share* | Rating | |
| 6AM-12MID | | | | |
| KYW (CBS) | 3.00 | 11.5 | 2.49 | 15.3 |
| WCAU (NBC) | 3.60 | 13.8 | 2.76 | 17.0 |
| WHYY (PBS) | 0.40 | 1.6 | 0.29 | 1.8 |
| WPHL (WB) | 1.50 | 5.8 | 0.75 | 4.6 |
| WPPX (PAX) | 0.20 | 0.8 | 0.12 | 0.8 |
| WPSG(UPN) | 1.20 | 4.5 | 0.71 | 4.4 |
| WPVI (ABC) | 4.10 | 15.7 | 3.29 | 20.3 |
| WTXF (FOX) | 2.50 | 9.4 | 1.54 | 9.5 |
| | 16.50 | 63.1 | 11.95 | 73.6 |

**Cable TV**

| Monday-Sunday | AQH | | NMR Meter/Diary | |
|---|---|---|---|---|
| | Rating | Share | Rating | Share* |
| 6AM-12MID | | | | |
| A&E | 0.40 | 1.7 | 0.28 | 1.7 |
| BET | 0.50 | 1.7 | 0.11 | 0.7 |
| CN8 | 0.10 | 0.5 | 0.02 | 0.1 |
| CNN | 0.50 | 1.9 | 0.25 | 1.6 |
| CSN | 0.80 | 3.2 | 0.41 | 2.5 |
| DISCOVERY | 0.40 | 1.6 | 0.21 | 1.3 |
| ESPN | 0.80 | 3.2 | 0.43 | 2.6 |
| ESPN2 | 0.30 | 1.3 | 0.07 | 0.5 |
| ETV | 0.20 | 0.8 | 0.10 | 0.6 |
| FX | 0.40 | 1.7 | 0.21 | 1.3 |
| HEADLINE NEW | 0.10 | 0.3 | 0.01 | 0.0 |
| HISTORY CHAN | 0.60 | 2.3 | 0.27 | 1.7 |
| LIFETIME | 0.60 | 2.4 | 0.30 | 1.8 |
| MTV | 0.50 | 2.0 | 0.15 | 0.9 |
| NICKELODEON | 0.80 | 3.0 | 0.22 | 1.4 |
| TBS | 0.80 | 2.9 | 0.45 | 2.8 |
| TNN | 0.50 | 1.8 | 0.19 | 1.2 |
| TNT. | 0.80 | 3.0 | 0.53 | 3.3 |
| VH1 | 0.20 | 0.7 | 0.03 | 0.2 |
| WEATHER CHAN | 0.20 | 0.9 | 0.05 | 0.3 |
| | 9.50 | 36.9 | 4.29 | 26.4 |
| Total Encoded TV | 26.00 | 100.0 | 16.24 | 100.0 |

For purposes of this report, Arbitron has adopted the Nielsen format of presenting results to two decimal points. The current Arbitron PPM
application only produces values to one decimal point.

   Share among encoded outlets only; shares calculated on the basis of AQH Persons projections.
** WTXF did not encode all broadcast hours on 2128/02 and 3tl/02. Data for WTXF may be slightly understated as a result.

NOTE: WGTW (Ind.), WUVP (Univision), WWSI (Telemundo) and Court TV are now encoded. However, these outlets
were not encoded in time to be included in the March release of data. MSNBC was encoded in time to be included
in the March release of data. But, MSNBC was not encoding for 13 days of the survey period and is therefore not included in the
March release of data.

**WARNINGO**

All Arbitron audience estimates are confidential, proprietary to, and copyrighted by Arbitron Inc. The audience

emimaies ano accompanying oata in inis mepui i a[ u 11 ltul lUUU 1UT 11 nul l ldl Uutiff lrz>b C11 1U di ldlybib Pul putit!5 U1 11Y. mi ly Ube U1 these estimaties and data for the buying, planning and/or selling of media time is strictly prohibited.

Set Meter data copyright 2002 Nielsen Media Research, Inc. All rights reserved.
Set Meter data are provided for evaluation purposes only. No commercial use whatsoever is authorized.

**rmiampnia vi-m uutiet - i v**
**:.QH Ratings - Total Day**
Total Women Age 18+, Entire DMA

PPM Parameters
Start Date:      2/28/02
End Date:       3/27/02
Population:     3,010,374
Avg. Daily
Intab:          430

**Broadcast TV**

| Monday-Sunday | AQH | | NMR Meter/Diary | |
|---|---|---|---|---|
| | Ratina | | Rating | Sha |
| 6AM-12MID | | | | |
| KYW (CBS) | 4.00 | 12.5 | 3.23 | 14.0 |
| WCAU (NBC) | 4.30 | 13.6 | 4.16 | 18.1 |
| WHYY (PBS) | 0.60 | 2.0 | 0.49 | 2.1 |
| WPHL (WB) | 1.80 | 5.6 | 1.20 | 5.2 |
| WPPX (PAX) | 0.40 | 1.2 | 0.26 | 1.1 |
| WPSG(UPN) | 1.40 | 4.6 | 0.88 | 3.8 |
| WPVI (ABC) | 7.30 | 23.0 | 5.99 | 26.0 |
| WTXF (FOX) | 2.40 | 7.7 | 1.83 | 8.0 |
| | 22.20 | 70.2 | 18.04 | 78.3 |

**Cable TV**

| Monday-Sunday | AQH | | NMR Meter/Diary | |
|---|---|---|---|---|
| | Rating | | Rating | 5hare! |
| 6AM-12MID | | | | |
| A&E | 0.70 | 2.2 | 0.51 | 2.2 |
| BET | 0.40 | 1.2 | 0.16 | 0.7 |
| CN8 | 0.10 | 0.3 | 0.01 | 0.0 |
| CNN | 0.40 | 1.2 | 0.23 | 1.0 |
| CSN | 0.40 | 1.3 | 0.15 | 0.7 |
| DISCOVERY | 0.40 | 1.3 | 0.19 | 0.8 |
| ESPN | 0.30 | 1.0 | 0.11 | 0.5 |
| ESPN2 | 0.10 | 0.4 | 0.02 | 0.1 |
| ETV | 0.30 | 0.9 | 0.14 | 0.6 |
| FX | 0.30 | 1.0 | 0.15 | 0.6 |
| HEADLINE NEW | 0.10 | 0.2 | 0.01 | 0.0 |
| HISTORY CHAN | 0.20 | 0.8 | 0.09 | 0.4 |
| LIFETIME | 1.50 | 4.8 | 1.18 | 5.1 |
| MTV | 0.50 | 1.4 | 0.24 | 1.0 |
| NICKELODEON | 1.40 | 4.3 | 0.45 | 1.9 |
| TBS | 0.90 | 2.7 | 0.59 | 2.5 |
| TNN | 0.30 | 0.8 | 0.09 | 0.4 |
| TNT | 0.90 | 2.9 | 0.57 | 2.5 |
| VH1 | 0.20 | 0.5 | 0.04 | 0.2 |
| WEATHER CHAN | 0.20 | 0.5 | 0.04 | 0.2 |
| | 9.60 | 29.8 | 4.96 | 21.7 |
| Total Encoded TV | 31.80 | 100.0 | 23.00 | 100.0 |

For purposes of this report, Arbitron has adopted the Nielsen format of presenting results to two decimal points. The current Arbitron PPM application only produces values to one decimal point.

Share among encoded outlets only; shares calculated on the basis of AQH Persons projections. ** WTXF did not encode all broadcast hours on 2/28/02 and 3/1/02. Data for WTXF may be slightly understated as a result.

NOTE: WGTW (Ind.), WUVP (Univision), WWSI (Telemundo) and Court TV are now encoded. However, these outlets were not encoded in time to be included in the March release of data. MSNBC was encoded in time to be included in the March release of data. But, MSNBC was not encoding for 13 days of the survey period and is therefore not included in the March release of data.

**<u>WARNINGe</u>**

All Arbftron audience estimates are confidentlal, proprietary to, and copyrighted by Arbitron Inc. The audience

u c3j,c3oywz, vujwtius ormy. /Any use oT these estirr4tes and data for the buying, planning and/or selling of media time is strictly prohibited.

Set Meter data copyright 2002 Nielsen Media Research, Inc. All rights reserved. Set Meter data are provided for evaluation purposes only. No commercial use whatsoever is authorized.

**?hikidelphia PPM outlet** - I V
**AQH Ratings - Total Day**
"Jotal Children Age 6 to 11, Entire DMA

PPM Parameters
Start Date:    2128102
End Date:    3/27/02
Population:    651,184
Avg. Daily
Intab:    72

**Broadcast TV**

| Monday-Sunday | AQH | | NMR Meter/Diary | |
|---|---|---|---|---|
| | Rating | Share | Rating | Share* |
| **6AM-12MID** | | | | |
| KYW (CBS) | 2.00 | 8.1 | 0.54 | 4.8 |
| WCAU (NBC) | 2.30 | 9.2 | 0.57 | 5.1 |
| WHYY (PBS) | 0.60 | 2.3 | 0.40 | 3.5 |
| WPHL (WB) | 1.90 | 7.4 | 0.87 | 7.8 |
| WPPX (PAX) | 010 | 0.2 | 0.03 | 0.3 |
| WPSG(UPN) | 1.20 | 4.8 | 0.58 | 5.2 |
| WPVI (ABC) | 3.50 | 14.0 | 1.02 | 9.1 |
| WTXF (FOX) | 1.90 | 7.4 | 0.65 | 5.8 |
| | 13.50 | 53.5 | 4.66 | 41.6 |

**Cable TV**

| Monday-Sunday | AQH | | NMR Meter/Diary | |
|---|---|---|---|---|
| | Rating | | Rating | **Share** |
| **6AM-12MID** | | | | |
| A&E | 0.20 | 0.8 | 0.02 | 0.3 |
| BET | 0.60 | 2.2 | 0.15 | 1.4 |
| CN8 | 0.00 | 0.2 | 0.00 | 0.0 |
| CNN | 0.20 | 0.7 | 0.02 | 0.2 |
| CSN | 0.30 | 1.0 | 0.20 | 1.8 |
| DISCOVERY | 0.30 | 1.0 | 0.05 | 0.5 |
| ESPN | 0.20 | 0.9 | 0.04 | 0.4 |
| ESPN2 | 0.10 | 0.6 | 0.00 | 0.0 |
| ETV | 0.10 | 0.5 | 0.09 | 0.1 |
| FX | 0.20 | 0.9 | 0.01 | 0.1 |
| HEADLINE NEW | 0.00 | 0.1 | 0.00 | 0.0 |
| HISTORY CHAN | 0.30 | 1.2 | 0.02 | 0.2 |
| LIFETIME | 0.70 | 2.9 | 0.06 | 0.5 |
| MTV | 0.70 | 2.7 | 0.26 | 2.3 |
| NICKELODEON | 5.70 | 22.7 | 4.86 | 43.5 |
| TBS | 0.70 | 2.9 | 0.42 | 3.8 |
| TNN | 0.50 | 2.0 | 0.06 | 0.6 |
| JNT | 0.60 | 2.4 | 0.28 | 2.5 |
| VH1 | 0.10 | 0.6 | 0.02 | 0.2 |
| WEATHER CHAN | 0.10 | 0.2 | 0.00 | 0.0 |
| | 11.60 | 46.5 | 6.56 | 58.4 |
| **Total Encoded TV** | 25.10 | 100.0 | 11.23 | 100.0 |

For purposes of this report, Arbitron has adopted the Nielsen format of presenting results to two decimal points. The current Arbitron PPM application only produces values to one decimal point.

Share among encoded outlets only; shares calculated on the basis of AQH Persons projections. ** WTXF did not encode all broadcast hours on 2/28/02 and 3/1/02. Data for WTXF may be slightly understated as a result.

NOTE: WGTW (Ind.), WUVP (Univision), WWSI (Telemundo) and Court TV are now encoded. However, these outlets were not encoded in time to be included in the March release of data. MSNBC was encoded in time to be included in the March release of data. But, MSNBC was not encoding for 13 days of the survey period and is therefore not included in the March release of data.

**WARNING:**
All Arbitron audience estimates are confidential, proprietary to, and copyrighted by Arbitron Inc. The audience

. estimates and accompanying clata in tnis mepurt are inieiiut::u ɪv, u mo, ,,, .-o. ._ ꭱ₋ₙ ___.ₘₐ

tnese estim4es and data for the buying, planning and/or selling of media time is strictly prohibited.

Set Meter data copyright 2002 Nielsen Media Research, Inc. All rights reserved. Eet Meter data are provided for evaluation purposes only. No commercial use whatsoever is authodzed.

**Ph ' ilidelphia PPM Outlet - TV**
**AQH Ratings - Total Day**
15 **otal Teens Age 12 to 17, Entire DMA**

PPM Parameters
Start Date:      2128102
End Date:        3127102
Population:      646,854
Avg. Daily
Intab:               68

**Broadcast TV**

| Monday-Sunday | AQH | | NMR Meter/Diary | |
|---|---|---|---|---|
| | Rating | Shaie-; | Rating | Share* |
| 6AM-12MID | | | | |
| KYW (CBS) | 1.50 | 7.3 | 0.69 | 6.2 |
| WCAU(NBC) | 2.50 | 11.9 | 0.77 | 6.9 |
| WHYY (PBS) | 0.30 | 1.3 | 0.06 | 0.6 |
| WPHL (WB) | 1.70 | 8.3 | 1.11 | 10.0 |
| WPPX (PAX) | 0.10 | 0.3 | 0.02 | 0.2 |
| WPSG(UPN) | 1.20 | 6.0 | 0.88 | 7.9 |
| WPVI (ABC) | 2.20 | 10.6 | 0.98 | 8.9 |
| WTXF (FOX) | 1.70 | 8.0 | 1.21 | 10.9 |
| | 11.20 | 53.7 | 5.72 | 51.6 |

**Cable TV**

| Monday-Sunday | AQH | | NMR Meter/Diary | |
|---|---|---|---|---|
| | Ratin | Share* | Rating | Share* |
| 6AM-12MI | | | | |
| A&E | 0.10 | 0.6 | 0.02 | 0.2 |
| BET | 1.10 | 5.1 | 0.41 | 3.7 |
| CN8 | 0.00 | 0.2 | 0.01 | 0.1 |
| CNN | 0.10 | 0.3 | 0.01 | 0.1 |
| CSN | 0.30 | 1.6 | 0.24 | 2.2 |
| DISCOVERY | 0.20 | 1.2 | 0.10 | 0.9 |
| ESPN | 0.30 | 1.6 | 0.27 | 2.4 |
| ESPN2 | 0.10 | 0.5 | 0.02 | 0.2 |
| ETV | 0.10 | 0.5 | 0.03 | 0.3 |
| FX | 0.20 | 0.7 | 0.11 | 1.0 |
| HEADLINE NEW | 0.00 | 0.0 | 0.00 | 0.0 |
| HISTORY CHAN | 0.20 | 0.9 | 0.01 | 0.1 |
| LIFETIME | 0.60 | 2.7 | 0.35 | 3.1 |
| MTV | 2.10 | 10.0 | 1.32 | 12.0 |
| NICKELODEON | 2.80 | 13.5 | 1.65 | 14.9 |
| TBS | 0.40 | 2.1 | 0.28 | 2.6 |
| TNN | 0.30 | 1.5 | 0.12 | 1.1 |
| TNT | 0.50 | 2.3 | 0.28 | 2.6 |
| VH1 | 0.20 | 0.8 | 0.09 | 0.8 |
| WEATHER CHAN | 0.10 | 0.3 | 0.01 | 0.1 |
| | 9.70 | 46.3 | 5.33 | 48.4 |
| Total Encoded TV | 20.90 | 100.0 | 11.04 | 100.0 |

For Purposes of this report, Arbitron has adopted the Nielsen format of presenting results to two decimal points. The current Arbitron PPM application only produces values to one decimal point.

Share among encoded outlets only; shares calculated on the basis of AQH Persons projections.
" WTXF did not encode all broadcast hours on 2128/02 and 3/1/02. Data for WTXF may be slightly understated as a result.

NOTE: WGTW (Ind.), WUVP (Univision), WWSI (Telemundo) and Court TV are now encoded. However, these outlets were not encoded in time to be included in the March release of data. MSNBC was encoded in time to be included in the March release of data. But, MSNBC was not encoding for 13 days of the survey period and is therefore not included in the March release of data.

**WARNING:**

AN Artiltron audience estimates are confidential, proprietary to, and copyrighted by Arbitron Inc. The audience

estirhatbs and accompanying data in this Report are intended for internal business and analysis purposes only. Any use of these estimates and data for the buying, planning and/or selling of media time is strictly prohibited.

'~:et Meter data copyright 2002 Nielsen Media Research, Inc. All rights reserved. Set Meter data are provided for evaluation purposes only. No commercial use whatsoever is authorized.

**PhilAdelphia PPM Outlet - TV**
**AOH Ratings - Total Day**
**'Total Oersons Age 18 to 34, Entire DMA**

PPM Parameters
Start Date:    2/28/02
End Date:    3/27/02
Population:    1,670,013
Avg. Daily
Intab:    169

### Broadcast TV

| Monday-Sunday | AQH | | NMR Meter/Diary | |
| | Rating | | Rating | Share* |
| --- | --- | --- | --- | --- |
| 6AM-12MID | | | | |
| KYW (CBS) | 2.20 | 8.5 | 1.49 | 10.8 |
| WCAU (NBC) | 3.00 | 11.9 | 2.03 | 14.7 |
| WHYY (PBS) | 0.30 | 1.3 | 0.11 | 0.9 |
| WPHL (WB) | 2.40 | 9.5 | 1.32 | 9.5 |
| WPPX (PAX) | 0.10 | 0.5 | 0.06 | 0.5 |
| WPSG (UPN) | 1.80 | 6.9 | 0.72 | 5.2 |
| WPVI (ABC) | 3.10 | 12.3 | 2.27 | 16.4 |
| WTXF (FOX) | 2.80 | 10.9 | 1.86 | 13.4 |
| | 15.90 | 61.8 | 9.86 | 71.3 |

## Cable TV

| Monday-Sunday | AQH | | NMR Moter/Diary | |
| | Rating | Share* | Rating | **Share*** |
| --- | --- | --- | --- | --- |
| **6AM-12MID** | | | | |
| A&E | 0.20 | 1.0 | 0.13 | 1.0 |
| BET | 0.90 | 3.5 | 0.27 | 2.0 |
| CN8 | 0.10 | 0.3 | 0.00 | 0.0 |
| CNN | 0.10 | 0.3 | 0.10 | 0.7 |
| CSN | 0.60 | 2.4 | 0.18 | 1.3 |
| DISCOVERY | 0.40 | 1.6 | 0.11 | 0.8 |
| ESPN | 0.60 | 2.3 | 0.30 | 2.2 |
| ESPN2 | 0.20 | 0.7 | 0.02 | 0.2 |
| ETV | 0.30 | 1.1 | 0.12 | 0.9 |
| FX | 0.40 | 1.4 | 0.14 | 1.1 |
| HEADLINE NEW | 0.00 | 0.2 | 0.01 | 0.0 |
| HISTORY CHAN | 0.20 | 0.7 | 0.05 | 0.4 |
| LIFETIME | 1.00 | 4.0 | 0.40 | 2.9 |
| MTV | 1.10 | 4.4 | 0.50 | 3.7 |
| NICKELODEON | 1.30 | 5.1 | 0.51 | 3.6 |
| TBS | 0.80 | 3.1 | 0.48 | 3.4 |
| TNN | 0.50 | 1.8 | 0.21 | 1.5 |
| TNT | 0.70 | 2.7 | 0.31 | 2.3 |
| VH1 | 0.30 | 1.0 | 0.06 | 0.4 |
| WEATHER CHAN | 0.10 | 0.3 | 0.02 | 0.2 |
| | 9.80 | 38.2 | 3.91 | 28.7 |
| Total Encoded TV | 25.70 | 100.0 | 13.77 | 1100.0 |

For purposes of this report, Arbitron has adopted the Nielsen format of presenting results to two decimal points. The current Arbitron PPM application only produces values to one decimal point.

Share among encoded outlets only; shares calculated on the basis of AQH Persons projections. ** WTXF did not encode all broadcast hours on 2/28/02 and 311/02. Data for WTXF may be slightly understated as a result.

NOTE: WGTW (Ind.), WUVP (Univision), WWSI (Telemundo) and Court TV are now encoded. However, these outlets were not encoded in time to be included in the March release of data. MSNBC was encoded in time to be included in the March release of data. But, MSNBC was not encoding for 13 days of the survey period and is therefore not included in the March release of data.

<u>**WARNING:**</u>
   All Arbltron audience estimates are confidential, proprietary to, and copyrighted by Arbitron Inc. The audience

eitimales and accompanying data in this Report are intended for internal business and analysis purposes only. Any use of thege estimates and data for the buying, planning and/or selling of media time is strictly prohibited.

J%t Meter data copyright 2002 Nielsen Media Research, Inc. All rights reserved. Set Meter data are provided for evaluation purposes only. No commercial use whatsoever is authorized.

**Ph)ladelphia PPM Outlet - TV**
**AQH Ratings - Total Day**
Total Persons Age 18 to 49, Entire DMA

Anal_ysis Period
Start Date:      2t28/02
End Date:        3/27/02
Population:      3,430,887
Avg. Daily
Intab:           443

**Broadcast TV**

| Monday-Sunday | AQH | | NMR Meter/Diary | |
|---|---|---|---|---|
| | Rating | | Rating | Share |
| 6AM-j2MIQ | | | | |
| KYW (CBS) | 2.40 | 9.4 | 1.78 | 11.5 |
| WCAU(NBC) | 3.30 | 12.9 | 2.58 | 16,7 |
| WHYY (PBS) | 0.40 | 1.6 | 0.19 | 1.2 |
| WPHL (WB) | 1.90 | 7.4 | 1.17 | 7.5 |
| WPPX (PAX) | 0.20 | 0.6 | 0.11 | 0.7 |
| WPSG(UPN) | 1.40 | 5.4 | 0.77 | 5.0 |
| WPVI (ABC) | 3.90 | 15.2 | 3.12 | 20.1 |
| WTXF (FOX) | 2.60 | 9.9 | 1.77 | 11.4 |
| | 16.10 | 62.3 | 11.49 | 74.2 |

**Cable TV**

| Monday-Sunday | AGIN | | NMR Meter/Diary | |
|---|---|---|---|---|
| | Rating | | Rating | Share |
| 6AM-12MID | | | | |
| A&E | 0.30 | 1.3 | 0.20 | 1.3 |
| BET | 0.60 | 2.4 | 0.18 | 1.2 |
| CN8 | 0.10 | 0.3 | 0.01 | 0.1 |
| CN~ | 0.26 | 0.8 | 0.12 | 0.8 |
| CSN | 0.60 | 2.2 | 0.22 | 1.4 |
| DISCOVERY | 0.40 | 1.5 | 0.14 | 0.9 |
| ESPN | 0.50 | 2.0 | 0.27 | 1.8 |
| ESPN2 | 0.20 | 0.8 | 0.03 | 0.2 |
| ETV | 0.30 | 1.0 | 0.13 | 0.8 |
| FX | 0.40 | 1.5 | 0.16 | 1.1 |
| HEADLINE NEW | 0.00 | 0.2 | 0.01 | 0.1 |
| HISTORY CHAN | 0.30 | 1.3 | 0.12 | 0.8 |
| LIFETIME | 1.20 | 4.5 | 0.49 | 3.2 |
| MTV | 0.70 | 2.9 | 0.31 | 2.0 |
| NICKELODEON | 1.50 | 5.8 | 0.42 | 2.7 |
| TBS | 0.80 | 3.1 | 0.47 | 3.0 |
| TNN | 0.40 | 1.7 | 0.18 | 1.1 |
| TNT | 0.70 | 2.9 | 0.45 | 2.9 |
| VH1 | 0.20 | 0.9 | 0.05 | 0.3 |
| WEATHER CHAN | 0.10 | 0.5 | 0.03 | 0.2 |
| | 9.50 | 37.7 | 4.00 | 25.8 |
| Total Encoded TV | 25.60 | 100.0 | **15.50** | **100.0** |

For purposes of this report, Arbitron has adopted the Nielsen format of presenting results to two decimal points. The current Arbitron PPM application only produces values to one decimal point.

   Share among encoded outlets only; shares calculated on the basis of AQH Persons projections.
** WTXF did not encode all broadcast hours on 2/28/02 and 3/1/02. Data for WTXF may be slightly understated as a result

NOTE: WGTW (Ind.), WLIVP (Univision), WWSI (Telemundo) and Court TV are now encoded. However, these outlets were not encoded in time to be Included in the March release of data. MSNBC was encoded in time to be included In the March release of data. But MSNBC was not encoding for 13 days of the survey period and is therefore not included in the March release of data.

## WARNING*

All Arbilron audience estimates are confidential, proprietary to, and copyrighted by Arbilron Inc. The audience estimates and accompanying data In this Report are Intended for internal business and analysis purposes only. Any use of these estimates and data for the buying, planning andfor selling of media time Is strictly prohibited.

Set Meter data copyright 2002 Nielsen Media Research, Inc. All rights reserved. Set Meter data are provided for evaluation purposes only. No commercial use whatsoever is authorized.

**Philacleippia PIPM Outlet - TV**
**A61-1 Ratings - Total Day**
**Total Persons Age 25 to 54, Entire DMA**

Analysis Period
Start Date:        2/28/02
End Date:          3/27/02
Population:     3,279,750
Avg. Daily
Intab:                470

## Broadcast TV

| Monday-Sunday | AQH | | NMR Meter/Diary | |
|---|---|---|---|---|
| | Rating | Share* | Retina | Share! |
| 6AM-12MID | | | | |
| KYW (CBS) | 2.80 | 10.7 | 2.19 | 12.8 |
| WCAU (NBC) | 3.60 | 13.8 | 3.03 | 17.8 |
| WHYY (PBS) | 0.50 | 1.8 | 0.22 | 1.3 |
| WPHIL (WB) | 1.60 | 6.1 | 0.99 | 5.8 |
| WPPX (PAX) | 0.20 | 0.7 | 0.13 | 0.8 |
| WPSG (UPN) | 1.20 | 4.5 | 0.82 | 4.8 |
| WPVI (ABC) | 4.50 | 17.4 | 3.73 | 21.9 |
| WTXF (FOX) | 2.50 | 9.6 | 1.73 | 10.1 |
| | 16.90 | 64.6 | 12.84 | 75.3 |

## Cable TV

| Monday-Sunday | AQH | | NMR Meter/Diary | |
|---|---|---|---|---|
| | Rating | Share* | Rating | Share! |
| 6AM-12MID | | | | |
| A&E | 0.40 | 1.6 | 0.25 | 1.5 |
| BET | 0.40 | 1.4 | 0.14 | 0.8 |
| CN8 | 0.10 | 0.4 | 0.02 | 0.1 |
| CNN | 0.30 | 1.1 | 0.15 | 0.9 |
| CSN | 0.60 | 2.3 | 0.25 | 1.5 |
| DISCOVERY | 0.40 | 1.5 | 0.16 | 1.0 |
| ESPN | 0.50 | 1.8 | 0.28 | 1.7 |
| ESPN2 | 0.20 | 0.7 | 0.04 | 0.2 |
| ETV | 0.30 | 1.0 | 0.13 | 0.7 |
| FX | 0.40 | 1.7 | 0.19 | 1.1 |
| HEADLINE NEW | 0.10 | 0.2 | 0.01 | 0.1 |
| HISTORY CHAN | 0.40 | 1.4 | 0.15 | 0.9 |
| LIFETIME | 1.00 | 4.0 | 0.55 | 3.2 |
| MTV | 0.40 | 1.6 | 0.23 | 1.3 |
| NICKELODEON | 1.40 | 5.4 | 0.35 | 2.1 |
| TBS | 0.80 | 2.9 | 0.51 | 3.0 |
| TNN | 0.40 | 1.6 | 0.17 | 1.0 |
| TNT | 0.80 | 3.1 | 0.55 | 3.2 |
| VH1 | 0.20 | 0.9 | 0.04 | 0.3 |
| WEATHER CHAN | 0.10 | 0.6 | 0.04 | 0.3 |
| | 9.20 | 35.4 | 4.22 | 24.7 |
| Total Encoded TV | 26.10 | 100.0 | 17.06 | **100.0** |

For purposes of this report, Arbitron has adopted the Nielsen format of presenfing results to two decimal points. The current Arbitron PPM application only produces values to one decimal point.

Share among encoded outlets only; shares calculated on the basis of AQH Persons projections. ** WTXF did not encode all broadcast hours on 2/28/02 and 311/02. Data for WTXF may be slightly understated as a result.

NOTE: WGTW (Ind.), WLIVP (Univislon), WWSI (Telemundo) and Court TV are now encoded. However, these outlets were not encoded in time to be Included In the March release of data. MSNBC was encoded In time to be Included in the March release of data. But, MSNBC was not encoding for 13 days of the survey period and Is therefore not included In the March release of data.

## WARNING:

All Arbitron audience estimates are confidential, proprietary to, and copyrighted by Arbitron Inc. The audience estimates and accompanying data in this Report are intended for internal business and analysis purposes only. Any use of these estimates and data for the buying, planning and/or selling of media time is stricity prohibited.

Set Meter data copyright 2002 Nielsen Media Research, Inc. All rights reserved.
Set Meter data are provided for evaluation purposes only. No commercial use whatsoever is authorized.

**vniiagelpma PPM Outlet - TV**
**A6H Ratings - Total Day**
Total Persons Age 35 to 54, Entire DMA

PPM Parameters

| | |
|---|---|
| Start Date: | 2/28/02 |
| End Date: | 3/27/02 |
| Population: | 2,289,681 |
| Avg. Daily Intab: | 352 |

## Broadcast TV

| Monday-Sunday | AQH | | NMR Meter/Diary | |
|---|---|---|---|---|
| | Rating | Share* | Rating | Share* |
| 6AM-12MID | | | | |
| KYW (CBS) | 3.00 | 11.3 | 2.36 | 13.2 |
| WCAU (NBC) | 3.70 | 14.0 | 3.24 | 18.1 |
| WHYY (PBS) | 0.50 | 1.8 | 0.25 | 1.4 |
| WPHL (WB) | 1.40 | 5.3 | 0.91 | 5.1 |
| WPPX (PAX) | 0.20 | 0.8 | 0.16 | 0.9 |
| WPSG(UPN) | 1.10 | 4.1 | 0.86 | 4.8 |
| WPVI (ABC) | 4.90 | 18.4 | 4.16 | 23.2 |
| WTXF (FOX) | 2.40 | 9.1 | 1.64 | 9.2 |
| | 17.10 | 64.9 | 13.57 | 75.9 |

## Cable TV

| Monday-Sunday | AQH | | NMR Meter/Diary | |
|---|---|---|---|---|
| | Rating | | Rating | Sha |
| 6AM-12MID | | | | |
| A&E | 0.50 | 1.7 | 0.30 | 1.7 |
| BET | 0.30 | 1.1 | 0.11 | 0.6 |
| CN8 | 0.10 | 0.4 | 0.02 | 0.1 |
| CNN | 0.40 | 1.4 | 0.17 | 0.9 |
| CSN | 0.60 | 2.2 | 0.28 | 1.6 |
| DISCOVERY | 0.40 | 1.4 | 0,18 | 1.0 |
| ESPN | 0.50 | 1.8 | 0.26 | 1.5 |
| ESPN2 | 0.20 | 0.8 | 0.04 | 0.2 |
| ETV | 0.20 | 0.9 | 0.12 | 0.7 |
| FX | 0.40 | 1.7 | 0.19 | 1.1 |
| HEADLINE NEW | 0.10 | 0.2 | 0.01 | 0.1 |
| HISTORY CHAN | 0.40 | 1.7 | 0.19 | 1.0 |
| LIFETIME | 1.10 | 4.3 | 0.65 | 3.6 |
| MTV | 0.30 | 1.3 | 0.11 | 0.6 |
| NICKELODEON | 1.40 | 5.4 | 0.30 | 1.7 |
| TBS | 0.80 | 2.9 | 0.51 | 2.9 |
| TNU | 0.40 | 1.5 | 0.15 | 0.9 |
| TNT | 0.80 | 3.2 | 0.62 | 3.5 |
| VH1 | 0.20 | 0.8 | 0.04 | 0.2 |
| WEATHER CHAN | 0.20 | 0.7 | 0.05 | 0.3 |
| | 9.30 | 35.1 | 4.32 | 24.1 |
| **Total Encoded TV** | **26.40** | 100.0 | 17.89 | 100.0 |

For purposes of this report, Arbitron has adopted the Nielsen format of presenting results to two decimal points. The current Arbitron PPM application only produces values to one decimal point.

Share among encoded outlets only'. shares calculated on the basis of AQH Persons projections. ** WTXF did not encode all broadcast hours on 2/28/02 and 3/1/02. Data for WTXF may be slightly understated as a result.

NOTE: WGTW (Ind.), WUVP (UnIvision), WWSI (Telemundo) and Court TV are now encoded. However, these outlets were not encoded in time to be included in the March release of data. MSNBC was encoded in time to be included in the March release of data. But, MSNBC was not encoding for 13 days of the survey period and is therefore not included in the March release of data.

## WARNING

All Arbftron audience estimates are confidential, proprietary to, and copyrighted by Arbitron Inc. The audience

thes,e estimajes and data for the buying, planning and/or selling of media time is strictly prohibited.

Set Meter data copyright 2002 Nielsen Media Research, Inc. All rights reserved.
Set Meter data are provided for evaluation purposes only. No commercial use whatsoever is authorized.

**Philadelphia PPM Outlet - TV**
**AQH Ratings - Total Day**
**Total Persons Age 50+, Entire DMA**

Anahmis Period
Start Date:        2128102
End Date:          3/27/02
Population:        2,275,857
Avg. Daily
Intab:                  344

**Broadcast TV**

| Monday-Sunday | AQH | | NMR Motor/Diary | |
| --- | --- | --- | --- | --- |
| | Rating | Share | Rating | Share* |
| **6AM42MID** | | | | |
| KYW (CBS) | 5.20 | 15.2 | 4.54 | 17.2 |
| WCAU (NBC) | 5.00 | 14.6 | 4.90 | 18.5 |
| WHYY (PBS) | 0.70 | 2.2 | 0.72 | 2.7 |
| WPHIL (WB) | 1.30 | 3.8 | 0.71 | 2.7 |
| WPPX (PAX) | 0.50 | 1.5 | 0.33 | 1.2 |
| WPSG(UPN) | 1.20 | 3.5 | 0.84 | 3.2 |
| WPVI (ABC) | 8.60 | 25.2 | 7.13 | 27.0 |
| WTXF (FOX) | 2.30 | 6.8 | 1.58 | 6.0 |
| | 24.80 | 72.7 | 20.74 | 78.5 |

**Cable TV**

| Monday-Sunday | AQH | | NMR Meter/Diary | |
| --- | --- | --- | --- | --- |
| | Rating | | Rating | Share* |
| **6AM-12MID** | | | | |
| A&E | 0.90 | 2.7 | 0.71 | 2.7 |
| BET | 0.10 | 0.4 | 0.07 | 0.3 |
| CN8 | 0.10 | 0.4 | '0.02 | 0.1 |
| CNN | 0.80 | 2.3 | 0.43 | 1.6 |
| CSN | 0.70 | 2.0 | 0.35 | 1.3 |
| DISCOVERY | 0.50 | 1.3 | 0.29 | 1.1 |
| ESPN | 0.60 | 1.8 | 0.24 | 0.9 |
| ESPN2 | 0.30 | 0.8 | 0.07 | 0.3 |
| ETV | 0.20 | 0.6 | 0.11 | 0.4 |
| FX | 0.40 | 1.1 | 0.20 | 0.7 |
| HEADLINE NEW | 0.10 | 0.3 | 0.01 | 0.0 |
| HISTORY CHAN | 0.50 | 1.5 | 0.27 | 1.0 |
| LIFETIME | 1.00 | 3.0 | 1.18 | 4.4 |
| MTV | 0.10 | 0.4 | 0.03 | 0.1 |
| NICKELODEON | 0.50 | 1.4 | 0.23 | 0.9 |
| TBS | 0.80 | 2.4 | 0.60 | 2.3 |
| TNN | 0.20 | 0.7 | 0.08 | 0.3 |
| TNT | 1.00 | 3.0 | 0.70 | 2.7 |
| VH1 | 0.10 | 0.2 | 0.01 | 0.0 |
| WEATHER CHAN | 0.30 | 0.9 | 0.07 | 0.3 |
| | 9.20 | 27.3 | 5.68 | 21.5 |
| Total Encoded IV | 34.00 | 100.0 | 26.42 | 100.0 |

For Purposes of this report, Arbitron has adopted the Nielsen format of presenting results to two decimal points. The current Arbitron PPM application only produces values to one decimal point.

Share among encoded outlets only; shares calculated on the basis of AQH Persons projections. " WTXF did not encode all broadcast hours on 2128102 and 3/1/02. Data for WTXF may be slightly understated as a result.

NOTE: WGTW (Ind.), WUVP (Univision), WWSI (Telemundo) and Court TV are now encoded. However, these outlets were not encoded in time to be included in the March release of data. MSNBC was encoded in time to be included in the March release of data. But, MSNBC was not encoding for 13 days of the survey period and is therefore not included in the March release of data.

<u>**WARNING:**</u>

All Arbitron audience estimates are confidential, proprietary to, and copyrighted by Arbitron Inc. The audience estimates and accompanying data In this Report are intended for internal business and analysis purposes only. Any use of these estimates and data for the buying, planning and/or selling of media time is strictly prohibited.

Set Meter data copyright 2002 Nielsen Media Research, Inc. All rights reserved. Set Meter data are provided for evaluation purposes only. No commercial use whatsoever is authorized.

**Philadelphia PPM Outlet - TV**
**) '~aiings - Total Day**
.AQH
  **otal Persons Age 55+, Entire DMA**

PPM Parameters
Start Date:        2/28/02

End Date:          3127/02
Population:    1,747,050
Avg. Daily
Intab:                267

**Broadcast TV**

| Monday-Sunday | AQH | | NMR Meter/Diary | |
| --- | --- | --- | --- | --- |
| | Rating | | Rating | Share* |
| 6AM-112MID | | | | |
| KYW (CBS) | 5.50 | 15.3 | 4.90 | 17.4 |
| WCAU (NBC) | 5.30 | 14.6 | 5.25 | 18.7 |
| WHYY (PBS) | 0.80 | 2.2 | 0.87 | 3.1 |
| WPHL (WB) | 1.30 | 3.5 | 0.76 | 2.7 |
| WPPX (PAX) | 0.60 | 1.6 | 0.37 | 1.3 |
| WPSG(UPN) | 1.20 | 3.4 | 0.79 | 2.8 |
| WPVI (ABC) | 9.50 | 26.4 | 7.79 | 27.7 |
| WTXF (FOX) | 2.20 | 6.0 | 1.61 | 5.7 |
| | 26.30 | 73.1 | 22.33 | 79.4 |

**Cable TV**

| Monday-Sunday | AQH | | NMR Meter/Diary | |
| --- | --- | --- | --- | --- |
| | Rating | | Rating | Share* |
| 6AM-12MID | | | | |
| A&E | 1.00 | 2.9 | 0.79 | 2.8 |
| BET | 0.10 | 0.4 | 0.05 | 0.2 |
| CN8 | 0.10 | 0.4 | 0.02 | 0.1 |
| CNN | 0.90 | 2.4 | 0.49 | 1.7 |
| CSNI | 0.60 | 1.8 | 0.35 | 1.2 |
| DISCOVERY | 0.50 | 1.3 | 0.31 | 1.1 |
| ESPN | 0.70 | 1.8 | 0.21 | 0.7 |
| ESPN2 | 0.30 | 0.9 | 0.07 | 0.3 |
| ETV | 0.20 | 0.6 | 0.11 | 0.4 |
| FX | 0.30 | 0.9 | 0.18 | 0.7 |
| HEADLINE NEW | 0.10 | 0.3 | 0.01 | 0.0 |
| HISTORY CHAN | 0.60 | 1.6 | 0.28 | 1.0 |
| LIFETIME | 1.10 | 3.1 | 1.26 | 4.5 |
| MTV | 0.10 | 0.3 | 0.01 | 0.0 |
| NICKELODEON | 0.50 | 1.3 | 0.24 | 0.8 |
| TBS | 0.90 | 2.5 | 0.58 | 2.1 |
| TNN | 0.20 | 0.6 | 0.05 | 0.2 |
| TNT | 1.10 | 2.9 | 0.69 | 2.4 |
| VH1 | 0.10 | 0.2 | 0.01 | 0.0 |
| WEATHER CHAN | 0.30 | 0.9 | 0.07 | 0.2 |
| | 9.70 | 26.9 | 5.79 | 20.6 |
| Total Encoded TV | 36.00 | 100.0 | 28.12 | 100.0 |

For purposes of this report, Arbitron has adopted the Nielsen format of presenting results to two decimal points. The current Arbitron PPM application only produces values to one decimal point.

  Share among encoded outlets only; shares calculated on the basis of AQH Persons projections.
** WTXF did not encode all broadcast hours on 2/28/02 and 311/02. Data for WTXF may be slightly understated as a result

NOTE: WGTW (Ind.), WUVP (Univision), WWSI (Telemundo) and Court TV are now encoded. However, these outlets were not encoded in time to be included in the March release of data. MSNBC was encoded in time to be included in the March release of data. But, MSNBC was not encoding for 13 days of the survey period and is therefore not included in the March release of data.

**<u>WAMING:</u>**

All Arbitron audience estimates are confidential, proprietary to, and copyrighted by Arbitron Inc. The audience

egftatf~s and accompanying data in this Report are intended for internal business and analysis purposes only. Any use of .V,ese estimates and data for the buying, planning and/or selling of media time is strictly prohibited.

ᵢet Meter data copyright 2002 Nielsen Media Research, Inc. All rights reserved.
Set Meter data are provided for evaluation purposes only. No commercial use whatsoever is authorized.

4

# OSTROLENK, FABER, GERB & SOFFEN, LLP

### 1180 AVENIA OF THE AMERICAS, NEW YORK, NEW YORK 10036-940.3
### TEL 212 382 0700 FAX 212 382 0888 FAX 212 398 0681 -
### enxilftstrofatkcom

| PARTNEkS | | AMLATES | | OF MINSEL | |
|---|---|---|---|---|---|
| SAMUEL H. Wk2NkX | DOVOTAS A. HMO | CNARLES Q ACHKAR.Ph.U | DOUGW | HAM | KAJON NISCISFS4nr BARS |
| kUHIMT C. FABER | ALFRED R FABRICANT | | | PEM & 57.0ANT | JEROME M. BERLINER |
| | **WASHINGTON OM- CE** | | | | |
| *MAX MIDSKOWM W.* | MARC URBOL4TRIN | MANY G. FONTINCT | | KAFnIN PPUFI!R | 1725 X UREET. N. |
| JAME3 A. F1141DEPt | | JOEL] FELBEAr | | LEON Znvim, | WASMCMIN. D.C. 20006 |
| WYMAN 0. GRAY, M | | BRENDAN I YENNEDY | | LAVRFNCP A HOFFMAN | TEL 202 457 7785 |
| LOUIS C DUJMICK | | )COURO511 SALMM' | | MAKUN J. BER.AN | FAX 202 429 3919 |
| CHARUS P. LAPOLIA | | LAVRENCE C. MWOUR | | PAXU. GUNDIKEnr | |
| | | | | JOS""). | |

wiritees direct line (212) 596-0533

July 1, 2002

<u>VIA FACSOULE</u> - *L210* 864-2501

Robert J. Sugarman, Esq.
Sugarman & Associates
I I' Floor, Robert MorrisBuilding
100 North 17' Street
Philadelphia, Pennsylvania 19103

      Re:     OFGS Ref.: 713606-43
               Brunson Communications, Inc. v.
               Arbitron, Inc. (c/o CT Coiporation System)
               Civil Action No.: 02-CV-3223

Dear Mr. Sugarman:

      As you may be aware, your client, Brunson **CQnununicadons,** The., has experienced technical difficulties at WGTW Channel 48 CWGTWj with the installation and operation of **Arbitron's PPM test encoder.** Despite instructions, WGTW did **not correctly install the test** encoder to produce timely and consistent codes during the May test period and for eight days **in the June test period. Arbitrov, therefore,** does not have useable test survey data from WGTW for the months of May and June. As a result, WQTW will not be included in the upcoming July 2, 2002 release of May's test survey results nor will it be included in any test survey results that Tnay be released for the month of June.

00571160.WPD

```
07/0,A/2901 12:56 FAX 212 382 1255       OSTROLENK,FABER
IM003/003
```

                    0s-rRc)L.ENK. FAiap-rt. GEME1 & SOFFEN, LjLP

Robert I Sugarman, Esq. July 1, 20022 Page 2

    Should Arbitron receive properly encoded infonuation from WGTW for the month of July in accordance with Arbitron's standards, WGTW will be included in the September 2002 release of the July PPM test survey results.

               Very tnily yours,

               OSTROL
                    ,BNYC,)~ABER, GERB & SOFFEN, LLP

               /ZL1
               M

MALA

00571160-ViTD

<u>CERTIFICATE OF SERVICE</u>

DAVID B. PICERK hereby certifies that a true copy of the foregoing MOTION TO

DISMISS COMPLAINT, WITH SUPPORTING MEMORANDUM OF LAW,

DECLARATION OF MARSHALL SNYDER with exhibits,, AND APPENDIX,was served by

first class mail, postage prepaid on this 8 th day of July, 2002, upon Plaintiff s counsel, as follows:

> Robert J. Sugannan, Esq.
> Sugarman & Associates
> 11'" Floor, Robert Morris Building
> 100 North 17 th Street
> Philadelphia, Pennsylvania 19103

> David B. Picker