Alfred R. Fabricant, Esq.
Marc A. Lieberstein, Esq.
OSTROLENK, FABER, GERB & SOFFEN, LLP
1180 Avenue of the Americas
New York, New York 10036
Telephone:  (212) 382-0700
Facsimile:  (212) 382-0888

    - and -

David B. Picker, Esq.
Bruce Bellingham, Esq.
SPECTOR, GADON & ROSEN, P.C.
Seven Penn Center, 1635 Market Street, 7th Floor
Philadelphia, Pennsylvania 19103
Telephone: (215) 241-8888
Facsimile: (215) 241-8844

Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **BRUNSON COMMUNICATIONS, INC.** | : |
| Plaintiff, | : |
| | : Civil Action No.:  02 CV. 3223 |
| v. | : |
| **ARBITRON, INC.** | : |
| Defendant. | : |

**DECLARATION OF MARSHALL L. SNYDER IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)**

    I, **MARSHALL L. SNYDER**, hereby declare the following to be true and correct under penalty of perjury:

00572099.1

1.      I am the Executive Vice President of Arbitron, Inc. and President of Worldwide Personal People Meter Development at Arbitron. I submit this Declaration in support of Arbitron's Motion to Dismiss.

2.      Arbitron is a media research company which is primarily in the business of licensing proprietary syndicated market research data, including radio audience measurement data, to its customers throughout the United States. Arbitron's customers include radio broadcasters, advertising agencies and advertisers. Arbitron does not offer its customers a commercial product which measures broadcast television viewing audiences in any U.S. city including Philadelphia.

3.      Since 1992 Arbitron has been developing and testing different aspects of what is now known as the Personal People Meter ("PPM"). The PPM is a pager sized device that is worn by consumers throughout the day. The pager automatically detects inaudible codes that broadcasters embed in the audio portion of their programming using encoders provided by Arbitron. The PPM is then placed into a base station that recharges the device and sends the collected codes to Arbitron for tabulation.

4.      In late 2000, Arbitron began to test and refine its PPM service in conjunction with participating media outlets, including television and radio stations, in Philadelphia. Arbitron made its plans for testing the PPM service well known. In fact, throughout the test period, Arbitron has added media outlets to the PPM test, and upon request, did the same for Plaintiff Brunson Communications, Inc.'s WGTW station. When Brunson first advised Arbitron in April 2002 that WGTW was not included in the Arbitron PPM test, Arbitron responded by providing its PPM test encoder to WGTW for WGTW's installation and operation so that WGTW could participate in the PPM test.

5. Initially WGTW experienced technical difficulties with its installation of Arbitron's PPM test encoder. Arbitron then assisted WGTW to correct the problems, and also notified recipients of the PPM test data that the media outlets included in the report represented only those outlets that were properly encoding their signal for greater than 90% of the days in the survey period. For example, the PPM test report for the March 2002 test period states:

> NOTE: **WGTW(Ind.)**, WUVP (Univision), WWSI (Telemundo) and Court TV are now encoded. However, these outlets were not encoded in time to be included in the March release of data. MSNBC was encoded in time to be included in the March release of data. But, MSNBC was not encoding for 13 days of the survey period and is therefore not included in the March release of data. (Emphasis added)

A copy of the test data report is annexed hereto as Exhibit 1.

6. Despite Arbitron's instructions, WGTW did not correct the problem with its PPM test encoder installation in time to produce timely and consistent codes during the May, June and July test periods. Without consistent usable codes from WGTW (or from any station), Arbitron cannot include such test data in its test reports. By letter dated July 1, 2002, Arbitron advised Brunson of this and stated that it will include WGTW data in its future releases of PPM test data if and when it receives properly encoded information from WGTW. A copy of that letter is annexed hereto as Exhibit 2.

7. Arbitron does not commercially market the test data which it compiles from the Philadelphia test and only provides test data information for evaluation purposes. Participants of the PPM test data have agreed in writing that the PPM data is "being provided solely as an advance opportunity to evaluate current data generated from the test deployment of Arbitron's PPM technology. This Evaluation Data and application may be used only by Licensee for internal purposes and analysis purposes. The Licensee is not permitted to use the evaluation data to buy,

plan or sell media time." Exhibits 3 and 4 hereto are copies of the PPM Addendum Agreement used with current Arbitron clients and the Arbitron, Inc. PPM Data Evaluation Agreement used for new participants who have had no previous relationship with Arbitron, respectively.

8.      Arbitron also places a "WARNING" in its release of PPM test data which states that "any use of these estimates and data for the buying, planning and/or selling of media time is strictly prohibited." See Exhibit 1  To date, there is no commercial market for the PPM test data as it is merely a test program to measure television and radio audiences in Philadelphia.

9.      Arbitron is solely responsible for the development and testing of the PPM and no other entity, including the Nielsen Company, has played any role in the installation of test equipment, the encoding or decoding of test codes or the gathering or reporting of test data. Arbitron does not own or control the Nielsen Company nor does it have any ownership interest in or control over its broadcast television ratings business.

10.     The PPM at WGTW's location is now working properly and WGTW data will be included in future test reports provided that WGTW continues to properly encode its data in accordance with Arbitron's standards.  Brunson will receive copies of those test reports provided that Plaintiff agrees to execute the participant's agreement (Exh. 4) which, to date, Plaintiff has been unwilling to do.

s/ Marshall L. Snyder
_____
Marshall L. Snyder

Date: August 21, 2002

F:\27745\001\pleadings\Snyder2Decl.wpd

00572099.1                                - 4 -