IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRUNSON COMMUNICATIONS, INC., : | |
| Plaintiff : | |
| : | NO. 02-CV-3223 |
| v. : | |
| : | |
| ARBITRON, INC., : | |
| Defendant : | |

### PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR RECONSIDERATION AND CLARIFICATION IN PART

Plaintiff, Brunson Communications, Inc., respectfully submits this Memorandum of Law in support of its Motion for Reconsideration and Clarification.

### FACTS

This case arises from Defendant Arbitron's intentional exclusion of WGTW TV Channel 48 from several installments of a television market ratings survey. In its Amended Complaint, Plaintiff Brunson Communications, Inc., owner of WGTW, a small television station serving the Philadelphia area, alleges that Defendant, in the business of measuring television viewing by the public, is liable under several causes of action: Sherman Act antitrust violations, Lanham Act violations, disparagement of commercial products, tortious interference with prospective contractual relations, negligence and promissory estoppel.

Defendant filed a Motion to Dismiss pursuant to Federal Rule

of Civil Procedure 12(b)(6), seeking dismissal of all of plaintiff's claims, including plaintiff's antitrust claim under Section 2 of the Sherman Act. Oral argument was held on October 8, 2002.

At the oral argument, this Court directed limited discovery as to Arbitron's published reports or statements for the Philadelphia television market from February 2002 to August 2002, the period in which Arbitron excluded WGTW from its television surveys. By way of this court-ordered discovery, defendant Arbitron, by and through its witness, testified that the exclusion of plaintiff from the survey was intentional, and not inadvertent.

Specifically, at his deposition, Kevin Smith, a Senior Vice President of Arbitron, testified that he believed WGTW was excluded through March 2002 because Arbitron did not have enough equipment to connect all stations; the stations included in the survey were those which had been included in an earlier Wilmington survey, and three others for which Arbitron had equipment. (Deposition of Kevin Smith, 11/07/02, at 32-36). Mr. Smith's statements suggest three significant facts: 1) Arbitron chose to offer its limited supply of equipment to other stations rather than WGTW; and 2) Arbitron's public statements regarding the reliability and accuracy of the survey were made with the

knowledge of their falsity; and 3) his statement on May 20, 2002 claiming that all channels had been included misled the industry to believe all stations in the Philadelphia market were included in the survey. (See Duffin Affidavit, ¶7). This enhances plaintiff's common law claims, and also enhances the suspect nature of defendant's conduct as it relates to the anti-trust motivational aspects. In its Opinion, the Court properly acknowledged that these were issues.

Additionally, by way of the limited discovery, plaintiff has developed, from the website of defendant Arbitron, as well as the testimony and exhibits produced by Arbitron, more of the nature of the relationship between Arbitron and Neilson. Specifically, Plaintiff is now in possession of information confirming the intention of Neilson and Arbitron to form a joint venture. This supports plaintiff's allegations that the action of Arbitron and Neilson is subject to being treated as a combination for anti-trust law purposes.

Plaintiff submitted the results of this limited discovery to the Court on November 20, 2002, as directed. However, the Court, in its discretion, chose not to include consideration of the discovery in its decision to grant Defendant's Motion to Dismiss. Moreover, the Court did not grant leave to amend the antitrust claims, and, instead, faulted plaintiff for not requesting

further leave to amend its complaint.

In fact, plaintiff had sought leave to amend in its answer to defendant's Motion to Dismiss (Wherefore Clause).  The Court apparently overlooked this request.  While it is true that plaintiff did not file a separate motion for leave to file an amended complaint or reiterate its prior request after oral argument, plaintiff was complying with the Court's directive as to how to proceed, a directive which was given to the parties at oral argument and by way of Order dated October 8, 2002; and assumed its request for leave was adequately articulated.

The Court issued its December 31, 2002 Order, which granted defendants' Motion to Dismiss without leave to amend as to the antitrust and Lanham Act claims and two of the common law claims, and without prejudice to plaintiff's right to file a Second Amended Complaint as to the claims for negligence and disparagement.

ARGUMENT

I.   **STANDARD OF REVIEW**

Pursuant to Local Rule of Civil Procedure 7.1(g), a party may move for reconsideration of an issue.  Courts will reconsider, alter or amend a judgment or reconsider an issue  ... when new evidence has become available, or when there is a need to correct a clear error or prevent manifest injustice.  <u>General</u>

Instrument Corp. v. Nu-Tek Elecs. & Mfg., 3 F.Supp.2d 602, 606 (E.D.Pa. 1998), aff'd 197 F.3d 83 (3d Cir. 1999); See also, Harsco Corp. V. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985), *cert. denied*, 476 U.S. 1171 (1986) ("The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence") (emphasis added).

In determining a motion to reconsider, the court should keep an open mind, and should not hesitate to grant the motion if necessary to prevent manifest injustice or clear error. A & H Sportswear Co. v. Victoria's Secret Stores, 2001 WL 881718, *1 (E.D.Pa. May 1, 2001).

Here, plaintiff seeks reconsideration and clarification in part of this Court's December 31, 2002 Order, based upon the need to properly present newly discovered evidence. In light of this discovery evidence, plaintiff seeks reconsideration of the Court's decision to exclude the Sherman Act claims with prejudice, and allow an amended complaint as to them. Also as a result of the discovery evidence, plaintiff seeks clarification that it may, within the scope of the Court's Order, add additional negligence claims (whether as separate counts or otherwise) relating to different time periods and different conduct of the defendant.

**II.   CONSIDERATION OF NEWLY DISCOVERED EVIDENCE**

A motion for reconsideration should only be granted when there is *newly available evidence*, an intervening change in controlling law or if the court committed manifest errors of law or fact and there is a need to prevent manifest injustice.  See NL Industries, Inc. v. Commercial Union Ins. Co., 65 F.3d 314, 324 n. 8 (3d Cir. 1985)(emphasis added).  Federal Rule of Civil Procedure 60(b) defines newly discovered evidence as evidence which, by due diligence, could not have been discovered prior to the date of the Court's decision.  See Fed.R.Civ.P. Rule 60(b); Seidman v. American Mobile Systems, 965 F.Supp. 612 (E.D.Pa. 1997).  Here, although the evidence was available prior to the Court's December 31 Opinion and Order, the Court did not actually consider the newly discovered evidence in its decision to grant the defendant's Motion to Dismiss.

As stated above, at oral argument, this Court directed limited discovery as to Arbitron's published reports or statements for the Philadelphia television market from February 2002 to August 2002, the period in which Arbitron excluded WGTW from its television surveys.  By way of this court-ordered discovery, defendant Arbitron, by and through its witness, testified that the exclusion of plaintiff from the survey was intentional, and not inadvertent.  This enhances plaintiff's

common law claims, and also enhances the suspect nature of defendant's conduct as it relates to the anti-trust motivational aspects, but was not considered by the Court.

While the Court has discretion to exclude or include discovery that it had directed be taken, plaintiff was entitled to assume that the Court would include consideration of the discovery. This Court did not, however, consider the discovery, most importantly the intentional aspects of Arbitron's conduct. Hence, the evidence remains newly available, and should be reconsidered as discussed *infra*.

### III. LEAVE TO AMEND

Under Federal Rule of Civil Procedure 15(a), if a responsive pleading is already served, a party may only amend is pleading by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires. Fed.R.Civ.P. Rule 15(a). In this case, because a responsive pleading has been served in the form of defendant's answer to the complaint and there is no written consent from the defendants, leave of court is required. It is the policy of Rule 15(a) to liberally grant leave to amend the pleadings. <u>Heyl & Patterson Int'l, Inc. v. F.D. Rich Housing Virgin Islands, Inc</u>, 663 F.2d 419, 425 (3d Cir. 1981). This approach is based on a strong public policy that cases be decided on the merits and not on

pleading technicalities.  <u>Dole v. Arco Chemical Co.</u>, 921 F.2d 484, 487 (3d Cir. 1990).

   In light of the Court's decision, unknown to the parties, not to include consideration of the limited discovery, leave to amend to give plaintiff the opportunity to address these enhanced arguments is reasonable.  However, the Court did not grant leave to amend on the antitrust claims, and, instead, faulted plaintiff for not requesting further leave to amend its complaint.

   In fact, plaintiff had sought leave to amend in its answer to defendant's Motion to Dismiss (in the Wherefore Clause).  The Court apparently overlooked this request.  While it is true that plaintiff did not file a separate motion for leave to file an amended complaint after oral argument, plaintiff was complying with the Court's directive as to how to proceed, a directive which was given to the parties at oral argument and by way of Order dated October 8, 2002; and reasonably assumed its request for leave was adequately articulated, and that the discovery product would be considered.

   To the extent that plaintiff has not done so up to now, plaintiff should be allowed to seek leave at this time.  The Statute of Limitations has not run, and defendant would not be prejudiced by allowing a second amended complaint.  Multiple amendments are common in complicated anti-trust matters, as well

as complex commercial situations, and plaintiff s knowledge of the facts is evolving.  Moreover, the strong policy of deciding cases on their merits, rather than pleading technicalities, combined with the powerful nature of the newly discovered evidence requires that the Court grant leave to amend as to the following claims.

    A.    <u>**The Antitrust Count I Should be Reinstated or Leave to Reprieve Granted**</u>.

Plaintiff has developed, from the website of defendant Arbitron, as well as the testimony and exhibits produced by Arbitron, more of the nature of the relationship between Arbitron and Neilson.  This information was summarized in plaintiff s discovery submission to the court in paragraphs 5 and 6.  As stated therein, plaintiff is now in possession of information confirming the intention of Neilson and Arbitron to consider forming a joint venture. The Court may recall that this was advanced in oral argument, but was denied and characterized derisively by counsel for Arbitron at the oral argument.  The action of Arbitron and Neilson, therefore, is subject to being treated as that of a single entity for anti-trust law purposes.

The Court, in its Opinion, suggests that there is an absence of an appropriate market in which the plaintiff might have suffered anticompetitive injury.  The Court, in essence, sees no

reasonable potential economic climb, and does not acknowledge the relationship of Nielsen and Arbitron such as to make them either one monopolist, or to create sufficient evidence of a relationship to make them antitrust competitors operating in combination. It is respectfully submitted that the Court is in error in both respects.

As to potential injury to the plaintiff and anticompetitive nature, the Complaint alleges that plaintiff is a small competitor among large competitors. To the extent it is evident that the plaintiff remains in business, it is also evident as a matter of public notice that the plaintiff is not a network, and does not enjoy the power of a network station, or indeed of a large independent or quasi network station. The plaintiff does not have to have been put out of business in order to have suffered injury; and it is common economic knowledge that small competitors may be kept weak or weaker by anticompetitive actions. E.g., <u>Aspen Skiing Co. v. Aspen Highlands Skiing Corp.</u>, 105 S.Ct. 2847 (1985)(refusal by owner of three of four major ski facilities in Aspen to cooperate with smaller competitor a violation of Section 2 of Sherman Act).

As to the relationship between Arbitron and Nielsen, plaintiff did proffer the additional information learned in discovery and from the website. It showed that Arbitron and

Nielsen acknowledged an existing relationship by which Nielsen was participating financially in the rollout of the PPM System. It also showed that the parties were working together functionally, in that Nielsen was providing information. Competitors do work together, and this may constitute an antitrust combination. See U.S. v. General Motors Corp., 86 S.Ct. 1321 (1966)(holding that Sherman Act prohibits conspiracies between competitors).

Moreover, in its Opinion, the Court held that a single product can never be the subject of a market, but the United States Supreme Court held otherwise in the DuPont case, cited by plaintiff at Brief, page 7, as well as in oral argument. See United States v. E.I. Du Pont Nemours & Co., 351 U.S. 377 (1956)( When a product is controlled by one interest, without substitutes available in the market, there is monopoly power. ); see also Eastman Kodak Co. of New York v. Southern Photo Materials Co., 273 U.S. 359(1927).

While plaintiff could not allege specific facts as to a refusal to deal combination, plaintiff s theory that Arbitron was  playing up to  the large networks is clearly, in fact, a reasonable supposition, without discovery, which was not included within the Court s Order.  Although defense counsel did permit plaintiff to examine the witness on that subject to a degree, the

witness stated it was not within the scope of his responsibilities to be familiar with such matters, e.g., why Arbitron connected other outlets but not plaintiff; what conversations Arbitron executives might have had with plaintiff s competitors. (Deposition of Kevin Smith, 11/07/02, st 59-64).

In these circumstances, plaintiff respectfully submits that the Court was in error, or plaintiff should be permitted to replead the antitrust count, to describe the additional information that was not included in the Amended Complaint, because it was obtained after the Amended Complaint was filed.

### B.  **The Court Should Clarify to Allow Plaintiff to Add An Additional Claim of Reckless Disregard of Harm to the Amended Complaint**.

The previous claim of negligence was based on defendant s post-installation conduct. The additional claim relates to a different time period, spanning from defendant s initial contact with plaintiff up through and including post-installation conduct.

By way of the court-ordered discovery, defendant Arbitron, by and through its witness, testified that the exclusion of plaintiff from the survey was intentional, and not inadvertent. At his deposition, Kevin Smith, a Senior Vice President of Arbitron, testified that he believed WGTW was excluded through March 2002 because Arbitron *did not have enough equipment* to

connect all stations; the stations included in the survey were those which had been included in an earlier Wilmington survey, and three others for which Arbitron had equipment. (Deposition of Kevin Smith, 11/07/02, at 32-36).  Mr. Smith s statements suggest three significant facts: 1) Arbitron chose to offer its limited supply of equipment to other stations rather than WGTW; and 2) Arbitron s public statements regarding the reliability and accuracy of the survey were made with the knowledge of their falsity; and 3) his statement on May 20, 2002 claiming that  all channels had been included  misled the industry to believe all stations in the Philadelphia market were included in the survey. (See Duffin Affidavit, ¶7).

These new facts not only enhance plaintiff s common law claims of negligence and disparagement, but create what may be a new claim of reckless disregard of harm.  This Court has granted leave to amend the common law claims of negligence and disparagement.  Plaintiff now seeks clarification as to whether it may add the claim of reckless disregard of harm.

Plaintiff has a viable cause of action sounding in negligence against Arbitron, based on these facts.  It wishes to assert that: 1) Arbitron owed plaintiff a duty; 2) Arbitron failed to conform with its duty; 3) that there is a close connection between Arbitron s failure and the resulting injuries;

and 4) that plaintiff sustained actual loss or damages. See Kenner v. Kappa Alpha Psi Fraternity, Inc. 808 A.2d 178 (Pa.Super. 2002). Here, the discovery evidence obtained from the deposition of Kevin Smith directly adds to plaintiff's claims regarding defendant's duty to plaintiff.

The existence of a duty in any given situation is predicated on a relationship existing at the time in question. Dumanksi v. City of Erie, 34 A.2d 508, 509 (Pa. 1943). If the parties are strangers, the scope of the duty not to place others at risk is limited to those risks which are reasonably foreseeable. Maxwell v. Keas, 639 A.2d 1215 (Pa.Super. 1994). Accordingly, Arbitron, as an actor and not just a spectator, has a common law duty to recognize the unreasonable risk of harm to others through intervention of negligence, and such duty extended to WGTW. Kenner, 808 A.2d at 182.

Furthermore, as the probability of injury to another, apparent from the facts within the defendant's knowledge, becomes greater, its conduct takes on more of the attributes of intent. *Prosser on Torts* at 176-177 (1941). One such intermediate mental state, based upon a recognizable great probability of harm, is that of recklessness. Id.

Here, the newly discovered facts obtained from the Smith deposition, discussed *supra*, demonstrate a duty, a breach of the

duty, and indeed also a reckless disregard for plaintiff's harm. Smith testified that Arbitron had knowingly and intentionally excluded WGTW from it survey due to a lack of equipment, while touting the survey as comprehensive. Smith's testimony reveals Arbitron's knowledge of the deliberate exclusion of WGTW. By making statements touting the accuracy and comprehensiveness of the survey, discussed *supra*, Arbitron had full knowledge of the harm such statements could foreseeably cause WGTW, a station intentionally excluded from the survey. Arbitron is in the business of viewer measurement; certainly it is aware that negative misrepresentation of ratings may directly affect a station's image advertising sales. Arbitron claimed its survey was comprehensive when it knew it was not.

   The subsequent injury to WGTW was both 1) foreseeable, in that Arbitron fully expects advertising decisions to be made based upon the results of its surveys, and 2) unreasonable, in that Arbitron could easily have taken measures to prevent the harm. The combination of intentional exclusion of WGTW, and touting the survey gives rise to a claim for reckless disregard of the station's harm. Although defendant knew WGTW was not represented in the survey, defendant made no effort to either include WGTW and remedy the problem, or to substantially qualify the survey results. Thus, due to the great probability, if not

certainty, of harm to WGTW, there is a strong claim that Arbitron breached its duty to WGTW, acting in reckless disregard of plaintiff s harm.

## CONCLUSION

For the foregoing reasons, this Honorable Court should grant plaintiff s Motion for Reconsideration and Clarification in Part, and allow plaintiff to amend the anti-trust counts of the complaint, and add additional claims of negligence and/or reckless indifference under common law, in addition to adding additional facts to the present negligence and disparagement claims.

Respectfully submitted,

_____
ROBERT J. SUGARMAN
Counsel for Plaintiff

OF COUNSEL:

SUGARMAN & ASSOCIATES
11th Floor, Robert Morris Building
100 North 17th Street
Philadelphia, PA 19103
(215) 864-2500

Dated: January 15, 2003