**TABLE OF CONTENTS**

I.   INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.  ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    A.   Brunson's Motion for Reconsideration Should Not Even Be
        Entertained by the Court . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    B.   Leave To Amend Is Not Warranted Because Plaintiff Has
        Previously Amended Its Complaint; Arbitron Would Be
        Gravely Prejudiced By Such Amendment and Brunson Has
        Come Forward With No New Basis to Cure Its Deficiencies . . . . . . . . 13

    C.   No Clarification Is Necessary; No New Claims Should Be Allowed . . . 15

III. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

**TABLE OF AUTHORITIES**

<u>FEDERAL CASES</u>

*Brunswick Corp. v. Pueblo-O-Mat, Inc*., 429 U.S. 477 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Commonwealth of Pa. Exrel Zimmermann v. PepsiCo., Inc.*, 836 F.2d 173 (3d Cir. 1988) . . . 14

*Eichorn v. AT&T Corp*., 248 F.3d 131 (Fed. Cir. 2001)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Garshman v. Universal Resources Holding, Inc.*, 824 F.2d 223 (3d Cir. 1987)  . . . . . . . . .  14-15

*General Instrument Corp., v. Nu-Tek Electronics,* 3 F. Supp. 2d 602 (E.D. Pa. 1998),
*aff'd,* 197 F.3d. 83 (3d. Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4,7

*Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985), *cert. denied*,
476 U.S. 1171 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574 (1986)  . . . . . . . . . . . . 13

*Memmolo v. Commodore Bus. Machs.*, 1984 U.S. Dist. LEXIS 23834 (E.D. Pa. 1984) . . . . . . 15

*Seidman v. American Mobile Sys.*, 965 F. Supp. 612 (E.D. Pa. 1997) . . . . . . . . . . . . . . . . . . . . . 7

*Tunis Bros. Co., Inc. v. Ford Motor Co*., 952 F.2d 715 (3d Cir. 1991)  . . . . . . . . . . . . . . . . . . 14

*United States v. E.I. DuPont de Nemours & Co*., 351 U.S. 377 (1956)  . . . . . . . . . . . . . . . . . . 14

IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

```
_____x
                                         :
BRUNSON COMMUNICATIONS, INC.             :
                                         :
                Plaintiff,               :
                                         :  Civil Action No.:  02 CV. 3223
        v.                               :
                                         :
ARBITRON, INC.                           :
                                         :
                Defendant.               :
_____x
```

**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S
<u>MOTION FOR RECONSIDERATION AND CLARIFICATION IN PART</u>**

Date: February 10, 2003

Alfred R. Fabricant, Esq.
Douglas Q. Hahn, Esq.
**OSTROLENK, FABER, GERB & SOFFEN, LLP**
1180 Avenue of the Americas
New York, New York 10036
Telephone:  (212) 382-0700
Facsimile:  (212) 382-0888

David B. Picker, Esq.
**SPECTOR, GADON & ROSEN, P.C.**
Seven Penn Center,
1635 Market Street, 7th Floor
Philadelphia, Pennsylvania 19103
Telephone: (215) 241-8888
Facsimile: (215) 241-8844

Attorneys for Defendant Arbitron, Inc.

**I.      INTRODUCTION**

Plaintiff Brunson Communications, Inc. ("Brunson") filed its original complaint on May 24, 2002 ("the Complaint"). The Complaint alleged claims under Sherman Act Sections 1 and 2 and also raised claims under Lanham Act §43(a) and under common law. In lieu of an Answer, defendant Arbitron, Inc. ("Arbitron") filed a detailed motion to dismiss the Complaint in its entirety. In its Memorandum of Law in support of the Motion to Dismiss, Arbitron identified with specificity the pleading deficiencies in each and every claim asserted by plaintiff in the lawsuit, particularly the anti-trust claims.

Obviously recognizing and acknowledging that there were serious pleading deficiencies with the Complaint, Brunson, in lieu of opposing the Motion to Dismiss, filed and served an Amended Complaint rendering Arbitron's initial Motion to Dismiss moot. This Amended Complaint was, without question, drafted by Brunson's counsel with the benefit of the legal arguments and case citations raised by Arbitron in its Motion to Dismiss, especially with respect to the *prima facie* pleading requirements necessary to sustain an anti-trust claim under Sections 1 and 2 of the Sherman Act. Nonetheless, upon careful review of Brunson's Amended Complaint, it was apparent that Brunson's attempt to cure its fatal pleading deficiencies by adding additional, conclusory language to its allegations and by expanding its anti-trust theories was inadequate. Plaintiff had still failed to properly plead any sustainable claim for relief in its Amended Complaint. For this reason, Arbitron filed a second Motion to Dismiss the Amended Complaint in its entirety.

Plaintiff did not fail in its attempt to frame viable claims due to a lack of competent and creative counsel or because plaintiff's counsel was unfamiliar with the necessary pleading requirements of the various counts asserted in the Amended Complaint  particularly in light of

Arbitron's briefing on its initial Motion to Dismiss. Rather, Plaintiff failed to state claims which could survive a motion to dismiss because the circumstances underlying this lawsuit, particularly the conduct and activities of Arbitron in launching its Philadelphia market test, do not constitute the type of activities and conduct which the anti-trust laws and the Lanham Act were meant to prevent. The same is true with respect to Brunson's state common law claims which, in order to survive, require, at a minimum, allegations that Arbitron made certain promises and/or took certain steps and actions which, if proven, would be actionable at law. This, Brunson has simply failed to do and we submit it cannot do.

After full briefing on Arbitron's second Motion to Dismiss and oral argument before the Court, the Court permitted limited discovery solely on the issue of certain alleged factual statements and representations made by an Arbitron Vice President, Kevin Smith, at a May, 2002 presentation to broadcasters. This discovery related to Brunson's claim of commercial disparagement. Following the limited discovery, both Plaintiff and Defendant filed an additional submission with the Court addressing the limited discovery and primarily the Smith deposition testimony (the "Smith Depo.).

On December 31, 2002 this Court entered its Memorandum Decision granting Arbitron's Motion to Dismiss the Amended Complaint in its entirety. In its decision, the Court granted Plaintiff leave to file a Second Amended Complaint with respect to Plaintiff's claims for commercial disparagement (Count IV) and negligence (Count VI), but dismissed all other claims with prejudice. Following the Court's decision, Brunson filed the instant Motion for Reconsideration and Clarification In Part.

3

Although Plaintiff characterizes its Motion for Reconsideration as a request to allow Plaintiff to amend its anti-trust counts one more time and to add an additional common law claim for "reckless disregard for harm," the substance of the argument made in plaintiff's supporting memorandum of law is that this Court erred in dismissing the anti-trust claims. *See* Brunson's Memorandum of Law ("Brunson Memo") at 9 ("The Anti-Trust Count I Should be Reinstated..."). According to Brunson: "the Court in its Opinion suggests that there is an absence of an appropriate market in which the plaintiff might have suffered anticompetitive injury. The Court, in essence, sees no reasonable potential economic climb, [harm], [sic], and does not acknowledge the relationship of Nielsen and Arbitron such as to make them either one monopolist, or to create sufficient evidence of a relationship to make them antitrust competitors operating in combination. It is respectfully submitted that the Court is in error in both respects." *Id.* at 9,10. Likewise, Brunson criticizes the Court's holding that plaintiff has failed under the rule of reason test to sufficiently allege a restraint of trade with actual competitive harm of diminution in a relevant market in order to proceed with its § 1 Sherman Act claim. *Id.* at 11.

Plaintiff's Motion for Reconsideration and Clarification In Part falls far short of meeting the standard in this Circuit for the granting of a motion for reconsideration. District courts will grant motions for reconsideration only where there is "(1) an intervening change in the controlling law, (2) the emergence of new evidence not previously available, or (3) the need to correct a clear error of law or to prevent a manifest injustice." *General Instrument Corp., v. Nu-Tek Electronics*, 3 F. Supp. 2d 602, 606 (E.D. Pa. 1998), *aff'd,* 197 F.3d. 83 (3d Cir. 1999). Not one of these factors is present here.

Brunson does not urge an intervening change in controlling law and makes no legal arguments not previously presented to this Court in opposition to Arbitron's Motion to Dismiss. Nor does Brunson contend that there is new evidence which was not previously available which should cause this Court to change its prior ruling. Indeed, Brunson concedes that its "newly gathered evidence" in the form of the deposition testimony of Kevin Smith as well as "Arbitron website information" was known to Brunson and submitted to the Court in connection with its opposition to Arbitron's Motion to Dismiss. Brunson Memo at 6. Brunson complains that the Court, in its discretion, chose not to consider Brunson's factual submission in deciding Arbitron's Rule 12 (b)(6) Motion to Dismiss. Such is not the nature of "new evidence not previously available in the context of a motion for reconsideration. In any event, this Court has allowed Brunson to re-plead its commercial disparagement claim, which was the subject of the limited discovery evidence submitted by the parties to the Court. Such evidence was entirely unnecessary for the determination of the motion on the anti-trust and unfair competition claims. Nor does Brunson argue that this Court has made a "clear error of law" or that relief is necessary "to prevent a manifest injustice."

Respectfully, denial of Brunson's Motion for Reconsideration is what is necessary to prevent manifest injustice to Arbitron.

As we believe this Court recognized in dismissing the anti-trust and unfair competition claims with prejudice, the time must come when a plaintiff, who has had several opportunities to properly set forth a viable cause of action, must be prohibited from further amendments to prevent grave injustice to the defendant. In defending itself to this point in this litigation, Arbitron has incurred significant legal costs and expenses and has devoted substantial time to defend itself against serious but baseless claims.

5

This Court in a thorough and well reasoned decision analyzed the multiple reasons why Plaintiff's anti-trust claims could not meet the threshold standards for viability under Sections 1 & 2 of the Sherman Act including:  Plaintiff's failure to plead concerted activity of a conspiracy under Section 1 with particularity; Plaintiff's failure to plead actionable anti-trust injury in a plausible market under Section 1; Plaintiff's failure to sufficiently describe and allege a " group boycott" or other actionable conspiracy between Arbitron and the "unspecified and unnamed other larger networks;" Plaintiff's failure to even set forth a plausible theory which makes economic sense as to why either the larger television stations on the one hand or Arbitron on the other hand would enter into and join such a conspiracy to exclude Brunson;  and Plaintiff's failure to properly plead an illegal monopolization by Arbitron under Section 2 of the Sherman Act or an attempt to monopolize, particularly where even Brunson concedes that Arbitron has no present commercial product in the relevant market but may only have such product at some point in the future.  None of the arguments which Brunson now makes on its Motion for Reconsideration cures any of these essential deficiencies or otherwise undermines any portion of the holdings embodied in this Court's December 31, 2002 Decision.  Accordingly, Plaintiff's Motion for Reconsideration and Clarification In Part should be denied in all respects.

## II.    ARGUMENT

### A.    Brunson's Motion for Reconsideration Should Not Even Be Entertained by the Court

Brunson does not meet the requisite standards for making a motion for reconsideration and, therefore, the motion should not even be considered by the Court.  It is Brunson's contention that

reconsideration is appropriate here under the guise of "newly discovered evidence." But even a cursory review of Brunson's motion reveals that no such evidence exists.

Brunson asserts that "plaintiff seeks reconsideration ... based upon the need to properly present **newly discovered evidence**." Brunson Memo at 5 (emphasis added). Brunson then concedes that its "new evidence" is none other than the old evidence previously submitted by Brunson to the Court after the limited discovery was concluded. Indeed, on November 20, 2002, Brunson submitted the entire transcript of the deposition of Kevin Smith, an Arbitron Vice President. This deposition concerned statements made by Mr. Smith about the PPM Philadelphia test program in May, 2002 to an assembled group of television broadcasters in Philadelphia. Brunson argues that "[h]ere, **although the evidence was available** prior to the Court's December 31 Opinion and Order, the Court did not actually consider the newly discovered evidence in its decision to grant the defendant's Motion to Dismiss." Brunson's Motion, p.6 (**emphasis added**). Brunson's argument is fatal under the standards set forth in *General Instrument*, 3 F. Supp.2d at 606.

In an attempt to support its untenable position, Brunson misreads *Seidman v. American Mobile Sys.*, 965 F. Supp. 612 (E.D. Pa. 1997), as standing for the proposition that evidence available to the Court but not considered can somehow substitute for newly discovered evidence. *Seidman* says no such thing. In fact, *Seidman* explicitly warns that "the Third Circuit has made equally clear that 'where evidence is not newly discovered, a party may not submit that evidence in support of a motion for reconsideration.'" *Seidman*, 965 F. Supp. at 629 (quoting *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985), *cert. denied*, 476 U.S. 1171 (1986)).

Brunson's Motion similarly does not proffer "new evidence" as required by Third Circuit case law. Moreover, Brunson does not offer any case law or even a rational argument to support its wholly novel position that "new evidence" can consist of actually old evidence simply because Brunson disagrees with the Court's decision that it was unnecessary to consider the supplementary evidentiary submission in order to determine the legal insufficiencies of the Amended Complaint. Brunson's asserted "newly discovered evidence" falls into two categories: (i) Brunson's characterization of Kevin Smith's testimony "that the exclusion of plaintiff from the survey was intentional, and not inadvertent" which Brunson argues "enhances plaintiff's common law claims, and also enhances the suspect nature of defendant's conduct as it relates to the anti-trust motivational aspects..." Brunson Memo at 6-7 and; (ii) information from the website of defendant Arbitron which shows "more of the nature of the relationship between Arbitron and Nielsen...as stated therein, plaintiff is now in possession of information confirming the intention of Nielsen and Arbitron to consider forming a joint venture." Brunson Memo at 9. As Brunson admits "this information was summarized in plaintiff's discovery submission to the Court in paragraphs 5 and 6." *Id.* According to Brunson this previously submitted "new evidence" shows that Arbitron and Nielsen should be treated as a single entity for anti-trust law purposes.

However, there is nothing found in Brunson's Motion for Reconsideration which was not alleged in the Amended Complaint and thus considered by the Court in determining whether these anti-trust claims could survive Arbitron's Motion to Dismiss. With respect to the assertion that Arbitron intentionally excluded Brunson from the Philadelphia test survey and that such exclusion was not inadvertent (which Brunson now argues is supported by Mr. Smith's deposition testimony) Brunson alleged in pertinent part:

> 18. Arbitron selectively and discriminatorily excluded WGTW Channel 48 in its embedding test measuring program in cooperation with and to the interest of WGTW-TV 48' competitors, the large networks and cable systems.

That allegation clearly claims an intentional exclusion of Brunson's station from the test which claim goes far beyond the actual testimony of Mr. Smith who stated only that Arbitron had not included every radio and television station at the outset of the test because it did not have enough equipment to do so. In pertinent part, as relied on by Brunson in its Memo, Mr. Smith testified as follows:

> Q. Did you explain to him why Channel 48 was not already included?
>
> A. I did communicate that with him.
>
> Q. What was the reason?
>
> A. The reasons were that this was a test and it was designed to provide Arbitron information both on television and radio station listening and it was a test also that would evolve and we would add stations over time and, as I said to him, we would be responsive to him once I was able to find out how quickly we could get our encoder at the station.
>
> Q. Did you tell him why GTW had not been included theretofore?
>
> A. I told him that as far as including them, that it was a decision on the part of Arbitron based upon our equipment, the encoders we have and at a point in time when we could physically get to the station, we would commit to encoding.
>
> Q. I don' tknow what you mean by "physically get to the station"?
>
> A. What I mean by that, forgive me, is the PPM technology works by encoding or just putting a signal, a code.

9

Q. I understand that, but I don't understand what the problem would be in physically getting to the station.

A. The problem is that there is only a certain amount of resources available as far as an engineer to come up to the station and also an inventory of encoders to be available for the station and that's out of my purview; so, I couldn't commit to him.

Q. How did you decide which stations to include in the initial sweep that was reflected in the May 20th presentation? Who made the decision what stations to include and what stations not to include?

A. The decisions for stations to encode were made actually back with our Wilmington test, which was our Phase I test. To answer your question, we wanted to start off with the affiliates, the network affiliates, in the marketplace, and, again, the goal was to add stations over time.

Q. How did Channel 17 get included in the firs round?

MR. FABRICANT: If you know. Don't speculate.

THE WITNESS: I don't know.

CONTINUATION BY MR. SUGARMAN:

Q. Did you have any meetings with any of the representatives of any of the stations before the encoders were put in place?

MR FABRICANT: Object to the form. Which stations, which tests?

MR. SUGARMAN: Any stations, the encoders in Philadelphia.

MR. FABRICANT: In connection with the Philadelphia test or the Wilmington test?

MR. SUGARMAN: Philadelphia.

THE WITNESS: I had meetings with the stations, but not related to encoding because the stations that I met with were encoding for the Wilmington test and that was done prior to my coming to Arbitron.

10

CONTINUATION BY MR. SUGARMAN:

Q. What were your meetings about?

A. My meetings were about trying to provide explanations of the Portable People Meter system, the technology.

Q. As I understood your testimony a moment ago, these stations were already encoded?

A. Yes, they were.

Q. However, you still had to meet with them to describe to them how the system worked?

A. Well, the stations have sales personnel, general managers, research folks and the questions that would be asked by different folks at the stations. My goal was to meet with them, whether it was a research director or general manager.

Q. I see.

Were any stations added after the Wilmington study or the Philadelphia study?

A. Yes.

Q. How were they selected?

A. First of all, there were three stations added to answer that question. The basis behind adding those particular stations, I did not have involvement in that actual decision, so I can' speak to that basis.

Smith Depo., pp. 32-36.

Yet, in its Motion for Reconsideration, Brunson urges that Mr. Smith's testimony shows "most importantly the intentional aspects of Arbitron's conduct." Brunson Memo at 7. Not only does Mr. Smith's testimony fail to establish an intent to specifically exclude Brunson from the test survey as plaintiff would have this Court believe but, more importantly for purposes of this motion,

the Smith testimony adds nothing to the allegations of the Amended Complaint and, therefore, forms no proper basis for a Motion for Reconsideration.

The same is true with respect to the issue of the **possible** formation of a joint venture between Arbitron and Nielsen for the PPM program. The Amended Complaint at ¶11 alleges in pertinent part:

> Nielsen and Arbitron have entered into a corporate financial relationship by which Nielsen and Arbitron are related in regard to the new system, the details of which are not known to plaintiff. References to Arbitron herein include Nielsen as an owner or joint venturer in the viewer measurement program.

Now, in support of the Motion for Reconsideration, Brunson states that "plaintiff is now in possession of information confirming **the intention** of Nielsen and Arbitron to form a joint venture." Brunson Memo at 3 (emphasis added). Not only is this nothing different than what Plaintiff has already alleged in ¶11 of the Amended Complaint but, in fact, it only again highlights the fact (as Mr. Smith confirmed during his deposition submitted by Brunson to the Court) that Arbitron and Nielsen have not yet formed a joint venture but, rather that Nielsen has an **option** to form a joint venture with Arbitron in the future.[1]

---

[1] In pertinent part, at his deposition Mr. Smith was asked the following questions and gave the following answers:

> Q. Turning to page 664, the Long Term Strategic & Deployment Plans, the first bullet is 'Contingent with Nielsen JV. Solo means slower deployment.' What does 'Contingent with Nielsen JV mean?'
>
> A. What that means is that Nielsen has an option to work with Arbitron on a joint venture that we would deploy the PPM service into markets throughout the U.S. and contingent upon their decision and when, would determine the deployment time lines.

There are no other facts which Brunson now offers in support of its Motion for Reconsideration which Brunson claims that this Court failed to consider in deciding the Motion to Dismiss. As can readily be seen from the above, Brunson has presented nothing new which was not already part of the pleadings in connection with the instant motion.

### B. Leave To Amend Is Not Warranted Because Plaintiff Has Previously Amended Its Complaint; Arbitron Would Be Gravely Prejudiced By Such Amendment and Brunson Has Come Forward With No New Basis to Cure Its Deficiencies

This Court correctly dismissed the anti-trust claims with prejudice. In light of Plaintiff's prior amendment and the extensive motion practice to date, including the instant motion, it is apparent that a further amendment of the anti-trust claims would be a futile act. This would only unfairly prejudice Arbitron by forcing Arbitron to expend significant additional money and time defending itself yet again against insupportable claims. Plaintiff has come forward with no evidence to support reconsideration of this Court's ruling and is simply revisiting the same inadequate arguments already rejected by this Court in granting the Motion to Dismiss.

At the heart of this Court's ruling was the finding that Brunson's anti-trust conspiracy theory is implausible and makes no economic sense, citing to the decision in *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Also important was the fact that Brunson could not identify an anti-trust injury in a plausible market. Brunson has not and cannot address in this motion how those findings constitute a clear error of law.

The legal arguments made by Brunson in support of its Motion for Reconsideration do not reflect any changes in the controlling law nor do they in any way demonstrate clear error of law on

---

Smith Depo., p. 48.

this Court's part. At page 10 of the Brunson Memo, Brunson attempts to revisit the issue of the "potential injury to the Plaintiff" in light of the fact that "[t]he Complaint alleges that Plaintiff is a small competitor among large competitors." Brunson argues that "[t]he Plaintiff does not have to have been put out of business in order to have suffered injury....." *Id.* Not only is Brunson's argument here the same argument that it made in opposition to the Motion to Dismiss, but the argument simply ignores the legal requirements for an anti-trust injury, namely that "[t]he anti-trust laws ... were enacted for the protection of competition, not competitors." *Brunswick Corp. v. Pueblo-O-Mat, Inc.,* 429 U.S. 477, 489 (1977). Injury to one competitor, even if true, is not a restraint to trade. *Tunis Bros. Co., Inc. v. Ford Motor Co.*, 952 F.2d 715, 725-26 (3rd Cir. 1991); *Eichorn v. AT&T Corp.*, 248 F.3d 131, 140 (Fed. Cir. 2001) ("We have consistently held a Plaintiff individually personally aggrieved by an alleged anti-competitive agreement has not suffered an anti-trust injury unless the activity has a wider impact on the competitive market."). Yet Brunson doggedly persists in the same flawed argument.

Brunson also continues to urge the same argument made previously before this Court that a single product, even Arbitron's test product, can itself define a plausible relevant market for anti-competitive behavior. In support of this argument, Brunson again cites *United States v. E.I. DuPont de Nemours & Co.*, 351 U.S. 377 (1956) for the proposition that when a product is controlled by one interest "without substitutes available in the market" it can possess monopoly power. Not only has Brunson misapplied that holding to the present circumstances, but the *DuPont* case is wholly inapposite because in the Philadelphia viewership market, there is one major substitute available, namely, the Nealson rating product which Plaintiff, in its own Amended Complaint, at paragraph

11, alleges is the only measuring system available in the Philadelphia area except for Arbitron's test service.

In sum, Brunson has no basis to seek reconsideration of this Court's decision. This Court's holding that the dismissal of the anti-trust claims is with prejudice with no leave to further amend is supported by the decisions of the Third Circuit in *Garshman v. Universal Resources Holding, Inc.*, 824 F.2d 223 (3d Cir. 1987) and *Commonwealth of Pa. Ex rel. Zimmermann v. Pepsi Co., Inc.*, 836 F2d, 173 (3d Cir. 1988). Respectfully, there is no basis for disturbing the Court's ruling.

### C. No Clarification Is Necessary; No New Claims Should Be Allowed

In Brunson's Request for Clarification of the Court's December 31, 2002 Order, Brunson seeks permission from the Court to add a new common law cause of action beyond the amendments of Count IV for commercial disparagement and Count VI for negligence. Brunson now seeks the right to add a claim for "reckless disregard for harm." Brunson Memo at 13. According to Brunson "[t]hese new facts not only enhance Plaintiff's commonlaw claims of negligence and disparagement, but create what may be a new claim of reckless disregard of harm." *Id.*

Brunson's request should be denied. "Reckless disregard for harm" is not a recognized cause of action in this judicial district. In fact, a Lexis search for "reckless disregard for harm" in the Third Circuit turns up one reference which, ironically, indicates that Court could not figure it out either:

> Count II of the complaint alleges that defendants "made false promises inducing plaintiff to rely upon false representations of permanent employment in **reckless disregard for the harm** caused to plaintiff intentionally inflicting upon plaintiff, in addition to the injuries stated, emotional stress and harm." Complaint [P] 22. **It is not clear whether this count pertains to the tort of**

> **misrepresentation, intentional infliction of emotional distress, or both**. [Emphasis added]

*Memmolo v. Commodore Bus. Machs.*, 1984 U.S. Dist. LEXIS 23834, *20 (E.D. Pa. 1984) (copy attached).

Perhaps most telling of all is the fact that Brunson has not included a proposed pleading as part of its Motion for Clarification In Part. It is a waste of time for Brunson to continue to generate allegations and novel causes of action against Arbitron. If Brunson can articulate a legally sufficient claim against Arbitron, then it should do so pursuant to the Court's December 31, 2002 Order. However, granting leave to plead a new unsubstantiated claim for "reckless disregard for harm" will not serve the parties' or Court's interest and will likely only result in further motion practice.

### III.  CONCLUSION

For the foregoing reasons, Brunson's Motion for Reconsideration and Clarification In Part should be denied in its entirety.

Dated: February 10, 2003                    Respectfully submitted,

**SPECTOR GADON & ROSEN, P.C.**

By: _____
　　　David B. Picker, Esq.
1635 Market Street, 7th Floor
Philadelphia, Pennsylvania 19103
Telephone: (215) 241-8888
Facsimile: (215) 241-8844

　　　　and

Alfred Fabricant, Esq.
Marc Lieberstein, Esq.

16

**OSTROLENK, FABER, GERB & SOFFEN, LLP**
1180 Avenue of the Americas
New York, New York 10036
Telephone: (212) 382-0700
Facsimile: (212) 382-0888

Attorneys for Defendant Arbitron, Inc.

F:\27745\001\pleadings\ReargOpp.wpd

**CERTIFICATE OF SERVICE**

It is hereby certified that a true copy of the foregoing **MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR RECONSIDERATION AND CLARIFICATION IN PART**, was served by Messenger Delivery on this 10th day of February, 2003 as follows:

Robert J. Sugarman, Esq.
Sugarman & Associates
11th Floor, Robert Morris Building
100 North 17th Street
Philadelphia, Pennsylvania 19103
Facsimile: (215) 864-2501

Attorney for Plaintiff