IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

```
BRUNSON COMMUNICATIONS, INC.,      :
                    Plaintiff :
                                   :    NO. 02-CV-3223
        v.                         :
                                   :
ARBITRON, INC.,                    :
                    Defendant :
```

**PLAINTIFF S REPLY TO DEFENDANT S MEMORANDUM OF LAW
IN OPPOSITION OF PLAINTIFF S MOTION FOR
RECONSIDERATION AND CLARIFICATION IN PART**

Plaintiff, Brunson Communications, Inc., respectfully submits this Reply to Defendant s Memorandum of Law in Opposition of Plaintiff s Motion for Reconsideration and Clarification.

ARGUMENT

**I.   THE COURT SHOULD GRANT PLAINTIFF S MOTION FOR RECONSIDERATION DUE TO THE EXISTENCE OF NEWLY AVAILABLE EVIDENCE.**

Arbitron argues the court-ordered discovery cannot qualify as newly discovered evidence because it was submitted to the court prior to its determination of the Motion to Dismiss. (Brief, at 7-8.)  Arbitron further charges that the discovery evidence was  entirely unnecessary for the determination of the motion on the anti-trust and unfair competition claims.  Id. at 5.

Brunson proposes, however, that the discovery evidence

expands and enhances the allegations in the Amended Complaint, and that the Court should utilize the discovery evidence as it pertains to all claims. As such, in the sense that the Court dictated the procedure concerning the discovery evidence, the evidence remains newly available, and should be reconsidered.

### A. Arbitron Intentionally Excluded WGTW From the Survey and Misrepresented the Facts.

Arbitron argues that Kevin Smith's testimony adds nothing to the allegations of the Amended Complaint. (Brief, at 11.) Plaintiff firmly disagrees. Arbitron ignores the key new factual situation and/or it misunderstands in saying that the new fact is only that unavailability of equipment is now identified as the reason for plaintiff's exclusion. (Deposition of Kevin Smith, 11/07/02, at 32-36). In fact, the new situation is a combination of facts, the significance of which is newly created by this fact.

In essence, only Arbitron's disclosure that the exclusion of plaintiff from the survey was with intentional foreknowledge, and not inadvertent, made the magnitude of its tortious conduct clear.

In short, it is now clear that Arbitron not only knew its representation of completeness in April 2002 and March 2002 was false, but knew <u>from the beginning</u> of 2002 that its decision to

conduct a survey with the intent to publically tout it as complete was, to put it mildly, undertaken with complete disregard for its known or foreseeable adverse effect on plaintiff.  This enhances plaintiff's common law claims, and also enhances the suspect nature of defendant's conduct as it relates to the anti-trust motivational aspects.

   Apparently not understanding this, Arbitron, in its brief, now devotes three pages entirely to the express recitation of Mr. Smith's deposition testimony. (Brief, at 9-11.)  Yet, despite Arbitron's lengthy argument which misstates plaintiff's allegations and recharacterizes Mr. Smith's statements, it ignores the fact that the testimony plainly establishes four significant facts: 1) Arbitron chose to offer its limited supply of equipment to other stations rather than WGTW; and 2) Arbitron deliberately decided to conduct the survey and release it knowing of the falsity of its characterization; and
3) Arbitron's many public statements regarding the reliability and accuracy of the survey were made with the knowledge of their implication that WGTW was not relevant; and 4) in at least one case, i.e., Smith's statement to the Pennsylvania Association of Broadcasters on May 20, 2002 claiming that "all channels had been included" (Duffin Affidavit, ¶7) the characterization was knowingly false, and equally misleading. It is this combination

that is critical.

### B. Neilson Was Participating Financially In the Rollout of Arbitron's PPM System, Making Arbitron/Neilson Either One Monopolist And/Or Competitors Acting in Combination.

In its brief, Arbitron characterizes newly discovered evidence of the relationship between Neilson and Arbitron as merely an "option" to form a joint venture. (Brief, at 12). To the contrary, however, plaintiff presented information confirming the then present financial participation of Neilson as well as the intention of Neilson and Arbitron to form a joint venture. (Plaintiff's Discovery Submission, ¶ 6.)

The additional information learned in discovery and from the Arbitron website showed that Arbitron and Nielsen had an existing relationship by which Nielsen was "participating financially" in the rollout of the PPM System. (Main Brief, at 11.) It showed that the parties were working together functionally, in that Nielsen was providing financially and by way of information. (Plaintiff's Discovery Submission, ¶¶ 5-6.)

While earlier, plaintiff could not allege a specific relationship, plaintiff's theory that Arbitron was "playing up to" dominant stations is clearly, in fact, shown to be a reasonable supposition, without discovery which was not allowed within the Court's Order. (Although defense counsel did permit

plaintiff to examine the witness on that subject to a degree, the witness stated it was not within the scope of his responsibilities to be familiar with such matters, e.g., why Arbitron connected other outlets but not plaintiff; what conversations Arbitron executives might have had with plaintiff s competitors.  (Deposition of Kevin Smith, 11/07/02, st 59-64.))

These facts support the monopolist claim under Section 2 and/or the conspiracy claim under Section 1.  In its brief, Arbitron objects to plaintiff s reference to the DuPont case, arguing that the Neilson rating product qualifies as a major substitute available in the market.  (Brief, at 14.)  In its Opinion, the Court had held that a single product can never be the subject of a market.  However, the Supreme Court held otherwise in the DuPont case, cited by plaintiff at Brief, page 7, as well as in oral argument.  United States v. E.I. Du Pont Nemours & Co., 351 U.S. 377 (1956)( When a product is controlled by one interest, without substitutes available in the market, there is monopoly power.  )

## II. PREVIOUS AMENDMENT OF THE COMPLAINT SHOULD NOT PRECLUDE THIS COURT S GRANTING LEAVE TO AMEND.

Arbitron argues that leave to amend is not warranted because plaintiff has previously amended its Complaint, and that such amendment would  gravely prejudice  Arbitron.  (Brief, at 13.)

In advancing such argument, however, Arbitron ignores well-established case law regarding liberal amendment of pleadings. Prejudice is not the loss of advantage caused by sufficient pleadings, and Arbitron has cited no other prejudice.

It is the policy of Rule 15(a) to liberally grant leave to amend the pleadings. Heyl & Patterson Int l, Inc. v. F.D. Rich Housing Virgin Islands, Inc., 663 F.2d 419, 425 (3d Cir. 1981). This approach is based on a strong public policy that cases be decided on the merits and not on pleading technicalities. Dole v. Arco Chemical Co., 921 F.2d 484, 487 (3d Cir. 1990).

In light of the Court s decision, unexpected by plaintiff, not to include consideration of the limited discovery, leave to amend to give plaintiff the opportunity to address these enhanced arguments is appropriate. The statute of limitations has not run, and defendant would not be prejudiced by allowing a second amended complaint. Multiple amendments are common in complicated anti-trust matters, as well as complex commercial situations, and plaintiff s knowledge of the facts clearly changed. Moreover, the strong policy of deciding cases on their merits, rather than pleading technicalities, combined with the powerful nature of the newly discovered evidence, requires that the Court grant leave to amend.

### III. THE COURT SHOULD CLARIFY TO ALLOW PLAINTIFF TO CLAIM RECKLESS DISREGARD OF HARM IN THE AMENDED COMPLAINT.

Arbitron argues that plaintiff's request to add an additional claim based on its reckless disregard of harm to plaintiff should be denied, citing <u>Memmolo v. Commodore Bus. Machs.</u>, 1984 U.S.Dist. LEXIS 23834, *20 (E.D.Pa. 1984) to show that such a claim has net yet been recognized in this judicial district.  (Brief, at 15.)  Arbitron has both misread <u>Memmolo</u>, and misconstrued plaintiff's proposed claim.

In <u>Memmolo</u>, the Court cites the express language of the count at issue there:

> CountCount II of Count II of the Count II of the complaint alle
>   made made false promises inducing plaintiff to rely
> upon false representations of permanent employment
> inin rin reckin reckless disregard for the harm caused to
> plaintiff intentionally inflicting upon plaintiff,
> inin addition to the injuries stated, emotional
> stress and harm.  Complaint [P] 22.

<u>Memmolo</u>, 1984 U.S.Dist.LEXIS 23834, at *20.  But their quote is out of context.  No one in <u>Memmolo</u> was discussing whether reckless disregard is a cause of action, nor is plaintiff herein.  Arbitron makes sure to note the Court's next sentence, "It is not clear whether this count pertains to the tort of misrepresentation, intentional infliction of emotional distress, or both.  <u>Id.</u>  Arbitron neglects to note, however, that in a footnote immediately following this statement, the court explains

that the plaintiff's brief addresses both misrepresentation and intentional infliction of emotional distress in the same count. <u>Id.</u> at FN 10.  As the footnote makes explicitly clear, the Court's confusion is not a product of the inclusion of "reckless disregard for the harm" in the Count, but the structure of the language of the Complaint itself.  This in no way can be read as the Court concluding that reckless disregard of harm is not compensable.

Arbitron misconstrues plaintiff's contention.  In its Motion, plaintiff does not necessarily propose adding Arbitron's reckless disregard of harm to plaintiff (see page 3, *supra*) as an entirely new claim.  In fact, the question of whether it need be added as a new claim, or can be part of the existing claim, is precisely the reason plaintiff requested the Court's clarification. The new information relates to a different factual issue (reckless disregard) in an earlier phase of the matter (i.e. January to May 2002).  If this is a new claim, then leave to add it is sought.  If the initial permission to amend the negligence count encompasses this new issue, then only clarification is requested.  Plaintiff's claim that defendant breached a common law duty to it is obviously a "negligence" claim. The "reckless disregard" standard is not a cause of action; it comes in to define the duty owed by defendant to

plaintiff because the defendant's alleged duty to plaintiff was not to recklessly disregard harm to plaintiff. As Pennsylvania cases consistently hold, the type of duty that a defendant owes to a plaintiff and has breached, may be measured by a reckless disregard standard, depending on the relationship between them. See <u>Althaus ex rel. Althaus v. Cohen</u>, 756 A.2d 1166 (Pa. 2000); <u>Dumanksi v. City of Erie</u>, 34 A.2d 508 (Pa. 1943); <u>Cruet v. Certain-Teed Corp.</u>, 639 A.2d 478 (Pa.Super. 1994).

Here the duty arises from defendant Arbitron's business and conduct. Plaintiff contends that, by holding itself out as an accurate surveyor, enhanced by Neilson's stature, defendant owed a duty to plaintiff not to recklessly disregard the foreseeable effect of its known actions on plaintiff, i.e. defendant's decision to omit plaintiff from the sampled stations, while touting its survey as complete. Because of these factors, plaintiff alleges, defendant had a duty to mitigate harm to plaintiff, which instead of mitigating, it knowingly or recklessly exacerbated.

The criteria for defining this tort are negligence type criteria. They relate to the fact that the scope and intensity of the duty owed to the plaintiff is different according to the relationship, and in some cases, the scope of the duty is limited to not acting in reckless disregard. E.g., <u>Kraeger v. Nationwide</u>

Mut. Ins. Co., 1996 WL 711488 (E.D.Pa. 1996)(in bad faith insurance case, tort issue exists as to whether defendant insurer acted with reckless disregard of policyholder s rights).  A viable cause of action sounding in negligence requires the following: 1) defendant owed plaintiff a duty; 2) defendant failed to conform with its duty; 3) that there is a close connection between defendant s failure and the resulting injuries; and 4) that plaintiff sustained actual loss or damages. See <u>Kenner v. Kappa Alpha Psi Fraternity, Inc.</u> 808 A.2d 178 (Pa.Super. 2002).

   The existence and scope of a duty in any given situation is predicated on a relationship existing at the time in question. <u>Dumanksi v. City of Erie</u>, 34 A.2d 508, 509 (Pa. 1943).  If there is a causative sequence, the scope of the duty is not to place others at risk and to address those risks which are reasonably foreseeable.  Here, Arbitron, as an actor creating a causative sequence of facts and whose conduct was intentional, not merely negligent, had a common law duty to recognize the unreasonable risk of harm to others through intervention of negligence, and such duty extended to WGTW.  Accordingly, plaintiff cited <u>Kenner</u> which holds an actor in a position to prevent harm can be liable for reckless disregard.  Arbitron s brief ignores <u>Kenner</u>.  The unreasonable risk is undertaking and releasing the survey as

accurate and/or not taking adequate steps to highlight plaintiff's exclusion and identify nonderogatory reasons for it. Compare Maxwell v. Keas, 639 A.2d 1215 (Pa.Super. 1994)(parents owed no duty to unanticipated visitor of their adult daughter living in their home, as required to impose liability for negligence arising out of murder of visitor by daughter after the two had consumed alcohol found in the home, where parents were on vacation and had no reason to anticipate victim's presence).

Furthermore, as the probability of injury to another, apparent from the facts within the actor's knowledge, becomes greater, its conduct takes on more of the attributes of intent. *Prosser on Torts* at 176-177 (1941). One such intermediate mental state, based upon a recognizable great probability of harm, is that of recklessness. Id.

Plaintiff contends the factors establish a tort in this case, based on the new evidence presented by Smith at his deposition and the accompanying documents, combined with the other factors. The newly discovered facts obtained from the Smith deposition, discussed *supra*, combined with the previously known facts, demonstrate a duty, a breach of the duty, and also a reckless disregard of harm to plaintiff. Finally, Arbitron acted with reckless disregard of the harm such statements would

foreseeably cause WGTW.[1]  Arbitron is in the business of viewer measurement; certainly it is aware that negative misrepresentation of inconsequence of a broadcaster will directly affect a small station's image and thus its advertising sales. Plaintiff simply seeks leave to include this claim as an amendment to the negligence count or as a new claim.

## CONCLUSION

For the foregoing reasons, this Honorable Court should allow plaintiff to amend the anti-trust counts of the complaint, and add additional claims of negligence and/or reckless indifference under common law, in addition to the already authorized adding of additional facts to the present negligence and disparagement claims.

Respectfully submitted,

_____
ROBERT J. SUGARMAN
Counsel for Plaintiff

OF COUNSEL:
SUGARMAN & ASSOCIATES
11th Floor, Robert Morris Building
100 North 17th Street
Philadelphia, PA 19103
(215) 864-2500

Dated: February 14, 2003

---

[1] Plaintiff will show that a six point type footnote identifying the three excluded stations in only the written printout is not meaningful disclosure in the circumstances.