## IN THE UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| **BRUNSON COMMUNICATIONS, INC.** | : |
| **Plaintiff,** | : |
|  | : |
| **v.** | : **Civil Action No.:  02-CV- 3223** |
|  | : |
| **ARBITRON, INC.** | : |
| **Defendant.** | : |

---

### MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S
### SECOND AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. RULE 12(b)(6)

---

Alfred Fabricant, Esq.
Marc Lieberstein, Esq.
Douglas Hahn, Esq.
OSTROLENK, FABER, GERB &
SOFFEN, LLP
1180 Avenue of the Americas
New York, New York 10036
Telephone:  (212) 382-0700
Facsimile:  (212) 382-0888

- and -

David B. Picker, Esq.
Bruce Bellingham, Esq.
SPECTOR, GADON & ROSEN, P.C.
Seven Penn Center, 1635 Market Street, 7th Floor
Philadelphia, Pennsylvania 19103
Telephone: (215) 241-8888
Facsimile: (215) 241-8844

Attorneys for Defendant Arbitron, Inc.

00606680.1

# TABLE OF CONTENTS

I.      PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      A.      THE RULE 12(B)(6) STANDARD . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      B.      PLAINTIFF'S DISPARAGEMENT CLAIM SHOULD
            BE DISMISSED  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

            1.      Arbitron Made No False Statements Regarding Plaintiff Or Its Business   5

            2.      Arbitron Lacked the Requisite Intent to Cause Pecuniary Injury . . . . . . . . 8

            3.      Plaintiff Has Not Sufficiently Alleged Causation or a Pecuniary Loss . . . 8

      C.      PLAINTIFF'S CLAIM FOR NEGLIGENCE SHOULD BE DISMISSED . . . . . 11

            1.      Arbitron Does Not Owe Plaintiff a Legally Recognized Duty of Care  . . 12

            2.      Plaintiff Does Not Allege a Causal Connection . . . . . . . . . . . . . . . . . . . . 16

            3.      Plaintiff Has Not Alleged Any Injury for Which the Law
                Allows Recovery . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

III.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

00606680.1

# TABLE OF AUTHORITIES

**FEDERAL CASES**                                                                  **Page**

*Bradshaw v. Rawlings*, 612 F.2d 135 (3rd Cir. 1979), *cert. denied*, 446 U.S. 909 (1980) . . . . . 13

*Brunson Communications, Inc. v. Arbitron, Inc.* 2002 U.S. Dist. LEXIS 25756
(E.D.Pa. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7, 10

*City of Pittsburgh v. West Penn. Power Co.*, 147 F.3d 256 (3d Cir. 1998) . . . . . . . . . . . . . . . . 4

*Constar, Inc. v. National Distribution Centers*, 101 F.Supp.2d 319 (E.D.Pa. 2000) . . . . . . . . . 12

*Forum Publications , Inc. v. P.T. Publishers, Inc.*, 700 F.Supp. 236 (E.D. Pa. 1988) . . . . . . . . 10

*HCB Contractors v. Zeidler Roberts Partnership, Inc.* 1992 U.S. Dist. LEXIS 17442
(E.D.Pa. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Kleinknecht v. Gettysburg College*, 989 F.2d 1360 (3rd Cir. 1993) . . . . . . . . . . . . . . . . 12, 13, 16

*Lynchval Systems, Inc. v. Chicago Consulting Actuaries, Inc.*, 1996 U.S. Dist. Lexis 14568
(N.D. Ill. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*In re One Meridian Place Fire Litigation*, 820 F. Supp. 1460 (E.D.Pa. 1993) . . . . . . . . . . . . . 15

*KBT Corp. v. Ceridian Corp.*, 966 F.Supp. 369 (E.D. Pa. 1997) . . . . . . . . . . . . . 8-11, 14, 15, 18

*McDermott v. Party City Corp.*, 11 F. Supp.2d 612 (E.D. Pa. 1998) . . . . . . . . . . . . . . . . . . . . . 14

*Morse v. Lower Merion School Dist.*, 132 F.3d 902 (3d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . 4

*Neurotron v. Medical Services Ass'n of PA*, 254 F.3d 444 (3rd Cir. 2001) . . . . . . . . . . . . . . . 5, 6

*Unisourse Worldwide, Inc. v. Heller*, 1999 U.S. Dist. LEXIS 8530 (E.D. Pa. 1999) . . . . . . . . . 4

*Valley Forge Con. & Visitors v. Visitor's Service*, 28 F.Supp.2d 947 (E.D. Pa. 1998) . . . . . . . . 14

*Zerpol Corp. v. DMP Corp.*, 561 F.Supp. 404 (E.D. Pa. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . 9

-ii-

**STATE CASES**                                                                                       **Page**

*Aikens v. Baltimore and Ohio Railroad Company*, 501 A.2d 277 (Pa. Super. 1985) . . . . . . 15, 18

*Dumanski v. City of Erie*, 34 A.2d 508 ( Pa. 1943) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*In re Estate of Scott*, 316 A.2d 883 (Pa. 1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Lights of America, Inc. v. Consumers Union of United States, Inc.,* 2002 Cal. App. LEXIS 2000 (2002) (unpublished) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Margolis v. Jackson*, 543 A.2d 1238 (Pa. Super. Ct. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Moreana v. South Hills Health Sys*., 426 A.2d 680 (Pa. 1983) . . . . . . . . . . . . . . . . . . . . . . . 12, 15

*Porreca v. Atlantic Refining Co.,* 168 A.2d 564 (Pa. 1961) . . . . . . . . . . . . . . . . . . . . . . . . . . . 15


**OTHER CITATIONS**

Restatement (Second) of Torts §328 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Restatement (Second) of Torts §623A (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 8, 9

Restatement (Second) of Torts §633 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9, 11

Restatement (Second) of Torts §766 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 17

00606680.1

## I.   **PRELIMINARY STATEMENT**

Defendant, Arbitron, Inc. ("Arbitron" or "Defendant") moves this Court to Dismiss Plaintiff,

Brunson Communications, Inc.'s ("Brunson" or "Plaintiff") Second Amended Complaint.  A copy

of Plaintiff's Second Amended Complaint (the "Second Amended Complaint") is attached to the

Declaration of Alfred Fabricant as Exh. 1.[1]  On December 31, 2003, this Court dismissed Plaintiff's

Amended Complaint in its entirety.  All of Plaintiff's causes of action were dismissed with prejudice

with the exception of commercial disparagement and negligence, which the Court granted Plaintiff

leave to replead if Plaintiff could allege sufficient facts to overcome its pleadings deficiencies.

Stated simply, notwithstanding plaintiff's eighteen page attempt to state a viable cause of action in

its Second Amended Complaint, Plaintiff has not, and we submit cannot, sustain a cause of action

sounding in either negligence or commercial disparagement.   Thus, dismissal of the Second

Amended Complaint, in its entirety, is once again mandated as a matter of law.

Plaintiff's two remaining claims still arise out of Arbitron's testing in the Philadelphia area

of a new type of ratings meter to measure radio and television audiences.  Brunson owns and

operates a television station, WGTW Channel 48 ("WGTW") in the Philadelphia area and is in the

business of broadcasting television programs and selling media time on its station.  Exh. 1, Second

Amended Complaint, ¶ 5.  The gravamen of this lawsuit under the Second Amended Complaint is

that Arbitron has harmed Plaintiff's ability to sell advertising time in the Philadelphia broadcast

television market by (i) not being included in the first two Arbitron test reports; and, (ii) by

Arbitron's allegedly false statements to the industry that the first test report was "accurate and

---

[1]  All Exhibits referenced herein refer to the Exhibits attached to the Declaration of Alfred R. Fabricant (the "Fabricant Decl.").

complete." Exh. 1, Second Amended Complaint, ¶¶ 25 & 32. Plaintiff alleges and thus concedes in its pleading that the Arbitron survey conducted in the Philadelphia market was a "test measurement program." Exh. 1, Second Amended Complaint, ¶¶ 15 & 18. It is also admitted that, at all times material to this action, the Nielsen Company was providing its television ratings service to the Philadelphia market and Plaintiff affirmatively avers that according to Nielsen WGTW "has achieved an audience penetration of nearly 30% of the Philadelphia market." Exh. 1, Second Amended Complaint, ¶ 7.

Notwithstanding these admitted facts, Plaintiff alleges that it has suffered an injury at the hands of Arbitron. Yet, as of today plaintiff has not and cannot identify any actual or even approximate pecuniary losses caused by the alleged conduct that took place nearly a year ago. Plaintiff does not allege that it actually lost any customers, contracts or revenues, nor has plaintiff alleged a reduction in audience penetration or business activities caused by Arbitron's conduct. Likewise, Plaintiff has not identified any persons or entities that have refused to do business with WGTW relating to the test reports or Arbitron's alleged comments. This omission is fatal to both Plaintiff's commercial disparagement and negligence claim.

Plaintiff's inability to allege actual pecuniary loss is not surprising in light of the undisputed fact that the test report that Arbitron issued and about which plaintiff complains, contains an express written statement that:

> NOTE: WGTW (Ind.), WUVP (Univision), WWSI (Telemundo) and Court TV are now encoded. However, these outlets were not encoded in time to be included in the March release of data. MSNBC was encoded in time to be included in the March release of data. But, MSNBC was not encoding for 13 days of the survey period and is therefore not included in the March release of data.

*See* Exh. 2, Arbitron's March 2002 PPM test report. Additionally, Plaintiff admits that Arbitron disclosed "the fact of the omission" of WGTW in a footnote to the initial test report. Exh. 1, Second Amended Complaint, ¶ 34.

As set forth more fully below, Plaintiff's claims are ripe for dismissal because of serious and material pleading deficiencies. With respect to Plaintiff's commercial disparagement claim, Plaintiff has not and can not allege that Arbitron has made any intentionally false or misleading statements about WGTW or its products or services. There is no support in the law for Plaintiff's allegation that a false statement made about a ratings report which expressly does not include or reference WGTW (except to note its exclusion) can nonetheless disparage WGTW. Finally, Plaintiff fails to adequately plead its pecuniary loss as required by Pennsylvania law and by this Court's December 31, 2002 Order.

Plaintiff's negligence claim must also be dismissed because Plaintiff fails to allege facts which create a legal duty or obligation on the part of Arbitron to protect Plaintiff from economic harm. There is simply no legal duty on Arbitron's part to include any station's data in its test reports, particularly incomplete or deficient data. It is undisputed in this case that participation by WGTW in the test was purely on a voluntary basis and, in fact, WGTW insisted that Arbitron include the station in its testing of the Philadelphia market. Exh. 1, Second Amended Complaint, ¶¶ 23 & 24. Furthermore, as the only injury that Plaintiff has alleged is that unnamed third-party advertisers have or will not contract with Plaintiff, Plaintiff's negligence claim must be dismissed as Pennsylvania law does not recognize claims for negligent interference with contractual relations absent an injury to persons. Since Plaintiff does not allege any injury other than economic loss, a claim for negligence under these circumstances is meritless.

The dismissal of Plaintiff's claims is now mandated.

## II.    ARGUMENT

### A.    THE RULE 12(B)(6) STANDARD

While the Court must accept as true all of the allegations in the pleadings and must give Plaintiff the benefit of every favorable inference that can be drawn from the Second Amended Complaint's allegations, this general rule is not without limitations. *Morse v. Lower Merion School Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). As the Third Circuit explained in *Morse*, "a court need not credit a Complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss." *Id.* at 906 (citations omitted). A pleading is properly dismissed when a plaintiff "can prove no set of facts in support of the claim that would entitle him to relief." *Unisourse Worldwide, Inc. v. Heller*, 1999 U.S. Dist. LEXIS 8530, *8 (E.D. Pa. 1999).

On a Rule 12(b)(6) motion, while the Court must primarily consider the allegations contained in the Complaint, certain documents may be taken into account. *City of Pittsburgh v. West Penn. Power Co.*, 147 F.3d 256, 259 (3d Cir. 1998). Of particular importance to the instant case, the *City of Pittsburgh* Court explained that "a court may consider an undisputedly authentic document that a defendant attaches to a motion to dismiss if the plaintiff's claims are based on that document." *Id.* at 259 (citations omitted). In this case, the Arbitron PPM test data reports - - which exclude WGTW but explain the omission - - should properly be considered. Exhs. 2 & 3 to the Fabricant Decl.

### B.    PLAINTIFF'S DISPARAGEMENT CLAIM SHOULD BE DISMISSED

Plaintiff's cause of action for disparagement based on Arbitron's omission of WGTW from the PPM test data is baseless. The tort of injurious falsehood (commercial disparagement) requires that:

> One who publishes a false statement harmful to the interests of another is subject to liability for pecuniary loss resulting to the other if
>
> (a) he intends for publication of the statement to result in harm to interests of the other having a pecuniary value, or either recognizes or should recognize that it is likely to do so, and
>
> (b) he knows that the statement is false or acts in reckless disregard of its truth or falsity.

Restatement (Second) of Torts §623A (1977); *see Neurotron v. Medical Services Ass'n of PA*, 254 F.3d 444, 448-9 (3rd Cir. 2001); *see also Brunson Communications, Inc. v. Arbitron, Inc.*, 2002 U.S. Dist. LEXIS 25756, *66-7 (E.D. Pa. 2002) (a courtesy copy is Appx. 1 hereto).

In permitting Plaintiff to replead disparagement, this Court held that "[i]f Plaintiff files a Second Amended Complaint, it shall contain sufficient factual detail to describe the nature of Arbitron's statements and the reasons why each was false; Arbitron's intention and knowledge in making the statement; and the causal relationship between the statement and an approximate amount of pecuniary loss to Plaintiff." *Brunson Communications*, 2002 U.S. Dist. LEXIS 25756 at *69. Based on the Court's requirements, Plaintiff has not alleged a prima facie case of injurious falsehood as Plaintiff has failed to sufficiently allege (1) that Arbitron knowingly or recklessly made a false statement about WGTW; (2) the causal link between the alleged statements and Plaintiff's alleged injuries; and (3) an approximate amount Plaintiff's alleged pecuniary loss.

## 1.    Arbitron Made No False Statements Regarding Plaintiff Or Its Business

There is no allegation that Arbitron has made <u>any</u> affirmative statements about Brunson or WGTW, let alone any disparaging statements. We could find no case law to support Plaintiff's claim that the omission of WGTW from Arbitron's PPM test survey could result in liability for

disparagement or that false statements about the accuracy of a report, which does not mention or reference WGTW (except to note that it is not included in the survey) can constitute injurious falsehood. The court in *Lynchval* rejected a similar situation where a plaintiff claimed commercial disparagement by omission, holding that:

> [c]ontrary to [plaintiff's] contention, however, false claims of superiority about one's own product are not enough. Yet a review of the complaint reveals that the alleged misrepresentations and falsehoods all consist of statements about [defendant's product] and its capabilities, not about any lack of quality in the [plaintiff's product]. Indeed, there is no allegation that [plaintiff's product] was even mentioned by name. **[Plaintiff] points to no case where a court has upheld a claim of product disparagement absent specific derogatory comments directed at the plaintiff's product or services, and research discloses none**. Although the alleged statements regarding [defendant's product's] attributes and heir merit may well have been false, misleading and otherwise deceptive, they do not give rise to a claim for product disparagement.

*Lynchval Systems, Inc. v. Chicago Consulting Actuaries, Inc.*, 1996 U.S. Dist. Lexis 14568, *20-21 (N.D. Ill. 1996) (emphasis added) (a courtesy copy is Appx. 4 hereto). It would require a great leap of logic for the law to support a conclusion that by omission, i.e., without even saying anything, one could be liable for disparagement. *See Neurotron, Inc. v. Medical Service Ass'n of PA*, 254 F.3d 444, 448 (3rd Cir. 2001); *Lights of America, Inc. v. Consumers Union of United States, Inc.*, 2002 Cal. App. Lexis 2000 (2002) (unpublished) (a courtesy copy is Appx. 3 hereto).

Plaintiff's allegations of disparaging statements are limited to alleged comments that Arbitron made to the industry that Arbitron's initial test report "was complete and accurate" or "accurate, creditable and fair." Exh. 1, Second Amended Complaint, ¶¶ 25 & 31. Plaintiff also alleges that Arbitron's Vice President, Kevin Smith also falsely stated "that although there had been glitches, that they had been rectified." Exh. 1, Second Amended Complaint, ¶ 33. Even when it is assumed

for purposes of this motion that each of these statements was in fact false, Plaintiff still has not

alleged any false statements which disparage WGTW Channel 48, or Plaintiff's products or services.

*See Lynchval*, 1996 U.S. Dist. LEXIS 14568 at *21-22. To the contrary, because the test reports do

not set forth any viewership data about Channel 48 and expressly advise the reader that Channel 48

was excluded from the survey, the assumed fact that the survey was flawed or defective is completely

non-disparaging as it relates to Plaintiff. *See* Exh. 2, Arbitron's March 2002 PPM test report. Had

the survey included Channel 48 and had Arbitron falsely reported that the survey was accurate,

Plaintiff might under those circumstances have a sustainable cause of action. But by Plaintiff's own

admission that is not what occurred.

The law requires not only that a false statement be made but the false statements must also

be the causal link to the pecuniary loss. *Brunson Communications, Inc. v. Arbitron, Inc.*, 2002 U.S.

Dist. LEXIS 25756, *66-7 (E.D. Pa. 2002) (*citations omitted*) (a courtesy copy is Appx. 1 hereto).

No reasonable person reviewing Arbitron's test reports would believe that WGTW had no viewers

at all during the test period, particularly in light of the express notations in the test reports that

WGTW and other stations were not included and in light of Plaintiff's own admission that WGTW

has "an audience penetration of nearly 30% of the Philadelphia market as measured by the Nielsen

Ratings System."[2] *See* Exh. 1, Second Amended Complaint, ¶ 9 and Exh. 2, Arbitrons March 2002

test report.

---

[2]As discussed *supra* at p. 2 the initial March 2002 test report (Exh. 2 to Fabricant Decl.) advised that WGTW and other stations "were not encoded in time to be included in the March release of data." The second test report covering the period April 25 to May 22, 2002 (Exh. 3 to Fabricant Decl.). In the second report Arbitron advises that "[t]he outlets listed above represent those outlets that are properly encoding their signal for greater than 90% of the days in the survey period." Exh. 3. WGTW and other stations did not meet that criteria and were excluded.

2.    **Arbitron Lacked the Requisite Intent to Cause Pecuniary Injury**

Throughout its Second Amended Complaint (Exh. 1), Plaintiff stresses that Arbitron acted with "intent" (¶¶ 16, 23, 32) and even malice (¶¶ 17, 31, 36). Plaintiff makes much use of these "magic words," however, the facts alleged by Plaintiff do not support its allegations that Arbitron acted with intent to cause pecuniary harm to Plaintiff. The Second Amended Complaint is completely devoid of any statements by Arbitron to third parties about Plaintiff. While Plaintiff alleges in conclusory form that Arbitron intended to injure Plaintiff economically by not including WGTW in the test survey and by the fact that it "maliciously publicized to the industry and the public that the survey was accurate, creditable and fair" Plaintiff itself concedes and alleges that "Arbitron did not, in fact, possess enough actual equipment to measure all of the stations in the Philadelphia market" and that "in light of its limited supply of equipment, Arbitron omitted WGTW-TV 48." Exh. 1, Second Amended Complaint, ¶¶ 17 and 31. These factual allegations belie the requisite intent element of Plaintiff's disparagement claim.

3.    **Plaintiff Has Not Sufficiently Alleged Causation or a Pecuniary Loss**

Even if the alleged statements by Arbitron could constitute disparagement, Plaintiff's claim for disparagement must fail because Plaintiff has not sufficiently plead causation or a pecuniary loss. The Restatement (Second) of Torts explains that "in order to recover for injurious falsehood [§623A], the plaintiff must plead and prove 'special damages' in the form of pecuniary loss." Restatement (Second) of Torts §633 Pecuniary Loss (Reporters Notes) (citations omitted) (a courtesy copy is Appx. 6 hereto). Section 623A of the Restatement (Second) of Torts (1977) only subjects one "to liability for pecuniary loss resulting to the other." Pennsylvania Courts have uniformly required a showing of special damages as part of pecuniary loss. *See KBT Corp. v. Ceridian Corp.*,

966 F.Supp. 369. 375 (E.D. Pa. 1997); *Zerpol Corp. v. DMP Corp.*, 561 F.Supp. 404, 409 (E.D. Pa. 1983) (following Restatement (Second) §623A and explaining that in these actions, "the injured party must plead and prove pecuniary loss.")

In fact, the *KBT* case is remarkably on point for both Plaintiff's claims of commercial disparagement (injurious falsehood) and negligence. *KBT*, 966 F.Supp. 369. The Court in *KBT* considered a claim for negligence and trade disparagement brought by a Philadelphia broadcaster against the Ceridian Corp. ( the then parent of Arbitron) and Arbitron (collectively "Ceridian"). In that action, KBT argued that Ceridian's ratings methods failed to accurately reflect the listenership in the African-American community and had therefore, inter alia, been negligently prepared and were disparaging to KBT's radio programming which was geared toward the African-American community. In that case KBT's ratings data which KBT claimed was false and misleading was included in the published reports. Ceridian moved to dismiss under Fed. R. Civ. P. 12(b)(6) arguing that the facts as plead by KBT, did not support *a prima facie* case for either commercial disparagement or negligence.

The Court in the *KBT* case dismissed KBT's commercial disparagement claim for failure to plead special damages. *Id.* at 375. As explained previously, special damages are required in a claim for injurious falsehood under the Restatement (Second) of Torts. *See* Restatement (Second) of Torts §633 Pecuniary Loss (pecuniary loss requires a heightened showing of "special damages") (a courtesy copy is Appx. 6 hereto). The *KBT* Court held:

> even under the liberal federal rules of pleading, it is necessary for the plaintiff to allege either the loss of particular customers by name, or a general diminution in its business, and extrinsic facts showing that such special damages were the natural and direct result of the false publication. If the plaintiff desires to predicate its right to recover

> damages upon general loss of customers, it should allege facts showing an established business, the amount of sales for a substantial period preceding the publication, and amount of sales subsequent to the publication, facts showing that such loss in sales were the natural and probable result of such publication, and facts showing the plaintiff could not allege the names of particular customers who withdrew or withheld their custom.

*Id.* (quoting *Forum Publications , Inc. v. P.T. Publishers, Inc.*, 700 F.Supp. 236, 243 (E.D. Pa. 1988)). The *KBT* plaintiff alleged as an injury only that "as a result of the false and fraudulent reports, plaintiff did suffer and continue to suffer lost revenues from a reduction in advertising contracts on [KBT's broadcast program] and from the refusal of new prospective advertisers to do business with plaintiffs." *Id.* The Court in *KBT* rejected KBT's alleged injury since "such allegation falls well shot of KBT's pleading burden under Rule 9(g)." Id. [3]

Nearly identically, Plaintiff in the instant case alleges that:

> 43.    Plaintiff suffered substantial pecuniary loss as a result thereof, in that prospects and agencies would conclude that plaintiff's viewership was considered so insignificant as not to warrant either inclusion in the survey or recognition of the exclusion; as was foreseen by defendant.

Exh. 1, Second Amended Complaint, ¶ 43. At ¶ 29 of the Second Amended Complaint plaintiff also alleges that:

> Although Arbitron knew and was informed by WGTW TV Channel 48 of its exclusion from the survey, and of the catastrophic and adverse pecuniary loss which publication of its survey would have on WGTW TV Channel 48, Arbitron refused to correct the obvious defect and to take appropriate action

---

[3]The Court granted KBT leave to attempt to replead its cause of action for disparagement. In this case, this is Plaintiff's third attempt at drafting a complaint that can withstand a motion to dismiss. Most importantly, this Court, in granting Plaintiff the right to replead, expressly directed that Plaintiff set forth "the causal relationship between the statement and an approximate amount of pecuniary loss to plaintiff." *Brunson Communications*, 2002 U.S. Dist. LEXIS 25756 at *69. Plaintiff has clearly failed to heed this Court's ruling and should not now be granted any further opportunities to replead.

Exh. 1, ¶29. None of the allegations of the Second Amended Complaint satisfy the pleading requirements for pecuniary loss under Pennsylvania law. Particularly in light of the express statement by this Court in its December 31, 2002 with respect to both causal connection and pecuniary loss; Plaintiff's allegations are woefully insufficient. Plaintiff has not identified any actual contracts or sales that were lost or the identity of any advertisers or other entities that have refused to do business with Plaintiff as a result of Arbitron's "false statements." Plaintiff has not even alleged a reduction in its sales revenues or provided any other factual allegations to support its pecuniary loss. Because it has been nearly a year since the test reports issued, the inability of Plaintiff to allege pecuniary loss or "special damages" should be dispositive. *See KBT*, 966 F.Supp. at 375. All of the knowledge, information and documents which would support Plaintiff's pecuniary loss are within the exclusive knowledge and/or possession of Plaintiff. Plaintiff should not be permitted to put Arbitron through the cost of discovery and defending a lawsuit on this type of purely conclusory and baseless allegations. As a matter of law such allegations fall well short of the pleading requirements under Restatement (Second) of Torts §633, and fail to support Plaintiff's injurious falsehood claim.

### C.    **PLAINTIFF'S CLAIM FOR NEGLIGENCE SHOULD BE DISMISSED**

Plaintiff's cause of action for negligence should likewise be dismissed because the facts, as plead by Plaintiff in its Second Amended Complaint, do not support the allegations that Arbitron owed Plaintiff a legally recognized duty of care or that Plaintiff suffered an injury for which it can recover under Pennsylvania law. Plaintiff also fails to plead a causal relationship between the alleged breach of duty and alleged injury.

Plaintiff's claim of negligence in this commercial setting is a rare case because Pennsylvania's economic loss doctrine generally prevents business competitors from bringing actions in negligence when the underlying facts are based on a business agreement or arms-length transaction. *Constar, Inc. v. National Distribution Centers*, 101 F.Supp.2d 319, 322 (E.D.Pa. 2000). In order to overcome this rule, which resulted in the dismissal of its First Amended Complaint, Plaintiff now tries to plead its claim in terms of traditional negligence, i.e. "(1) a duty or obligation recognized by the law, requiring the actor to conform to a certain standard of conduct; (2) a failure to conform to the standard required; (3) a causal connection between the conduct and the resulting injury; and (4) actual loss or damage resulting to the interests of another. *Kleinknecht v. Gettysburg College*, 989 F.2d 1360, 1366 (3rd Cir. 1993) (*citing Morena v. South Hills Health Sys.*, 462 A.2d 680, 684 n.5 (Pa. 1983).

### 1.    Arbitron Does Not Owe Plaintiff a Legally Recognized Duty of Care

In order to plead its prima facie negligence case, Plaintiff's Second Amended Complaint alleges a duty on the part of Arbitron as follows:

> 45.    Due to its program, self-description of its survey and representations of accuracy of its survey, and its knowledge that an outlet such as plaintiff would be injured by omission and by representations of completeness, defendant had a duty to outlets such as plaintiff to be inclusive and/or not to falsely represent its survey as accurate, representative and inclusive.

> . . .

> 47.    Defendant's foregoing actions violated its duty, **imposed by law,** not to perpetuate and extend a condition creating a high probability of serious harm to one such as plaintiff, in that defendant knew that it had itself created the likelihood of foreseeable highly probably adverse impact to plaintiff; that such impact was avoidable by actions which were available to it (including, but not limited to,

> prominent disclaimers, withholding false claims, postponing until
> adequate equipment was available, acquiring adequate equipment
> with additional effort, and other actions.

Exh. 1 (emphasis added). From Plaintiff's pleadings, it is not clear precisely what duty of care is

allegedly owed by Arbitron or the origin of this duty. Plaintiff fails to identify what law creates such

a duty. Plaintiff appears to allege that, by performing a test of its PPM system, Arbitron assumed

a duty to protect, not only the participants of the test, but all other media outlets in Philadelphia from

potential economic injury. As explained below, this is not a duty recognized by law. As Plaintiff

alleges, not only did Plaintiff voluntarily participate in the test, it insisted that it be included in the

early stages of the testing. Exh. 1, Second Amended Complaint, ¶¶ 23 and 24. Plaintiff has dropped

from its Second Amended Complaint the allegations contained in earlier versions of the Complaint

that it had an agreement with Arbitron which created the duty to protect WGTW. Now, realizing

that there can be no negligent failure to perform a contractual obligation under the law, Plaintiff has

tried to manufacture a legal duty where none exists.

Federal Courts applying Pennsylvania law have held that "[w]hether a defendant owes a duty

of care to a plaintiff is a question of law. *See* Restatement (Second) of Torts §328(B) (1965) (court

determines whether facts give rise to any legal duty on the part of defendant)." *Kleinknecht v.*

*Gettysburg College*, 989 F.2d 1360, 1366 (3rd Cir. 1993). The *Kleinknecht* Court further explained

that a "negligence claim must fail if based on circumstances for which the law imposes no duty of

care on defendant." *Id.* (*citing Bradshaw v. Rawlings*, 612 F.2d 135, 138 (3rd Cir. 1979), *cert.*

*denied*, 446 U.S. 909 (1980)).

In the instant case, Plaintiff alleges that, by performing a test of its PPM system, Arbitron

assumed a duty to protect, not only the participants of the test, but all other media outlets in

Philadelphia from potential economic injury, including Plaintiff.[4]  According to Plaintiff, Arbitron breached that duty by: commencing a test in Philadelphia knowing Arbitron did not have adequate equipment (Exh. 1, Second Amended Complaint, ¶ 46(a)); not making efforts at the outset to include Plaintiff in the test (*Id.* at ¶46(b)); representing to the public that the test survey would be "a comprehensive measurement of the viewership in the Philadelphia area while Plaintiff was not even included (*Id.* at ¶46(c)) and; "misinforming recipients of the survey that the survey was representative despite defendant's actual knowledge of its falsity." (*Id.* at ¶ 46(d)).

By these factual allegations, Plaintiff apparently attempts to plead a prima facie case of negligent interference with contract or prospective contractual relations since the only injury alleged is loss of existing or potential contractual relations. *See* Restatement (Second) of Torts §766C. This is precisely what the plaintiff attempted unsuccessfully to do in the *KBT* case. *KBT*, 966 F.Supp. at 399. In *KBT,* the plaintiff radio station claimed that defendants, including Arbitron, "have compiled surveys using a method they knew to be biased and unreliable and thereafter knowingly published false and misleading information regarding the listening trends and patterns of Philadelphia's African-American community and of [the station's] listening audience in particular." *Id.* at 372. *KBT* further alleged that as a result of such conduct "plaintiffs did suffer and continue to suffer lost revenues from a reduction in advertising contracts on [the station's broadcast] and from the refusal

---

[4]In addition to the foregoing description of the alleged duty, Plaintiff alleges that Arbitron further breached "the fiduciary duty it assumed." Exh. 1, Second Amended Complaint, ¶ 36. However, between businesses, a special or fiduciary relationship can exist "only if one party surrenders substantial control over some portion of his [or her] affairs to the other." *McDermott v. Party City Corp.*, 11 F. Supp.2d 612, 626 (E.D. Pa. 1998) (quoting *In re Estate of Scott*, 316 A.2d 883, 886 (Pa. 1974); *Valley Forge Con. & Visitors v. Visitor's Service*, 28 F.Supp.2d 947, 952 (E.D. Pa. 1998) (no special or fiduciary relationship between corporate parties to an arms length business contract). Arbitron is not a fiduciary or in a fiduciary relationship with Plaintiff, has no degree of control over Plaintiff, nor has Plaintiff plead even the most basic facts to support this allegation.

of new prospective advertisers to do business with plaintiffs." *Id* at 375. Judge Joyner, based on

these allegations, dismissed KBT's negligence claims holding, in pertinent part:

> KBT does not specify the negligence theory under which it seeks to
> recover in Count Five, but we agree with Defendants that the
> allegations must be construed to state a claim for negligent
> interference with business relations and/or prospective business
> relations. Defendants argue that such a claim must fail because KBT
> seeks only economic damages, i.e. lost revenue from a "reduction in
> advertising contracts on [KBT's radio broadcast] and from the refusal
> of new prospective advertisers to do business with plaintiffs."
> Defendants cite <u>Aikens v. Baltimore and Ohio Railroad Company,
> 348 Pa. Super. 17, 501 A.2d 277 (Pa. Super. 1985)</u>, in this regard.
> In response, KBT simply refers the Court to the allegations of its
> Complaint and asserts that it has "adequately pled a claim of
> negligence." We find Aikens to be directly on point, however, and
> dismiss this claim accordingly. See also <u>In re One Meridian Place
> Fire Litigation, 820 F. Supp. 1460, 1483-1484 (E.D.Pa. 1993)</u>.

*Id*. at 377-378 (citations omitted).

Here, plaintiff's negligence claim must be dismissed as plaintiff has not plead a legally

cognizable duty on the part of Arbitron, which supports a negligence claim. The Supreme Court of

Pennsylvania has stated that "[d]uty, in any given situation, is predicated on the relationship existing

between the parties at the relevant time and necessarily requires some degree of knowledge"

*Moreana v. South Hills Health Sys.*, 426 A.2d 680, 684 (Pa. 1983) (citing *Dumanski v. City of Erie*,

34 A.2d 508 ( Pa. 1943); *Porreca v. Atlantic Refining Co.*, 168 A.2d 564 (Pa. 1961).

At the relevant time in the instant case, i.e. the time when Plaintiff alleges that Arbitron owed

it (and all other broadcasters) a duty to protect it from economic harm, there was <u>no</u> relationship

between Arbitron and Plaintiff. A relationship, if any, could not exist until at least April 2002, when

Plaintiff first requested that it be included in the PPM test. *See* Exh. 1, Second Amended Complaint,

¶ 23; *see Moreana* 426 A.2d at 684. Of course, Plaintiff's request to be included in the PPM test

does not give rise to a duty on the part of Arbitron. In fact, Plaintiff has plead no fact or set of facts that create a legally recognized duty on the part of Arbitron.

Other Courts in this District have also declined to find the existence of a duty of care in a commercial setting similar to the instant case. The Court in *HCB Contractors*, when considering a claim for negligence between unrelated commercial enterprises, held that "Pennsylvania does not recognize a cause of action based upon negligent acts that result in economic loss where the parties are not in privity of contract. **The rationale for this rule is that imposing a general duty of care to avoid economic loss would constitute an intolerable burden on parties functioning in a commercial setting.**" *HCB Contractors v. Zeidler Roberts Partnership, Inc.*, 1992 U.S. Dist. LEXIS 17442, *15 (E.D.Pa. 1992) (emphasis added) (a courtesy copy is Appx. 2 hereto).

The facts of this case as plead by Plaintiff and taken in their most favorable light simply do not give rise to a legally recognized duty on the part of Arbitron to protect plaintiff from economic harm.

## 2.   <u>Plaintiff Does Not Allege a Causal Connection</u>

A prima facie case of negligence requires a causal connection between the alleged breach of the duty of care and the alleged injury. *Kleinknecht*, 989 F.2d at 1366. In addition to failing to establish a legally recognized duty on the part of Arbitron, Plaintiff has failed to allege a causal connection between the alleged breach of that duty and Plaintiff's alleged injury. As explained above, the reason is simple, Plaintiff is not aware how, if at all, it was injured and, thus, cannot plead a causal connection. Plaintiff has stated that unnamed "advertising agencies were unable to recommend WGTW TV Channel 48, for lack of comprehensive data, and advertisers will hesitate to advertise with WGTW TV Channel 48 as a result of not having information." Exh. 1, Second

Amended Complaint, ¶ 38. Furthermore, by not being able to identify the alleged "agencies" and "advertisers," Plaintiff has also failed to allege that these "agencies" and "advertisers" were influenced by Arbitron's reports or in what manner they were influenced to the detriment of WGTW.

### 3.    Plaintiff Has Not Alleged Any Injury for Which the Law Allows Recovery

Plaintiff has alleged that it was injured solely because "advertising prospects, and agencies ... would foreseeably conclude that plaintiff's viewership was considered so insignificant" and, thus, not advertise (contract) with Plaintiff. Exh. 1, Second Amended Complaint, ¶ 52. Plaintiff's cause of action for negligence should be dismissed because (i) Pennsylvania law, following the Restatement (Second) of Torts, does not allow recovery in negligence for interference with third-party contracts not accompanied by a physical injury; and (ii) as a practical matter, over one year after the alleged negligence, Plaintiff still can not point to a single, definite injury, i.e., no actual damages.

Pennsylvania law does not generally allow recovery for interference with contracts not accompanied by a physical injury. *Margolis v. Jackson*, 543 A.2d 1238, 1240 (Pa. Super. Ct. 1988) ("Purely economical loss, when not accompanied with or occasioned by injury, is considered beyond the scope of recovery even if a direct result of the negligent act.") (citing *Aikens v. Baltimore and Ohio R.R. Co.*, 501 A.2d 277 (1985)). The Court in *Aikens*, held that "[t]he general rule is stated in the Restatement (Second) of Torts §766C:

> **Negligent Interference with Contract or Prospective Contractual Relation.** One is not liable to another for pecuniary harm not deriving from physical harm to the other, if that harm results from the actor's negligently
>
> (a) causing a third person not to perform a contract with the other, or

(b) interfering with the other's performance of his contract or making the performance more expensive or burdensome, or

(c) interfering with the other's acquiring a contractual relation with a third person.

*Aikens*, 501 A.2d at 278 (emphasis added). The *Aikens* Court further explained that the reasoning of this "well-established rule" is that "negligent harm to economic advantage alone is too remote for recovery under a negligence theory. The reason a plaintiff cannot recover stems from the fact that the **negligent actor has no knowledge of the contract or prospective relation and thus has no reason to foresee any harm to the plaintiff's interest.**" *Aikens*, 501 A.2d at 278-9 (citations omitted) (emphasis added).

Also following the decision in *Aikens*, the Court in *KBT* summarily dismissed KBT's negligence claims finding that "such a claim must fail because KBT seeks only economic damages, i.e. lost revenue from a "reduction in advertising contracts on [KBT's radio broadcast] and from the refusal of new prospective advertisers to do business with plaintiffs." *KBT*, 966 F.Supp. at 377-8 ("We find Aikens to be directly on point.") (citing *Aikens*, 501 A.2d 277).

In the instant action, Plaintiff has alleged no physical injury to itself. Plaintiff's only alleged damages are a loss of either existing or prospective contracts. *See* Exh. 1, Second Amended Complaint, ¶ 52. Under Pennsylvania law, these third-party contracts are, as a matter of law, not foreseeable and not recoverable in negligence absent a physical injury. *KBT*, 966 F.Supp. at 377-8; *Aikens*, 501 A.2d at 277-8.

Finally, as a practical matter, it has been nearly one year since the events that Plaintiff alleges resulted in an economic injury. All documents and evidence tending to show any injury to Plaintiff are solely in Plaintiff's control. Plaintiff alone is aware of every advertiser who advertises with

WGTW and whether any advertisers rejected Plaintiff as a result of the alleged events. Yet, Plaintiff can only allege that it has "suffered substantial adverse impact, **the extent of which is unknown** due to the fact that it represents an adverse impact on plaintiff through advertising prospects." *See* Second Amended Complaint, Fabricant Decl., Exh. 1, ¶ 52.

Plaintiff's cause of action for negligence should be dismissed.

## III.    CONCLUSION

For all the foregoing reasons, Plaintiff's Amended Complaint should be dismissed in its entirety for failure to state claims upon which relief can be granted.

Dated: April 2, 2003                              Respectfully submitted,

Alfred Fabricant, Esq.
Marc Lieberstein, Esq.
Douglas Hahn, Esq.
OSTROLENK, FABER, GERB & SOFFEN, LLP
1180 Avenue of the Americas
New York, New York 10036
Telephone:  (212) 382-0700
Facsimile:  (212) 382-0888

- and -

David B. Picker, Esq.
Bruce Bellingham, Esq.
SPECTOR, GADON & ROSEN, P.C.
Seven Penn Center, 1635 Market Street, 7th Floor
Philadelphia, Pennsylvania 19103
Telephone: (215) 241-8888
Facsimile: (215) 241-8844

Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

```
_____ x
                                       :
BRUNSON COMMUNICATIONS, INC.           :
                                       :
              Plaintiff,               :
                                       : Civil Action No.:  02 CV. 3223
          v.                           :
                                       :
ARBITRON, INC.                         :
                                       :
              Defendant.               :
_____ x
```

### DECLARATION OF ALFRED R. FABRICANT IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)

I, ALFRED R. FABRICANT, declare as follows:

1.      I am a partner with the law firm of Ostrolenk, Faber, Gerb & Soffen, LLP, of New York, New York, attorneys of record for Defendant Arbitron, Inc.  I am admitted *Pro Hac Vice* in this action.  I make this declaration in support of Defendant Arbitron's Motion to Dismiss Plaintiff's Second Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6), respectfully submitted to the Court concurrently with this Declaration.

2.      Exh. 1 hereto is a true and correct copy of Plaintiff's Second Amended Complaint.

3.      Exh. 2 hereto is a true and correct copy of a representative sample of Arbitron's PPM test data report covering data from February 28, 2002 through March 27, 2002.

4.      Exh. 3 hereto is a true and correct copy of a representative sample of Arbitron's PPM test data report covering data from April 25, 2002 through May 22, 2002.

00607046.1

5.    I declare under penalty of perjury that the foregoing is true and correct.

New York, New York
April 1, 2003                    _____
                                Alfred R. Fabricant

00607046.1