IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA


BRUNSON COMMUNICATIONS, INC.     :
                                    :
                Plaintiff     :
                                      :
         v.                     :
                                      :
ARBITRON, INC.                   :    NO. 02-CV-3223
                                    :
              Defendant    :
                                      :


**PLAINTIFF S MEMORANDUM OF LAW IN OPPOSITION TO
MOTION TO DISMISS**

FACTS

    This case arises from Defendant Arbitron s intentional
and/or negligent exclusion of WGTW TV Channel 48 from two
Philadelphia area television market ratings surveys, and
representations made by Arbitron denigrating plaintiff and its
exclusion. Plaintiff Brunson Communications, Inc., owner of WGTW
Channel 48, is a small minority owned television station serving
the Philadelphia area.  The Second Amended Complaint alleges that
defendant, is liable to plaintiff for damage caused by negligence
and intentional conduct and disparagement of commercial products.

    WGTW Channel 48 is a station independent of other networks
and cable stations, with an audience penetration of nearly 30% of
the Philadelphia market, as measured by the Nielsen Ratings

system. (Second Amended Complaint (hereinafter   Complaint ) ¶ 7).

(  Penetration   refers to the total number of viewers who have

watched the station.)  Defendant Arbitron, Inc. is in the

business of constructing and operating measurement systems that

monitor listeners and viewers to determine audience measurement

for usage by radio and cable purchasers of advertising time.  In

2001, defendant initiated measurement of television station

viewing, using a new proprietary technology for measuring

television viewership, known as the   personal people meter,

(  PPM  ) This technology hereafter will supplant the standard

Nielsen system because of its superior accuracy and reliability.

(Complaint, ¶ 9, 10).

        In or about 2002, Defendant commenced a program to introduce

its PPM technology to the Philadelphia market.  However,

defendant selectively chose to work only with the larger players

in the market. Defendant and announced that the launch of the

test would   accurately and creditably measure the performance of

the entire market.    (Complaint, ¶ 15). It deliberately omitted

plaintiff from the PPM survey completed in April 2002.

(Complaint, ¶ 13).  When plaintiff learned of its exclusion,

Arbitron refused plaintiff  s request that Arbitron not release

the survey.

        Then, in releasing its survey, in a speech at a meeting of

the Pennsylvania Association of Broadcasters announcing the
survey results, Arbitron represented that the PPM survey was
fair, accurate and complete.[1] (Complaint, ¶ 32).  These
statements were knowingly false and malicious.  (Complaint, ¶
17). Arbitron also mentioned in a footnote that plaintiff and two
small speciality stations had been excluded, thus implying
plaintiff's exclusion was immaterial.

Four significant facts emerged: 1) Arbitron deliberately
proceeded to conduct, and tout as complete, a survey which it
knew to be incomplete and inaccurate; 2) Arbitron chose to
provide its limited supply of equipment to other stations rather
than WGTW; 3) Smith's statement on May 20, 2002 claiming that
all channels had been included misled the industry to believe
all stations in the Philadelphia market were included in the
survey; and 4) Arbitron's public statements regarding the
reliability and accuracy of the survey were made with the
knowledge of their falsity.  (See Duffin Affidavit, ¶7, attached
as Exhibit B).

---

[1]Specifically, at his deposition, Kevin Smith, a Senior Vice
President of Arbitron, testified that he believed WGTW was
excluded through March 2002 because Arbitron did not have enough
equipment to connect all stations; the stations included in the
survey were those which had been included in an earlier
Wilmington survey, and three others for which Arbitron had
equipment.  (Deposition of Kevin Smith, 11/07/02, at 32-36,
Exhibit A). In sum many there are following significant facts.

By its own admission, Arbitron knowingly excluded plaintiff. It claims it did so because it did not have enough equipment to measure all of the stations in the Philadelphia market. <u>Id.</u> Arbitron excluded the WGTW-TV48, signal from the survey data and represented the survey to be accurate even though WGTW-TV48 has close to 30% cumulative audience reach. <u>Id.</u> Arbitron and the large networks and cable systems, with whom it partnered in starting the test process, embedded the Arbitron signal only in the transmitters of those stations, excluding plaintiff.  <u>Id.</u> Arbitron thus knowingly, selectively and discriminatorily excluded WGTW Channel 48 in its embedding test measurement program.  <u>Id.</u>

Additionally, while designing and pre-testing the system, defendant had many meetings with the larger stations, meetings to which plaintiff was not invited, and therefore was not aware of the nature of the system.  (Complaint, ¶ 34). Since Defendant did not inform plaintiff that inclusion in the survey required the embedding of a signal into WGTW  s transmitter, until after the survey was completed, plaintiff believed no affirmative action on its part was necessary for inclusion in the PPM survey, i.e. that it was being included. (Complaint, ¶ 21).

Plaintiff finally learned of its exclusion when it learned of the embedding requirement in April 2002 Plaintiff complained.

Defendant then did install a PPM encoder in plaintiff s cable. (Complaint, ¶ 23). When and where defendant suddenly acquired the equipment is as yet undetermined, as defendant has refused discovery on this very issue.  (Objections to Interrogatories, Exhibit c).  Pending discovery these singular  facts   in themselves create an inference of malice.

By this time, the initial PPM survey was substantially completed. Id.  Yet, despite its full knowledge of the detrimental effects omission would have on WGTW, Defendant refused to restart and reconstruct the PPM survey to include WGTW, and did not disclose why WGTW had intentionally been omitted. (Complaint, ¶¶ 29, 34).

To the contrary, defendant told the relevant public plaintiff s exclusion was inconsequential by telling people plaintiff had been excluded, while simultaneously touting accuracy.  Also, plaintiff was also marginalized by being lumped (as excluded) with a non-English speaking station.

Then, from May to July 2002, Defendant maliciously perpetuated the damage - excluding WGTW again from the second survey by intentionally and/or recklessly causing and allowing defective encoding of WGTW s signal, despite the fact that defendants equipment allowed it to verify the signal s quality at any time. This resulted in continued omission of WGTW from the

PPM surveys until at least July 2002.  Again the survey was released and touted leading to further injury. This was in violation of a commitment and fiduciary role it assumed. (Complaint, ¶ 36).

By excluding reporting of WGTW Channel 48 viewership, defendant impaired WGTW s ability to be competitive and operate on an equal basis with other stations in the market, thus injuring Plaintiff s sales of television time (Complaint, ¶ 20), and knowingly caused substantial on-going damage and injury to plaintiff in that plaintiff s prospective and actual customers were led to believe that plaintiff is so insignificant as to have been intentionally and properly disregarded in surveying performed by an impartial agency. Competitors could seize on this to answer inquiries by referring to the fact that WGTW TV Channel 48 was ignored in the survey, thereby substantially depriving WGTW TV Channel 48 of competitive standing which is crucially important to a small independent station. (Complaint, ¶ 37).


ARGUMENT

I. STANDARD OF REVIEW

In considering a Rule 12(b)(6) motion, the court must accept as true all of the allegations in the Complaint and must give the plaintiff the benefit of every favorable inference that can be

drawn from those allegations.  Schrob v. Catterson, 948 F.2d
1402, 1405 (3d Cir. 1991); Markowitz v. Northeast Land Co., 906
F.2d 100, 103 (3d Cir. 1990).  A complaint is properly dismissed
only if it appears certain that the plaintiff cannot prove any
set of facts in support of its claim which would entitle it to
relief.  Ransom v. Marrazzo, 848 F.2d 398, 401 (3d. Cir. 1998).

     Additionally, a court must primarily consider the
allegations contained in the Complaint, although matters of
public record, orders, items appearing in the record of the case
and exhibits attached to the Complaint may also be taken into
account.  Accordingly, in this case, the affidavit of John Duffin
and the deposition testimony of Kevin Smith should properly be
considered.

     Dismissal should not be granted in the instant case, as
Plaintiff has more than adequately stated grounds upon which
relief can be granted.

II.    PLAINTIFF ADEQUATELY STATES A CLAIM FOR DISPARAGEMENT.

     A claim for trade disparagement requires: 1) a disparaging
statement of fact that is untrue or a disparaging statement of
opinion that is incorrect; 2) that no privilege attach to the
statement; and 3) that the Plaintiff suffered a direct pecuniary
loss as a result of the disparagement.  Synergy, 51 F.Supp. at
578-9.

1.    <u>Arbitron Made False Statements</u>
<u>                Regarding Plaintiff And/Or Its Business.</u>

Defendant argues that it did not make a single disparaging statement about Brunson or WGTW. (Brief, p.5) This is simply not true; Arbitron unfairly and falsely disparaged Plaintiff s product, i.e. by intentionally misrepresenting as inconsequential its listening audience and importance in the market, and excluding if from a self-described complete survey.

The Complaint specifically delineates the disparaging statements in the presentation by Arbitron Senior Vice President, Kevin Smith, to the Pennsylvania Association of Broadcasters on May 20, 2002, wherein Smith knowingly and intentionally represented that the survey was  accurate, creditable and fair. (Complaint ¶ 31).  The survey itself as released noted that plaintiff had been excluded. Channel 48' exclusion was thus represented as insignificant, i.e. that inclusion of Channel 48 is not necessary for accuracy.  This was false disparagement. WGTW has 30% penetration.  Contrary to Arbitron s public statement, omission of plaintiff from its survey made Arbitron s published data materially deficient.

The Complaint also alleges that Defendant disparaged Plaintiff s business through the survey data itself.  (Complaint ¶ 20).  Because the survey data was only qualified in the

footnote to note that WGTW was excluded, and because of the fact
of the exclusion, the defendant facilitated the implementation of
the disparagement by competing stations, who could represent to
advertisers that WGTW was so inconsequential that it could be
excluded from the survey.  Defendant therefore set up the
situation to disparage plaintiff.

Thus, our   survey is accurate   when in fact WGTW is
excluded, is sufficient to constitute disparagement.  A similar
situation can be found in <u>KBT Corporation, Inc. v. Ceridian
Corporation</u>, 966 F.Supp. 369 (E.D.Pa. 1997)(Joyner, J.), where
Arbitron was also a defendant (Ceridran is its former name).
There, the owner of a radio broadcasting station which was
oriented to an African-American audience brought action against
Arbitron for publishing survey results allegedly obtained via
unreliable methodologies, averring in the Complaint that:

> The defendants did knowingly and wilfully publish
> as true, false and misleading, disparaging
> statements with respect to plaintiffs  Station, to
> wit: that the level and frequency of listeners of
> plaintiffs   station were extremely low in
> comparison to other radio stations operating in
> [Philadelphia], when in truth and in fact such was
> not the case.

<u>KBT</u>,966 F.Supp. at 373 <u>citing</u> Complaint ¶ 32. Judge Joyner
described in this specific allegation of plaintiff  s Complaint as
follows:   does not allege any specific statements, but appears

rather to summarize the conclusions one draws from the information published in Defendants  reports.   The Court held that   such an allegation is sufficient under liberal notice pleading rules.   KBT, 966 F.Supp. at 373-374.

Defendant Arbitron contends that the courts do not recognize cases of commercial disparagement by omission of reference to plaintiff, citing Lynchval Systems, Inc. v. Chicago Consulting Actuaries, Inc., 1996 Dist.Lexis 14568 (N.D.Ill. 1996).  Lynchval, of course, did not apply Pennsylvania law. Moreover, unlike Lynchval, this case is not a simple omission; it is exclusion combined with a reference to plaintiff  s exclusion and a representation of completeness all by a self-proclaimed neutral, not a competitor.  In contrast, in the Lynchval case, the defendants were direct market competitors of plaintiff and there was no representation of completeness.  The facts are quite different from that of a direct competitor, and cannot be characterized as comparable; the public would know to discount a competitor  s positive statements as puffery.

Defendant cites KBT, but ignores the portion of the KBT opinion wherein this very issue is addressed.  There, the court observed that the conclusions one draws from the information published in Defendants  reports directly affect the marketability of goods.  Continuing in this discussion, the court

wrote:

> Trade disparagement is designed to compensate a
> vendor for pecuniary loss incurred as a result of
> slurs affecting the marketability of his goods.
> <u>Zerpol Corp. v. DMP Corp.</u>, 561 F.Supp. 404, 408
> (E.D.Pa. 1983); <u>see also</u> <u>Swift Bros.</u>, 921 F.Supp.
> at 276 ( a claim of commercial disparagement
> emphasizes the direct harm to the plaintiff s
> reputation (and hence sales) caused by the alleged
> false statement ). Here, the marketability of
> KBT s product [the station] s air time is plainly
> affected by statements purporting to report [the
> station] s ratings. Indeed, from an advertiser s
> perspective, the quality of [the station] s air
> time is synonymous with [the station] s popularity
> because the value of the station s time is
> determined by the number of listeners. Thus, in
> the marketability sense, statements that falsely
> underreport a station s ratings clearly cast doubt
> on the quality of the station s time. We
> therefore conclude that Plaintiff has adequately
> pled commercially disparaging statements.

<u>KBT</u>, 966 F.Supp. at 374.

Similarly, here the affirmative statements of completeness
and the survey footnote, read together, convey that plaintiff s
exclusion is not meaningful, because plaintiff is
inconsequential. Thus, the result should be the same.

> 2.  <u>Plaintiff Alleges Arbitron  s Intent to Cause
>     Pecuniary Injury.</u>

The intent requirement was also satisfied. Plaintiff  s
Complaint alleges that Defendant acted with intent and malice in
its exclusion of Plaintiff from the PPM survey. (Complaint ¶¶
16, 23, 32). Defendant interprets intent too narrowly (Brief

p.8).  As stated by Prosser,

> As the probability of injury to another, apparent
> from the facts within his knowledge, becomes greater,
> his conduct takes on more of the attributes of intent,
> until it reaches that substantial certainty of harm
> which juries, and sometimes courts, <u>may find
> inseparable from intent itself</u>.  Such intermediate
> mental states, based upon a recognizable great
> probability of harm, may still be properly be classed
> as  negligence,  but are called  reckless,   wanton,
> or even  wilful.   (Emphasis added)

*Prosser on Torts* at 176-177 (1941).  Moreover, intent

relates to conduct knowing of adverse effect.  There is a

duty not to recklessly cause harm; reckless disregard

legally equals intent.  Defendant had such a duty.

As held in <u>KBT</u>, supra, intent includes   certainty of

harm.   Plaintiff s allegations meet the requisite intent

element of a disparagement claim.  Specifically, as has

been previously demonstrated,  at his deposition, Kevin

Smith, a Senior Vice President of Arbitron, testified that

WGTW was knowingly excluded.  (Deposition of Kevin Smith,

11/07/02, at 32-36). As stated, Mr. Smith s statements

suggest four significant facts: 1) Arbitron deliberately

proceeded to conduct and tout as complete, a survey which

it knew to be incomplete and inaccurate; 2) Arbitron chose

to offer its limited supply of equipment to other stations

rather than WGTW; 3) Arbitron s public statements regarding
the reliability and accuracy of the survey were made with
the knowledge of their falsity; and 4) Smith s statement on
May 20, 2002 claiming that  all channels had been included
falsely stated all significant stations in the Philadelphia
market were included in the survey.  (See Duffin Affidavit,
¶7).

    This clearly satisfies the intent requirement.

        3.   <u>Plaintiff Sufficiently Alleged Causation of</u>
                <u>Pecuniary Loss.</u>

    Defendant next contends that the Complaint lacks
adequate allegations concerning special damages because no
customers are identified.  (Br. 8) Defendant applies an
erroneous legal standard.  As the court in the case of
<u>Forum Publications, Inc. v. P.T. Publishers, Inc.</u>, 700
F.Supp. 236, 243 (E.D.Pa. 1988) holds:

> ItIt [is] . . . necessary It [is] . . . necessary for
> plaintiffplaintiff to allege <u>either</u> t the l the loss of
> parpartiparticularparticular customers by name, <u>or</u> a
> generalgeneral dimunition in its businegeneral dimunition in its
> eextrinsicextrinsic facts showing that suextrinsic facts
> specialspecial damaspecial damagespecial damages were the nat
> directdirect result of the fadirect result of the falsdirect re
> (emphasis added).

<u>Forum</u>, 700 F.Supp. at 243.  <u>KBT</u>, supra. Contrary to
defendant s assertion, this does<u>not</u> require names of
particular customers.  Plaintiff has, in fact, pled general

dimunition in its business and extrinsic facts showing that the damages directly arose from the false publication. (Complaint ¶¶ 29, 43).

Due to the nature of the business, Plaintiff cannot know the full severity of the damages incurred. As required by KBT, facts were alleged as why plaintiff cannot name customers it lost. Sellers and buyers who have used the survey to influence advertising decisions simply may not even know the survey s influence. Moreover, ultimately damages to the station can only be quantified by opinion testimony is not necessary at the complaint stage. However, the damage caused by excluding a major broadcast station in a market that is so numbers-intensive is alleged to be irrefutable; the Philadelphia market is merciless and highly competitive. (Complaint, ¶ 26). In addition, combination alliances such as Viacom, Disney and NBC make the challenge of generating market share difficult without special handicaps. By compounding this already intense situation so as to imply that WGTW has no ratings and/or is not worth rating does not need to be rated to make a survey accurate, Arbitron unjustifiably relegated WGTW to inconsequential, second-rate status. (Complaint, ¶¶ 20, 28, 38). As required by KBT, facts were alleged as why

plaintiff cannot name customers it lost.  Hence, Plaintiff

has alleged causation and extrinsic evidence of its

injuries adequately.

If more is required, leave to provide additional

detail is requested despite the Federal Rules.

III.    <u>PLAINTIFF ADEQUATELY STATED A CLAIM FOR NEGLIGENCE.</u>

Under Pennsylvania law, a negligence claim consists of

four elements:

(1)  a duty or obligation recognized by the law,
     requiring the actor to conform to a certain
     standard of conduct;
(2)  a failure to conform to the standard required:
(3)  a causal connection between the conduct and the
     resulting injury; and
(4)  actual loss or damages resulting to the interests
     of another.

<u>Kleinknecht v. Gettysburg College</u>, 989 F.2d 1360, 1366 (3d

Cir. 1993).  See <u>Sharpe v. St. Lukes Hospital</u>, 2003 LW

1955703 (Pa. April 25, 2003). (Copy attached as Exhibit D).

In its Complaint, Plaintiff adequately pled all four of the

requisite elements, both as to the first and second

surveys.

Plaintiff  s claim in negligence in connection with the

first survey (January - April 2002), is adequate.

Defendant Arbitron, by and through its witness, Smith,

provides key facts.  He confirmed that the exclusion of

plaintiff from the survey was intentional, and not inadvertent.  (Deposition of Kevin Smith, 11/07/02, at 32-36).   From this  significant admissions follow: 1) Arbitron intentionally chose to do an incomplete survey deleting plaintiff; 2) Arbitron  s public statements touting the reliability and accuracy of the survey were made with knowledge of their falsity; and 3) Smith  s statement on May 20, 2002 claiming that   all channels had been included misled the industry to believe all stations in the Philadelphia market were included in the survey.  (See Duffin Affidavit, ¶7).

In these circumstances, as discussed herein,  1) Arbitron owed plaintiff a duty; 2) Arbitron failed to conform with its duty; 3) there is a close connection between Arbitron  s failure and the resulting injuries; and 4) plaintiff sustained actual loss or damages.  See Sharpe, supra; Kenner v. Kappa Alpha Psi Fraternity, Inc. 808 A.2d 178 (Pa.Super. 2002).

A.A.   DEFENDANT OWEDDEFENDANT OWED PLAINTIFF ADEFENDANT OWED PLAI DUTY OF CARE.

_____ Here, as alleged, defendant knew it was excluding plaintiff in January through March 2002.  It knew it would hurt plaintiff in refusing to withdraw or explain. Plaintiff contacted defendant in April 2002 before the

release and noticed defendant of its harm.   Moreover,
Arbitron, which had accepted a relationship to the
industry  to be complete and fair  was not just a spectator.
It had a self-proclaimed relationship with the industry as
a fair and impartial umpire.  In these circumstances,
Arbitron had a duty to recognize the unreasonable risk of
harm to WGTW through intervention of negligence or
deliberate conduct.  Sharpe supra, see also Kenner,supra,
808 A.2d at 182; Dumanski v. City of Erie,34 A.2d 508, 509
(Pa. 1943).

     The Supreme Court of Pennsylvania in Sharpe v. St.
Luke  s Hospital 2003 WL 1955703 (Pa.) unanimously
pronounced the law of Pennsylvania authoritatively as
creating a duty where the defendant  s role and knowledge
creates a   foreseeable consequence of a breach of the duty
of reasonable care  , the defendant  is in the best position
to insure the non-negligent [conduct], and thus possesses
the ability to limit its liability by acting
reasonably...  ,  and   the plaintiff was known to the
defendant, and when the defendant [acted], it knew that
negligent [conduct] could [injure the plaintiff]  , quoting
Reed v. Bojarski, 166 N.J. 89 (N.J. 2001).

     Based on these factors, without any   relationship   the
Supreme Court, elaborating on its decision in Althous v.
Cohen, 756 A.2d 1166 (2000), held that an actor without any
contractual or other   relationship   with the plaintiff had

a duty to act reasonably.

Sharpe alone, or together with Althous, it is respectfully submitted, is determinative of the issue of Arbitron having a duty to plaintiff.  Just as a hospital testing a nonpatient for AIDS has a duty to act reasonably, so a self proclaimed impartial  umpire  viewing measurement service, testing competitors in the television viewership market, has a duty to a station.  It is aware of the harm it can render by false representations; it knows the magnitude of the problem; and has the power to prevent the harm.

Thus, pursuant to the Supreme Court  sAlthous standard, and its application in Sharpe, it is inescapable that Arbitron had a duty to plaintiff under Pennsylvania law.

    B.    DEFENDANT BREACHED ITS DUTY TO PLAINTIFF BY INTENTIONALLY EXCLUDING PLAINTIFF FROM THE SURVEY FROM JANUARY THROUGH MARCH 2002 AND REPRESENTING THE SURVEY WAS COMPLETE

Here, the facts that are alleged in the Complaint and are discussed *supra*, allege a breach of a duty sufficient to allow the jury to decide.  Smith acknowledged that Arbitron had knowingly and intentionally excluded WGTW from its survey, while touting the survey as comprehensive. (Complaint, ¶ 46).  Arbitron had knowledge of its deliberate exclusion of WGTW. Id.  By making statements

touting the accuracy and comprehensiveness of the survey, discussed *supra*, Arbitron had full knowledge of the harm such statements could foreseeably cause WGTW, a station intentionally excluded from the survey. Id.  Arbitron is in the business of viewer measurement; certainly it is aware that negative misrepresentation of ratings will directly affect a station s advertising sales.Id.

Arbitron falsely claimed its first survey was accurate and complete when it knew it was not. Id.[2]  Arbitron s conduct was a breach of its duty because the injury to WGTW was both 1) foreseeable, in that Arbitron fully expects advertising decisions to be made based upon the results of its surveys, and 2) unreasonable, in that Arbitron could have taken measures to prevent the harm. (Complaint, §§ 47-50).  The combination of intentional exclusion of WGTW, and touting the survey as accurate while expressly stating WGTW was excluded gives rise to a claim for reckless disregard of harm to WGTW.  Although defendant knew WGTW was not represented in the survey, defendant made no effort to either include WGTW and remedy the problem, or to substantially qualify the survey results.  Thus, due to the great probability, if not certainty, of harm to WGTW, there is a strong claim under Dumanski that Arbitron breached its duty to WGTW, acting at least in reckless disregard of

---

[2]Contrary to defendant s claim (Brief p.14) Brunson does not assert a fiduciary relationship in this time period.

plaintiff  s harm.  <u>Dumanksi</u>, 34 A.2d at 509.

    C.   <u>DEFENDANT BREACHED ITS DUTY TO PLAINTIFF BY
EXCLUSION FROM THE SURVEY FROM APRIL THROUGH JUNE
2002.</u>

Likewise, Arbitron  s second exclusion of WGTW, ranging
from April through June 2002, is also actionable.  Due to
defendant  s reckless behavior regarding the defective
signal (discussed <u>infra</u>), plaintiff was yet again excluded
from a survey.  Here again, the combination of reckless
maintenance of the signal, the intentional exclusion of
WGTW, and expressly stating 48 was excluded for reckless
disregard of harm to WGTW.  Although defendant knew WGTW
was not represented in the survey, defendant declined to
remedy the signal problem, or to substantially qualify the
survey results.  Thus, due to the great probability, if not
certainty, of harm to WGTW, there is a strong claim under
<u>Dumanski</u> that Arbitron breached its duty to WGTW, acting in
reckless disregard of plaintiff  s harm.

    1.   <u>The Economic Loss Doctrine is Not Applicable
in the Instant Case, Due to Defendant  s
Intention and/or Recklessness Regarding the
Defective Signal.</u>

In its Motion, Defendant relies primarily on the
economic loss doctrine as a reason for dismissal. (Brief,
12-16). There are many limits to this rule, which defendant
ignores.  Pennsylvania case law creates an exception to the
economic loss doctrine when the conduct involved is

intentional.  Although not listed by defendant, in
Werwinski v. Ford Motor Co., 286 F.3d 661 (2002), a Third
Circuit panel predicted that Pennsylvania law would not
allow such an exception.  However, for the reasons cited by
Judge Antwerpen in O Keefe v. Mercedes-Benz USA, LLC, 2003
WL 1826501 (E.D.Pa. 2003)(attached as Exhibit E), Werwinski
is not dispositive and should not be followed.  As Judge
Antwerpen states, Werwinski cannot be followed because
inter alia, 1) Pennsylvania courts since Werwinski have
continued to allow recovery recovery beyond that of actual
damages in instances of intentional conduct; and 2) the
panel in Werwinski based its decision entirely on a U.S.
District Court for the Western District of Wisconsin case
applying Wisconsin law which is not binding on Pennsylvania
courts.  O Keefe, 2003 WL 1826501, *6.  Therefore, this
Honorable Court should follow Judge Antwerpen s decision in
O Keefe.

Moreover, there is a significant line of cases holding
that when there has been tortious or malicious interference
with operation of a business, the injured party can recover
damages equal to its lost profits.  Dunn, Robert L.,
Recovery of Damages for Lost Profits 174 (3d ed. 1987).
See also KNK Med.-Dental Specialties, Ltd. v. Tamex Corp.,
Nos. Civ.A. 99-3409, Civ.A. 99-5265, 2000 WL 1470665 (E.D.
Pa. Sept. 28, 2000); Polymer Dynamics, Inc. v. Bayer Corp.,
No. Civ.A. 99-4040, 2000 WL 1146622 (E.D.Pa. Aug.14, 2000);

Montgomery County v. Microvote Corp., No. Civ.A. 97-6331,
2000 WL 134708 (E.D.Pa. Feb.3, 2000); N.Am.Roofing & Sheet
Metal Co.,Inc. v. Bldg. & Constr. Trades Council of Phila.
& Vicinity, AFL-CIO, No. Civ.A. 99-2050, 2000 WL 230214
(E.D.Pa. Feb.29, 2000); Auger v. Stouffer Corp., No. 93-
2529, 1993 WL 364622 (E.D.Pa. Aug.31, 1993).  This case law
also supports plaintiff.  Here, even with the knowledge of
its potential impact on WGTW, Arbitron repeatedly and
intentionally neglected to inform the Plaintiff in a timely
fashion of defects in the equipment, installation, and
resulting signal transmission.  (Complaint, ¶ 49).  As a
result, Plaintiff was excluded from the second survey,
incurring damages to its reputation and loss of advertising
sponsorship.  Redress for this intentional conduct is not
barred by the economic loss doctrine.

     Another group of exceptions is based on the special
relationship between the tortfeasor and the business
deprived of economic expectations.  A special relationship
is one involving confidentiality, the repose of special
trust or fiduciary responsibilities.  Valley Forge
Convention & Visitors Bureau v. Visitor  s Services, Inc,
28 F.Supp.2d 947 (E.D. Pa. 1998).  It generally involves a
situation where, due to the respective strength and
weakness of the parties, one has the power to take
advantage over the other.  Estate of Evasew, 526 Pa. 584
(1990).

Here, as to the second phase, April to June 2003, Defendant entered Plaintiff s premises for the purpose of installing an  encoder,  thereby directly and knowingly assuming an obligation to correctly and accurately install and monitor the equipment and to correctly and accurately record Plaintiff s viewer signals through the use of Defendant s equipment.  Defendant was fully aware that Plaintiff relied upon Defendant to inform it of any defect, malfunction, or other interference with the transmission of adequate and timely information, and/or any defect in the equipment or its installation.  In view of prior its exclusion to plaintiff, it had a special duty. Defendant Arbitron was a licensee and user, on Plaintiff s land, property, and information.  (Complaint, ¶ 36).

Arbitron is industry dominant (with Nielson).  It generates information specifically designed to provide advertisers with information with which they use to choose outlets.  As such, Arbitron is certainly in a position to disdainfully injure a small, independent television station like WGTW.  Additionally, as discussed above, Arbitron knew it had a special relationship with WGTW, most notably with how harmful exclusion from an accurate, complete survey would be in order for the small, independent station to remain a competitive force in the Philadelphia market. Plaintiff was utterly dependent on Arbitron.  All this gives Arbitron a fiduciary responsibility.

3.    <u>Plaintiff Adequately Alleges Damages.</u>

Defendant contends that Plaintiff did not or cannot identify any injury. (Brief, pp. 17-18) As discussed above, due to the nature of the dealings between the Defendant, the survey recipients, and the industry, Plaintiff cannot specifically identify any customer it has lost.  Media sellers and buyers who have used the survey to influence advertising decisions simply cannot admit the survey s influence, without opening themselves up to potential liability, since they contracted not to do so.  (Agreement, Exhibit F).  However, it is undeniable that Arbitron has impaired WGTW s ability to be competitive and operate on an equal basis with other stations on the market.

Damage claims require no more specific pleading than generally required by F.R.C.P. Rule 8(a).  <u>See</u> <u>Kurtz v. Draur</u>, 434 F.Supp. 958 (D.C.Pa. 1977).

Defendant claims no cause of action exists in Pennsylvania where the alleged injury is loss of business. Defendant misapplies the law (See pages 21-23, supra). Reckless or intentional breach of duty gives rise to as much right to recovery for loss of business as for any other type of loss.

Plaintiff s Complaint therefore adequately states a claim for negligence.

<u>CONCLUSION</u>

For the foregoing reasons, Defendant  s Motion to
Dismiss should be denied.  In the alternative, if the
pleading is inadequate, Plaintiff requests leave to amend.


Respectfully submitted,


_____
ROBERT J. SUGARMAN
HEATHER R. BRINTON
Counsel for Plaintiff


OF COUNSEL:

SUGARMAN & ASSOCIATES
11th Floor, Robert Morris Building
100 North 17th Street
Philadelphia, PA 19103
(215) 864-2500

Dated: April 30, 2003