IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

————————————————————————————x
                                                        :
BRUNSON COMMUNICATIONS, INC.                            :
                                                        :
                        Plaintiff,                      :
                                                        :
                                                        : Civil Action No.: 02 CV. 3223
            v.                                          :
                                                        :
ARBITRON, INC.                                          :
                                                        :
                        Defendant.                      :
————————————————————————————x


**REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S
SECOND AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. RULE 12(b)(6)**


**OSTROLENK, FABER, GERB & SOFFEN, LLP**
Alfred R. Fabricant, Esq.
Marc A. Lieberstein, Esq.
Douglas Q. Hahn, Esq.
1180 Avenue of the Americas
New York, New York 10036
Telephone:  (212) 382-0700
Facsimile:  (212) 382-0888

David B. Picker, Esq.
**SPECTOR, GADON & ROSEN, P.C.**
Seven Penn Center,
1635 Market Street, 7th Floor
Philadelphia, Pennsylvania 19103
Telephone: (215) 241-8888
Facsimile: (215) 241-8844

Attorneys for Defendant Arbitron, Inc.

# TABLE OF CONTENTS

I.     PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.    LEGAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    A.    This Court Should Follow the *KBT* Decision . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

        1.    Arbitron Made No False Statements Regarding
              Plaintiff Or Its Business . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

        2.    Plaintiff Has Not Sufficiently Alleged a Pecuniary Loss . . . . . . . . . . . . 4

    B.    Plaintiff's Claim For Negligence Should Likewise Be Dismissed . . . . . . . . . . . 8

        1.    Arbitron Does Not Owe Plaintiff a Legally
              Recognized Duty of Care . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

        2.    Plaintiff Does Not Address its Failure to Allege
              a Causal Connection . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

        3.    Plaintiff Has Not Alleged Any Injury for Which
              the Law Allows Recovery . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

             a.    Arbitron Is Not in a Fiduciary or Special
                   Relationship with Plaintiff . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

             b.    Plaintiff has Not Alleged an Intentional Tort
                   or Fraud Nor was Granted Permission by this
                   Court to Do So . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

III.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

## TABLE OF AUTHORITIES

### FEDERAL CASES

Auger v. Stouffer Corp., 1993 U.S. Dist. LEXIS 12719, *11 (E.D. Pa. 1993) . . . . . . . . . . . . . 15

Brunson Communications, Inc. v. Arbitron, Inc.
2002 U.S. Dist. LEXIS 25756, *66-7 (E.D. Pa. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

East River S. S. Corp. v. Transamerica Delaval, Inc., 476 U.S. 858, 871 (1986) . . . . . . . . . . . 11

Forum Publications , Inc. v. P.T. Publishers, Inc., 700 F. Supp. 236, 243 (E.D. Pa. 1988) . . . 5-7

Harris v. O'Conner Truck Sales, 153 F.Supp.2d 584, 588 (E.D. Pa. 2001) . . . . . . . . . . . . . . . 11

KBT Corp. v. Ceridian Corp., 966 F.Supp. 369 (E.D. Pa. 1997) . . . . . . . . . . 2, 4-6, 8, 9, 11-12

Kleinknecht v. Gettysburg College, 989 F.2d 1360, 1366 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

KNK Med.-Dental Specialties, Ltd. v. Tamex Corp.
2000 U.S. Dist. LEXIS 14536, *16 (E.D. Pa. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Lyncheval Systems, Inc. v. Chicago Consulting Actuaries, Inc.
1996 U.S. Dist. LEXIS 14568, *20-21 (N.D. Ill. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-4

McDermott v. Party City Corp., 11 F. Supp.2d 612, 626 (E.D. Pa. 1998) . . . . . . . . . . . . . . . . 12

Montgomery County v. Microvate Corp.
2000 U.S. Dist. LEXIS *23 (E.D. Pa.. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Neurotron, Inc. v. Medical Service Ass'n of PA, 254 F.3d 444, 448 (3d Cir. 2001) . . . . . . . . . . 3

North Am. Roofing & Sheet Metal Co., Inc. v. Building & Constr. Trades
Council of Phila. & Vicinity, AFL-CIO 2000 U.S. Dist. LEXIS 2040, *28 (E.D. Pa. 2000) . . 14

O'Keefe v. Mercedes-Benz United States, 2003 U.S. Dist. LEXIS 5715 (E.D. Pa. 2003) . . 13-14

Polymer Dynamics, Inc. v. Bayer Corp.
2000 U.S. Dist. LEXIS 11493, *20-1 (E.D. Pa. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Valley Forge Con. & Visitors v. Visitor's Service, 28 F.Supp.2d 947, 952 (E.D. Pa. 1998) . . . 12

Werwinski v. Ford Motor Co., 286 F.3d 661 (3d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Zerpol Corp. v. DMP Corp., 561 F. Supp. 404, 409 (E.D. Pa. 1983) . . . . . . . . . . . . . . . . . . . 4, 5

## STATE CASES

Aikens v. Baltimore and Ohio R.R. Co., 501 A.2d 277, 278-9 (1985) . . . . . . . . . . . . . . . . 10-12

Estate of Evansew, 584 A.2d 910, 912 (Pa. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

In re Estate of Scott, 455 Pa. 429, 316 A.2d 883, 886 (Pa. 1974) . . . . . . . . . . . . . . . . . . . . . . . 12

Lights of America, Inc. v. Consumers Union of United States, Inc.
2002 Cal. App. Lexis 2000 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Margolis v. Jackson, 543 A.2d 1238, 1240 (Pa. Super. Ct. 1988) . . . . . . . . . . . . . . . . . . . . . . . 11

Ney v. Axelrod, 723 A.2d 719 (Pa. Super. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Sharpe v. St. Luke's Hospital, 2003 Pa. LEXIS 665 (Pa. 2003) . . . . . . . . . . . . . . . . . . . . . . 9-10

## SECONDARY SOURCES

The American Heritage College Dictionary at 1327 (3d ed. 2000) . . . . . . . . . . . . . . . . . . . . . . 2-3

Restatement (Second) §623A . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

## I.    PRELIMINARY STATEMENT

Despite multiple attempts to correct its severe pleading deficiencies, Plaintiff still fails to state a claim for which this Court can grant relief. As set forth in Arbitron's Memorandum in Support of Motion to Dismiss Plaintiff's Second Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) ("Arbitron's Memo."), Plaintiff's claims are ripe for dismissal. Plaintiff's Memorandum of Law in Opposition to Motion to Dismiss ("Plaintiff's Opp."), fails to respond to Arbitron's key points with legal authorities which justify allowing Plaintiff to proceed with this litigation.

It is telling that Brunson has now separately moved the Court for leave to further amend its complaint for a third time recognizing that Plaintiff has simply failed to sufficiently allege pecuniary loss under the controlling Pennsylvania decisions. However, most telling of all is the fact that even in its motion to file a third amended complaint, Brunson does not attach its proposed curative amended complaint nor does it set forth, in its supporting papers, the specific factual allegations which would satisfy the requisite minimum pleading standards for actual pecuniary damages. Had Brunson in fact suffered a dimunition in sales revenues or any other identifiable loss as a result of Arbitron's test, this would be a simple fact to allege based on Brunson's own financial statements and records. The inability to make such allegations even in light of Arbitron's motions to dismiss and this Court's own directions to Plaintiff in its Decision and Order dated December 31, 2002, must lead one to conclude that Brunson's sales revenues have gone up and not down. Nor can Brunson identify even one actual or prospective customer or piece of business that has been lost as a result of Arbitron's test. The best plaintiff can do is to state in its motion to amend:

> Plaintiff is presently undertaking efforts to systematically research its files, now that a year has passed, in an effort to more systematically and quantitatively assess the actual damages.

Plaintiff's Motion for Leave to Amend at p. 5.

This is nonsensical gibberish. Brunson should be sanctioned for pursuing this frivolous litigation and not permitted a fourth attempt at drafting a complaint. Justice and equity now demand that this case be dismissed, in its entirety, with prejudice.

## II.    LEGAL ARGUMENT

### A.    This Court Should Follow the KBT Decision

Plaintiff's cause of action for disparagement is futile as Plaintiff has not alleged an actual disparaging statement and cannot plead the necessary pecuniary loss as required under Pennsylvania law and as reiterated in the case of *KBT Corp. v. Ceridian Corp.*, 966 F. Supp. 369 (E.D. Pa. 1997).

### 1.    Arbitron Made No False Statements Regarding Plaintiff Or Its Business

While Plaintiff argues in its opposition papers that the *KBT* case supports the sufficiency of Brunson's allegations for disparagement, to the contrary *KBT* only reaffirms that there must be an affirmative statement about Plaintiff which is false and which causes Plaintiff to suffer an actual pecuniary loss. In fact, in *KBT,* it was conceded for purposes of the motion to dismiss that defendant had made numerous "false statements of purported fact relating to WHAT'S listening audience." *KBT,* 966 F. Supp. at 373-374. Nothing about the *KBT* decision supports the legal theory that the failure to make a statement about Brunson at all can constitute an affirmative false statement for purposes of a disparagement claim. Even the dictionary supports Arbitron's common sense position that a false statement must be an affirmative statement.

> Statement (stāt' ment) *n.* **1.** The act of stating or declaring. **2.** Something stated; a declaration. **3.** *Law.* A formal pleading.

THE AMERICAN HERITAGE COLLEGE DICTIONARY at 1327 (3d ed. 2000).

Arbitron made no statement or declaration mentioning Plaintiff's products or services except to explicitly point out that WGTW is not included in the test survey. Indeed, Plaintiff never alleged that Arbitron made a "statement" about Brunson. Plaintiff alleges nothing more than an omission and there is simply no case law which adopts this theory of commercial disparagement.

The decision in *Lynchval* is directly on point and remains unrebutted. *See Lynchval Systems, Inc. v. Chicago Consulting Actuaries, Inc.*, 1996 U.S. Dist. Lexis 14568, *20-21 (N.D. Ill. 1996); *See also, Lights of America, Inc. v. Consumers Union of United States, Inc.*, 2002 Cal. App. Lexis 2000 (2002) (unpublished). The Court in *Lynchval* rejected a similar pleading where a plaintiff claimed commercial disparagement by omission, holding that:

> [c]ontrary to [plaintiff's] contention, however, false claims of superiority about one's own product are not enough. Yet a review of the complaint reveals that the alleged misrepresentations and falsehoods all consist of statements about [defendant's product] and its capabilities, not about any lack of quality in the [plaintiff's product]. Indeed, there is no allegation that [plaintiff's product] was even mentioned by name. **[Plaintiff] points to no case where a court has upheld a claim of product disparagement absent specific derogatory comments directed at the plaintiff's product or services, and research discloses none**. Although the alleged statements regarding [defendant's product's] attributes and **their** merit may well have been false, misleading and otherwise deceptive, they do not give rise to a claim for product disparagement.

*Lynchval*, 1996 U.S. Dist. Lexis 14568 at *20-21. *See also, Neurotron, Inc. v. Medical Service Ass'n of PA*, 254 F.3d 444, 448 (3rd Cir. 2001).

Even if it is assumed for present purposes that each of the alleged statements made by Arbitron's Kevin Smith was in fact false, Plaintiff still has not alleged any false statement which disparages WGTW Channel 48, or Plaintiff's products or services. *See Lynchval*, 1996 U.S. Dist.

LEXIS 14568 at *21-22. To the contrary, the test reports expressly advise the reader that Channel 48 was not included in the test survey. *See* Exh. 2, Arbitron's March 2002 PPM test report. Had the survey included erroneous ratings information about Channel 48 *and* had Arbitron falsely reported that the survey was accurate, Plaintiff might under those circumstances have a sustainable cause of action *if* it could *also* show an intent to injure Brunson as well as a causal link to actual pecuniary loss. That, however, is not the case here. The law requires not only that a false statement be made but the false statements must also be the causal link to the pecuniary loss. *Brunson Communications, Inc. v. Arbitron, Inc.*, 2002 U.S. Dist. LEXIS 25756, *66-7 (E.D. Pa. 2002). Plaintiff has failed to allege that causal connection and no reasonable person reviewing Arbitron's test reports (even without the express disclaimer) would believe that WGTW had no viewers at all during the test period.

### 2.    Plaintiff Has Not Sufficiently Alleged a Pecuniary Loss

Plaintiff's claim for disparagement must also fail because Plaintiff still has not sufficiently pleaded a pecuniary loss as required by Pennsylvania law. As explained in detail in Arbitron's Motion to Dismiss, the Restatement (Second) of Torts and Pennsylvania Courts have uniformly required a showing of special damages as part of pecuniary loss to recover for injurious falsehood (commercial disparagement). *See KBT Corp., supra*, 966 F. Supp. at 375; *Zerpol Corp. v. DMP Corp.*, 561 F. Supp. 404, 409 (E.D. Pa. 1983) (following Restatement (Second) §623A and explaining that in these actions, "the injured party must plead and prove pecuniary loss.")

The Court in the *KBT* case dismissed the plaintiff's commercial disparagement claim for failure to plead pecuniary loss on allegations even stronger than Brunson's damage allegations in this case. The *KBT* Court held:

> even under the liberal federal rules of pleading, it is necessary for the plaintiff to allege either the loss of particular customers by name, or a general diminution in its business, **and** extrinsic facts showing that such special damages were the natural and direct result of the false publication. **If the plaintiff desires to predicate its right to recover damages upon general loss of customers, it should allege facts showing an established business, the amount of sales for a substantial period preceding the publication, and amount of sales subsequent to the publication, facts showing that such loss in sales were the natural and probable result of such publication, and facts showing the plaintiff could not allege the names of particular customers who withdrew or withheld their custom.** (emphasis added).

*Id.* (quoting *Forum Publications , Inc. v. P.T. Publishers, Inc.*, 700 F. Supp. 236, 243 (E.D. Pa. 1988)). Here, Plaintiff (even in support of its motion to further amend its complaint) has not alleged "the amount of sales for a substantial period proceeding the publication," "the amount of sales subsequent to the publication," "facts showing that such a loss in sales were natural and probable results of such publications," or even "facts showing that plaintiff could not allege the names of particular customers." Plaintiff has not even alleged sufficient facts to explain why it cannot at least allege the details required by the Court in *KBT*.

Plaintiff's Reply memorandum fails to address its pleading failure, instead continuing with its previous explanation that "[d]ue to the nature of its business, plaintiff cannot know the full severity of the damages incurred." Reply Memo, p.14. Why has Plaintiff failed to allege its sales both before and after the Arbitron test period at issue? Certainly if Plaintiff had a decline in sales, it would have provided those sales figures in order to keep its claim alive in the face of several

Motions to Dismiss and as required by Pennsylvania law. *See KBT*, 966 F. Supp. at 375. None of

the allegations of the Second Amended Complaint satisfy the pleading requirements for pecuniary

loss under Pennsylvania law. *Id.* As the cases make clear, it is not sufficient to merely allege, as

Plaintiff has done here, that Plaintiff has been injured. Plaintiff, in its opposition papers points the

Court to paragraphs 29 and 43 of its Second Amended Complaint to establish that Plaintiff has

sufficiently alleged pecuniary loss. The allegations of both these paragraphs fall far short of the

requisite pleading requirements for a claim of injurious falsehood. In ¶29 of the Second Amended

Complaint, Plaintiff alleges:

> Although Arbitron knew and was informed by WGTW TV Channel 48 of its
> exclusion from the survey, and of the catastrophic and adverse pecuniary loss
> which publication of its survey would have on WGTW TV Channel 48,
> Arbitron refused to correct the obvious defect and to take appropriate action,
> namely to reconstruct and rewrite the survey to properly include WGTW TV
> Channel 48 as a element instead of releasing it, and not to release and
> inaccurate survey.

In paragraph 43, Plaintiff alleges:

> Plaintiff suffered substantial pecuniary loss as a result thereof, in that
> prospects and agencies would conclude that plaintiff's viewership was
> considered so insignificant as not to warrant either inclusion in the survey or
> recognition of the exclusion; as was foreseen by defendant.

This is even weaker than the claim dismissed in *KBT* where *KBT* alleged that:

> as a result of the false and fraudulent reports, plaintiffs did suffer and
> continue to suffer lost revenues from a reduction in advertising contracts on
> [WHAT] and from refusal of new prospective advertisers to do business with
> plaintiffs.

966 F. Supp at 375.

Instead of attempting to distinguish the *KBT* case directly with regard to pecuniary loss,

Plaintiff argues that the earlier *Forum* case requires only a showing of a "general diminution in its

business and extrinsic facts showing that the damages directly arose from the false publication."

Reply Memo, pp. 13-14. However, this is **not** what the *Forum* Court decided and Plaintiff quite

conveniently drops the quote from the remainder of the holding, which just like *KBT* requires more.

The *Forum* court held:

> Even where the liberal federal rules of pleading apply, 'it [is] ... necessary for the plaintiff to allege either the loss of particular customers by name, or a general diminution in its business, and extrinsic facts showing that such special damages were the natural and direct result of the false publication. **If the plaintiff desire[s] to predicate its right to recover damages upon general loss of custom, it should ... [allege] facts showing an established business, the amount of sales for a substantial period preceding the publication, and amount of sales subsequent to the publication, facts showing that such loss in sales were the natural and probable result of such publication, and facts showing the plaintiff could not allege the names of particular customers who withdrew or withheld their custom.'**
>
> . . .
>
> Plaintiff argues that "special damages are pleaded in [paragraph] 42," n13 which states: "Defendants' conduct described above has resulted in financial loss to plaintiff in an amount in excess of $ 75,000." This statement clearly does not satisfy the Pennsylvania rule requiring the pleading of special damages in disparagement actions. **The alleged disparagement took place over the period of several years, and I suspect that Plaintiff will not be able to adequately plead special damages since it has not done so already.** (emphasis added).

*Forum Publications, Inc. v. P.T. Publishers, Inc.*, 700 F.Supp. 236, 243 (E.D. Pa. 1988) (citations

omitted).

Just as in *KBT, Forum* dismissed the plaintiff's claims for a failure to adequately plead

pecuniary loss. While Plaintiff on one hand brazenly urges that it has sufficiently plead pecuniary

loss, Plaintiff, on the other hand, yet again requests leave of this Court to further amend its

complaint. Plaintiff has had more than ample opportunity to plead its case and should not be granted

a fourth attempt. Arbitron has incurred significant financial expenses for attorneys fees and costs

in responding to Brunson's first three complaints.  Plaintiff's motion for leave to replead should be denied.

### B.    Plaintiff's Claim For Negligence Should Likewise Be Dismissed

Plaintiff's cause of action for negligence should now be dismissed with prejudice.  As explained in Arbitron's Motion to Dismiss, the facts, as plead by Plaintiff in its Second Amended Complaint, do not support the allegations that Arbitron owed Plaintiff a legally recognized duty of care or that Plaintiff suffered an injury for which it can recover under Pennsylvania law. Furthermore, Plaintiff has failed to address, much less plead, a causal relationship between Arbitron's alleged breach of duty and its alleged injury.

Plaintiff's Opposition utterly fails to address the holding in the *KBT* case which dismisses a virtually identical negligence claim.  The Court in *KBT* held that the negligence claim must be interpreted as a claim for negligent interference with contract or prospective contractual relations, since the only injury alleged is loss of existing or potential contractual relations.  *See KBT*, 966 F. Supp. at 399.

In *KBT,* the plaintiff alleged that as a result of defendant's publication of derogatory ratings information about plaintiff's radio station "plaintiffs did suffer and continue to suffer lost revenues from a reduction in advertising contracts on [the station's broadcast] and from the refusal of new prospective advertisers to do business with plaintiffs." *Id* at 375.  Judge Joyner, based on these allegations, dismissed KBT's negligence claims holding, that:

> KBT does not specify the negligence theory under which it seeks to recover in Count Five, but we agree with Defendants that the allegations must be construed to state a claim for negligent interference with business relations

> and/or prospective business relations. Defendants argue that such a claim
> must fail because KBT seeks only economic damages, i.e. lost revenue from
> a "reduction in advertising contracts on [KBT's radio broadcast] and from the
> refusal of new prospective advertisers to do business with plaintiffs."

*Id.* at 377-378 (citations omitted). Plaintiff has completely failed to address Judge Joynes's opinion

in *KBT* in its opposition brief. Rather, Plaintiff seemingly now attempts to argue that it has plead

some kind of intentional tort. In doing so, Brunson confuses the distinction between intentional torts

and negligence.

In addition, this Court only granted plaintiff the right, in its Second Amended Complaint, to

assert a claim of commercial disparagement and negligence. To the extent Brunson is alleging some

other cause of action, Brunson has exceeded the permitted scope of this Court's Order.

### 1.    <u>Arbitron Does Not Owe Plaintiff a Legally Recognized Duty of Care</u>

In an attempt to rebut defendant's argument that Arbitron owes no legal duty to Plaintiff,

Plaintiff relies on *Sharpe v. St. Luke's Hospital*, 2003 Pa. LEXIS 665 (Pa. 2003) in an effort to

impose a legal duty on the part of Arbitron. In *Sharpe*, a plaintiff employee sued a hospital that

negligently performed a drug test on the plaintiff resulting in the loss of the plaintiff's existing job.

The *Sharpe* court considered prior case law, including *Ney v. Axelrod*, 723 A.2d 719 (Pa.Super.

1999), which held that hospitals had no duty with regard to job applicants since the applicant's

employment status was too speculative to be foreseeable. The *Sharpe* Court explained:

> <u>Ney</u> may be distinguished on the basis that the employee there was seeking
> damages for the loss of potential employment arising from pre-employment
> drug screening. While the superior court classified such a claim for damages
> as speculative, and insufficiently substantial to support imposition of the
> advocated duty, see <u>Ney, 723 A.2d at 722</u>, Sharpe alleges that, as a result of
> the Hospital's negligence concerning the handling of her urine specimen, her

existing employment with Federal Express was terminated, thus setting forth a discrete and identifiable injury that she directly attributes to the Hospital's purported negligence.

*Sharpe*, 2003 Pa. LEXIS 665 at *12 n.4. The *Sharpe* court found the existence of a duty of care based on the foreseeability of the loss of present employment, but reaffirmed that the loss of prospective employment was unforeseeable, and thus, created no duty of care. *Id.* Pennsylvania courts have held that a third party "**actor has no knowledge of the contract or prospective relation and thus has no reason to foresee any harm to the plaintiff's interest**." *Aikens v. Baltimore and Ohio R.R. Co.*, 501 A.2d 277, 278-9 (1985) (citations omitted) (emphasis added). Therefore, to the extent that *Sharpe* applies at all to a commercial situation (rather than under the heightened standard of care for medical providers as in *Sharpe*) — and  we submit it does not — the holding in *Sharpe* would only impose a duty as to present contracts and  thus foreseeable losses and not to prospective business relationships and thus unforeseeable, losses.  Indeed, the holding in *Sharpe* only supports Arbitron's argument that parties generally do not owe a duty of care with regard to a prospective job — or a prospective business contract.

Of course, in this case, Plaintiff has effectively admitted that it has not lost any existing contracts nor can it identify any prospective contracts that were lost as a result of Arbitron's actions.

### 2.   Plaintiff Does Not Address its Failure to Allege a Causal Connection

A prima facie case of negligence requires a causal connection between the alleged breach of the duty of care and the alleged injury. Kleinknecht v. Gettysburg College, 989 F.2d 1360, 1366 . In addition to failing to establish a legally recognized duty on the part of Arbitron, Plaintiff once

again fails to even allege a causal connection between a breach of Arbitron's alleged duty and Plaintiff's alleged injury. The reason is clear, even in opposition to a Motion to Dismiss, plaintiff has not identified any specific injury, and thus cannot assert a casual connection. Plaintiff only alleges that certain unnamed "advertising agencies were unable to recommend WGTW TV Channel 48, for lack of comprehensive data, and advertisers will hesitate to advertise with WGTW TV Channel 48 as a result of not having information." Second Amended Complaint, ¶ 38. This is insufficient as a matter of law to plead a causal connection.

### 3.    Plaintiff Has Not Alleged Any Injury for Which the Law Allows Recovery

Pennsylvania courts and federal courts applying Pennsylvania law have long held that a party may not recover for economic damages by a claim for negligent interference with business relations. *See Aikens v. Baltimore and Ohio R.R. Co.*, 501 A.2d 277 (1985); *Harris v. O'Conner Truck Sales*, 153 F.Supp.2d 584, 588 (E.D. Pa. 2001); *KBT*, 966 F.Supp. at 377-8. This is sometimes referred to as the economic loss doctrine, although the courts have expanded on the terms of the rule since its adoption by the Supreme Court in *East River S. S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 871 (1986).

Generally, Pennsylvania law does not allow for recovery from interference with contracts not accompanied by a physical injury. *Margolis v. Jackson*, 543 A.2d 1238, 1240 (Pa. Super. Ct. 1988) ("Purely economical loss, when not accompanied with or occasioned by injury, is considered beyond the scope of recovery even if a direct result of the negligent act.") (citing *Aikens v. Baltimore and Ohio R.R. Co.*, 501 A.2d 277 (1985)). The *Aikens* Court further explained that the reasoning of this "well-established rule" is that "negligent harm to economic advantage alone is too remote for

recovery under a negligence theory.  The reason a plaintiff cannot recover stems from the fact that

the **negligent actor has no knowledge of the contract or prospective relation and thus has no**

**reason to foresee any harm to the plaintiff's interest.**"  *Aikens*, 501 A.2d at 278-9 (citations

omitted) (emphasis added).  Also following the decision in *Aikens*, the Court in *KBT* summarily

dismissed the KBT plaintiff's negligence claims finding that "such a claim must fail because KBT

seeks only economic damages, i.e. lost revenue from a 'reduction in advertising contracts on [KBT's

radio broadcast] and from the refusal of new prospective advertisers to do business with plaintiffs.'"

*KBT*, 966 F.Supp. at 377-8 ("We find Aikens to be directly on point.") (citing *Aikens*, 501 A.2d 277).

Instead of directly addressing *Aikens* or *KBT*, Plaintiff argues that it falls into one of two

supposed exceptions to this rule: either for intentional torts or for a fiduciary relationship.  *See*

*Aikens*, 501 A.2d at 278-9; *KBT*, 966 F.Supp. at 377-8.  However, neither supposed exception

applies to the instant case because Plaintiff is not in a fiduciary relationship with Arbitron, nor has

Plaintiff plead an intentional tort.

### a.    Arbitron Is Not in a Fiduciary or Special Relationship with Plaintiff

First, Plaintiff appears to argue that Arbitron is in a fiduciary relationship with Plaintiff,

which it is not.[1]    Second, Plaintiff's cases regarding a "special relationship" are likewise

inapplicable.  In *Estate of Evansew*, 584 A.2d 910, 912 (Pa. 1988), the court found the existence of

---

[1] While Plaintiff specifically states that it is not claiming a fiduciary relationship "during this time period" on p. 19 of its Opposition, it is not clear whether or not Plaintiff is claiming a fiduciary relationship during some other time period.  However, without restating Arbtiron's arguments from its Motion to Dismiss, business competitors are not fiduciaries. *McDermott v. Party City Corp.*, 11 F. Supp.2d 612, 626 (E.D. Pa. 1998) (quoting *In re Estate of Scott*, 316 A.2d 883, 886 (Pa. 1974); *Valley Forge Con. & Visitors v. Visitor's Service*, 28 F.Supp.2d 947, 952 (E.D. Pa. 1998) (no special or fiduciary relationship between corporate parties to an arms length business contract).

a constructive fraud where the purchaser of estate property was also the realtor of the executor and

the heirs moved to restrain the sale. These cases are wholly inapplicable to the instant commercial

setting. Arbitron is not in a relationship with Plaintiff.

### b.    Plaintiff has Not Alleged an Intentional Tort or Fraud Nor was Granted Permission by This Court to Do So

Plaintiff also argues that the economic loss doctrine should not apply because some courts

have refused to extend the economic loss doctrine to intentional torts and fraud cases, as if somehow

using the word "intentional" can make its negligence claim anything other than a negligence claim.

Plaintiff argues that *O'Keefe v. Mercedes-Benz United States*, 2003 U.S. Dist. LEXIS 5715

(E.D. Pa. 2003), should govern although it goes against the Third Circuit Court of Appeal's decision

in *Werwinski v. Ford Motor Co.*, 286 F.3d 661 (3rd Cir. 2002). However, Plaintiff is wrong, not only

because the Third Circuit decision is controlling but because both *Werwinski* and *O'Keefe* only

address the issue of whether the economic loss doctrine applies to fraud and statutory causes of

action, not negligence.[2]

The *O'Keefe* decision, on which Plaintiff relies, held:

> Pennsylvania's common law economic loss doctrine trumped Pennsylvania's
> statutory consumer protection statute [the UTPCPL]. The panel held that
> consumers who allege they were intentionally defrauded may only recover
> actual damages. We cannot follow the panel's decision when it is not in
> harmony with Pennsylvania state law because: (1) in Pennsylvania common
> law may not overrule legislative intent and violate a **statute**; (2) Pennsylvania
> courts have refused to apply the economic loss doctrine in consumer common

---

[2]This Court did not grant nor did plaintiff ever seek permission of the court to add a new claim for fraud or for any other intentional tort. Leave to replead was limited to claims for commercial disparagaement and common law negligence. Decision and Order dated December 31, 2002.

law **intentional fraud** suits; (3) Pennsylvania courts have allowed treble
damage awards in **consumer fraud cases** pursuant to the UTPCPL without
reference to the economic loss doctrine; (4) Pennsylvania courts since
Werwinski have continued to do so; and (5) the panel based its decision
entirely on a U.S. District Court for the Western District of Wisconsin case
applying Wisconsin law which is not binding on Pennsylvania courts.

*O'Keefe v. Mercedes-Benz United States*, 2003 U.S. Dist. LEXIS 5715, *17-8 (E.D. Pa. 2003)

(emphasis added). *O'Keefe* is inapposite as that case only addresses claims for intentional fraud

and/or statutory causes of action, not negligence actions such as Plaintiff's claim which sounds in

negligence, i.e. duty, breach, causation, and damage.

Indeed, all of Plaintiff's cited authority (which is copied from a string cite in *Werwinski* at

*35-6) deals with allegations of misrepresentation, intentional torts and fraud, not a claim for

negligent interference with prospective business relations. For example, in *KNK Med. - Dental*

*Specialties, Ltd. v. Tamex Corp.*, 2000 U.S. Dist. LEXIS 14536, *16 (E.D. Pa. 2000), the court noted

that there "is a split of authorities among Pennsylvania district courts as to whether the economic

loss doctrine applies to **intentional fraud claims**." **(Emphasis added)**. In *Polymer Dynamics, Inc.*

*v. Bayer Corp.*, 2000 U.S. Dist. LEXIS 11493, *20-1 (E.D. Pa. 2000) the court explained that the

economic loss doctrine was not applicable to a claim for fraud. In *Montgomery County v. Microvote*

*Corp.*, 2000 U.S. Dist. LEXIS, *23 (E.D. Pa. 2000) the court dismissed plaintiff's negligence and

negligent misrepresentation claims against the defendant based on the economic loss doctrine, but

sustained plaintiff's fraud and breach of warranty claims. In *North Am. Roofing & Sheet Metal Co.,*

*Inc., v. Building & Constr. Trades Council of Phila. & Vicinity, AFL-CIO*, 2000 U.S. Dist. LEXIS

2040, *28 (E.D. Pa. 2000), the court granted defendant's motion to dismiss plaintiff's negligent

misrepresentation claims based on the economic loss doctrine, noting that the exception for

intentionally false representations did not apply because plaintiff had only plead negligence. Finally, in *Auger v. Stouffer Corp.*, 1993 U.S. Dist. LEXIS 12719, *11 (E.D. Pa. 1993), the court dismissed plaintiff's gross negligence claim based upon the economic loss doctrine but sustained plaintiff's claim for intentional misrepresentation.

If Plaintiff is going to argue that it falls into an exception for intentional torts or fraud claims, it should have so plead. However, Plaintiff has not plead an intentional tort or fraud and could not sustain such a claim for a variety of reasons. Instead, Plaintiff chose to plead negligence (i.e., duty, breach, causation, damages) and is not does not fall into an exception despite using the word "intentional" or "recklessness" in its negligence claim.

## III.    CONCLUSION

For all the foregoing reasons, Plaintiff's Amended Complaint should be dismissed in its entirety for failure to state claims upon which relief can be granted.

Dated: May 15, 2003                          Respectfully submitted,

                                             Alfred Fabricant, Esq.
                                             Marc Lieberstein, Esq.
                                             Douglas Hahn, Esq.
                                             **OSTROLENK, FABER, GERB & SOFFEN, LLP**
                                             1180 Avenue of the Americas
                                             New York, New York 10036
                                             Telephone: (212) 382-0700
                                             Facsimile: (212) 382-0888

                                                  - and -

                                             **SPECTOR, GADON & ROSEN, P.C.**

By: _David Picker_
      David B. Picker, Esq.
      Monica Mathews, Esq.
Seven Penn Center
1635 Market Street, 7th Floor
Philadelphia, Pennsylvania 19103
Telephone: (215) 241-8888
Facsimile: (215) 241-8844

Attorneys for Defendant

F:\27745\001\pleadings\ReplyBriefSecAmCplt.wpd

## CERTIFICATE OF SERVICE

It is hereby certified that a true copy of the foregoing REPLY MEMORANDUM IN

SUPPORT OF MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

PURSUANT TO FED. R. CIV. P. RULE 12(b)(6) was served by first class mail, postage prepaid

on this 15th day of May, 2003 as follows:

Robert J. Sugarman, Esq.
SUGARMAN & ASSOCIATES
11th Floor, Robert Morris Building
100 North 17th Street
Philadelphia, Pennsylvania 19103
Facsimile: (215) 864-2501

Attorney for Plaintiff

Monica S. Mathews

00612928.1