IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

---

BRUNSON COMMUNICATIONS, INC :
:
*Plaintiff,* :
: Civil Action No.: 02 CV. 3223
v. :
:
ARBITRON, INC. :
:
*Defendant.* :

---

**O R D E R**

AND NOW, this ____ day of _____, 2003, upon consideration of Plaintiff Brunson Communications, Inc.'s Motion, and Supplement to Motion, to Compel Production of Documents and Answers to Interrogatories, and Defendant Arbitron, Inc.'s opposition thereto, it is hereby

ORDERED, ADJUDGED and DECREED that said motion is DENIED in its entirety.

BY THE COURT:

_____
, U.S.D.J.

IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

---

BRUNSON COMMUNICATIONS, INC.

        Plaintiff,

  v.

ARBITRON, INC.

        Defendant.

Civil Action No.: 02 CV. 3223

---

**DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFF'S MOTION/SUPPLEMENTAL MOTION TO COMPEL**

Defendant Arbitron, Inc. ("Defendant" or "Arbitron") hereby submits this Memorandum of Law in Opposition to Plaintiff Brunson Communications, Inc. ("Plaintiff" or "Brunson") Motion/Supplemental Motion to Compel (hereinafter collectively referred to as the "Motion").

Plaintiff's Motion should be denied because: (i) Plaintiff's document requests are wholly irrelevant to the claims now asserted in Plaintiff's Second Amended Complaint, *i.e.*, commercial disparagement and negligence; and (ii) because plaintiff's document requests are designed purely to burden and harass Arbitron and to cause Arbitron to needlessly incur attorneys fees. Arbitron rightfully objected to said document requests because they (a) concern subject matter that this Court dismissed from Plaintiff's prior causes of action; (b) demand an overwhelming amount of documents and information that would entail great expense for Defendant to gather and produce; and (c) concern highly proprietary confidential customer and supplier information

00614345.1

which Defendant cannot produce until a protective order is agreed to by the parties and entered by the Court.

The Court should also note that Arbitron has already produced over a thousand pages of documents responsive to Plaintiff's relevant document requests to the claims at issue, and for this reason as well, Plaintiff's Motion should be denied with respect to those document requests.

Plaintiff's Motion should also be denied with respect to its interrogatories because Plaintiff's interrogatories far exceed the limit imposed by Rule 33(a), and Plaintiff did not obtain Defendant's consent or leave from the Court before serving these objectionable interrogatories. Moreover, Brunson has failed to demonstrate any "good cause" supporting an exception to Rule 33(a). Plaintiff's interrogatories are also improper as they suffer from the same deficiencies noted above for its document requests.

It is clear from Plaintiff's conduct in this case to date, and the nature of its discovery demands, that Plaintiff's real goal is to harass and interfere with Defendant's business in every respect. The Court limited Plaintiff's claims to the remaining alleged causes of action identified in Plaintiff's Second Amended Complaint, namely, commercial disparagement and negligence. Putting aside Defendant's pending motion to dismiss these claims, these remaining alleged claims are very narrow in scope, and do not permit Plaintiff to now seek discovery of every facet of Defendant's business, *e.g.*, the specifications for, and the manufacturers of, all the equipment comprising Defendant's survey system; or the relationship between Arbitron and Nielsen.

Such discovery demands have no relationship to the commercial disparagement or negligence claims alleged on Plaintiff's Second Complaint. These demands represent just two examples of Plaintiff's attempt to go on a fishing expedition through Arbitron's business. The

Court should not permit Plaintiff to conduct discovery in this manner. Accordingly, Defendant respectfully submits that the Court should deny the Motion in its entirety, and/or in the alternative, decide Arbitron's pending motion to dismiss before addressing the discovery matters in Plaintiff's Motion.

I.    **PLAINTIFF'S INTERROGATORIES ARE IMPROPER**

    A.    **Plaintiff's Interrogatories Violate The Federal Rules of Civil Procedure**

Rule 33(a) of the Federal Rules of Civil Procedure provides:

> Without leave of court or written stipulation, any party may serve upon any other party written interrogatories, not exceeding 25 in number including all discrete subparts, to be answered by the party served...Leave to serve additional interrogatories shall be granted to the extent consistent with the principles of Rule 26(b)(2).

Fed.R.Civ.P. 33(a) (emphasis added).

In this case, a review of Plaintiff's interrogatories, attached to Plaintiff's moving papers, shows that Plaintiff has far exceeded the limit imposed by Rule 33(a). Although Rule 33(a) does not define the term "discrete subparts," federal courts have concluded that:

> Probably the best test of whether questions with a single interrogatory are subsumed or related, is to examine whether the first question is primary and subsequent questions are secondary to the primary question. Or, can the subsequent question stand alone? Is it independent of the first question? Genuine sub-parts should not be counted as separate interrogatories notwithstanding that they are joined by a conjunctive word and may be related.

Nyfield v. Virgin Islands Telephone Corp., 200 F.R.D. 246, 247-48 (D.V.I. 2001); see also Poles v. St. Joseph's Univ., 1995 U.S. Dist. LEXIS 9053 (E.D. Pa. 1995). Thus, for example, an interrogatory asking the reason for the elimination of the plaintiff's position, and the identity of

persons involved in the decision, count as two separate interrogatories. Nyfield, 200 F.R.D. at 248. Similarly, an interrogatory about receipt of benefits and the efforts and action taken in order to comply with the terms thereof, also counts as two separate interrogatories. Id.[1]

In this case, Plaintiff has propounded interrogatories far exceeding the 25 allowed by Rule 33(a), without obtaining Arbitron's consent or prior leave from the Court. Indeed, most of Plaintiff's interrogatories contain numerous discrete subparts and further discrete subparts within the subparts. Even a generous count shows that Plaintiff's interrogatories, spanning 13 pages of text, add up to at least 42 separate interrogatories.[2]

For example, Plaintiff's Interrogatory No. 1 purports to ask 12 separate and discrete questions as follows:

**INTERROGATORY NO. 1(a):**
With respect to each piece of equipment necessary for Arbitron to survey signal in the cable of a station please identify the vendor.

**INTERROGATORY NO. 1(b):**
Please identify the vendor(s) of each piece of equipment necessary to connect plaintiff's cable to defendant's survey system.

---

[1] Plaintiff cites Barron v. St. Joseph's University, et al., 01-CV-3063 for the proposition that "substantially similar subparts were treated as plaintiff proposes" in that case. Nothing can be further from the truth. In the first place, the court in Barron, only issued a one sentence order compelling answers to interrogatories, but without any explanation or discussion as to the basis for its decision. There is no holding in Barron that the interrogatories there, were, in fact, not discrete subparts. Hence, the Barron case provides no guidance at all. Second, it cannot be said that the interrogatories in Barron are similar to those served in the instant case. In this case the subparts are clearly not genuinely related subparts but rather, are separate and discreet interrogatories. Accordingly, the Barron case neither contradicts the cases cited herein, nor supports Plaintiff's Motion.

[2] Plaintiff's numerous document requests contained in those interrogatories have not been separately counted and are excluded from the total number of interrogatories.

**INTERROGATORY NO. 1(c):**
Please identify each purchase order or other contract arrangement between defendant and each vendor identified in interrogatories #1 and/or #2 including the equipment purchased, the date of order, the date of delivery, and the disposition of each piece of equipment utilized including plaintiff survey.

**INTERROGATORY NO. 1(d):**
Please identify the person(s) responsible for determining the amount of equipment to be used to conduct the test, and the stations to be included, and why.

**INTERROGATORY NO. 1(e):**
Please identify each person who is aware prior to May 2002 that defendant could not obtain sufficient equipment to connect all stations in the first test; the date upon each such person became aware of such inability; and all persons to whom such knowledge was communicated.

**INTERROGATORY NO. 1(f):**
Please describe in detail all efforts which defendant made to obtain the necessary equipment to connect plaintiff, including the name(s) of all vendors (and the representatives of each) who were contacted, the date of each such contact, the response of each such contact, and what follow up effort was made by the defendant.

**INTERROGATORY NO. [No Number in Original]:**
Please identify the date and order number of each order that was placed by defendant in order to obtain equipment necessary to connect plaintiff's signal.

**INTERROGATORY NO. 1(g):**
Please describe in detail why defendant could not obtain the necessary equipment in time to include plaintiff in the first test. (March - May 2001).

**INTERROGATORY NO. 1(h):**
Please identify by manufacturer and source the precise piece(s) of equipment which defendant could not procure in time to include plaintiff in the first test.

**INTERROGATORY NO. 1(i):**

Please identify each piece(s) of equipment which was used to connect plaintiff, the source (vendor of such equipment), the date of purchase, and the date of delivery of each such piece of equipment.

**INTERROGATORY NO. 1(j):**
Please provide an item by item description of each such piece of equipment.

**INTERROGATORY NO. 1(k):**

Please state whether defendant's base equipment (the equipment which receives the signals, and processes them) had capacity to handle plaintiff's signal transmittals along with others that were included in the first test. If not, please state when such equipment required such capability, and identify the vendor and date of purchase.

Interrogatory No. 1, as well as Plaintiff's Interrogatory Nos. 2, 3, and 9, are broken down into discrete and separate subparts which are independent of the initial inquiry. For example, in Interrogatory No. 1, subpart (a) asks for the identity of the vendor for each piece of equipment, but discrete subpart (d) asks for the identity of each person who is responsible for determining the amount of equipment used to conduct the test and the stations to be included and subpart (g) asks for the reason why defendant could not obtain the necessary equipment in time to include plaintiff in the first test.

Arbitron's Answers and Objections to the remaining interrogatories are also attached to Plaintiff's moving papers. Defendant specifically identifies, by number, the discrete subparts to each of Plaintiff's interrogatories, which total at least 42 separate interrogatories. Defendant does not want to take up this Court's time to analyze each and every one of Plaintiff's interrogatories. It is clear, however, as set forth in Arbitron's Answers and Objections, that Plaintiff's claim that its interrogatories "do not exceed twenty-five" is specious, at best. For this reason alone, Plaintiff's Motion should be denied as it relates to Plaintiff's interrogatories.

### B.   Plaintiff Has Not Shown Any "Good Cause" under Rule 33(a)

Plaintiff's alternative argument that this Court should order Defendant to answer all the interrogatories for "good cause," even if they exceed the limit in Rule 33(a), also fails as a matter of law. Any party seeking leave to serve more interrogatories than that contemplated by Rule

33(a) "must make a particularized showing of why the discovery is necessary." <u>Archer Daniels Midland Co. v. Aon Risk Services, Inc. of Minnesota</u>, 187 F.R.D. 578, 586 (D.Minn. 1999).

Here, Plaintiff's claim that "good cause" exists is based on nothing more than the bald assertion that "the inquiries are necessary." (Pl.'s Motion at 3). Such conslusory allegations are legally inadequate to justify an exception to Rule 33(a), and indeed demonstrate a fundamental misunderstanding of the Rule's purposes. <u>See</u> <u>Archer Daniels</u>, <u>supra</u> (denying Defendant's request to serve additional interrogatories where request lacked any showing that specific interrogatories are required to properly defend itself against plaintiff's claims); <u>Capacchione v. Charlotte-Mecklenburg Schools</u>, 182 F.R.D. 486, 492 (W.D.N.C. 1988) (same, where party did not explain subject matter of interrogatories).

Plaintiff apparently views the Rules as mere technicalities to be ignored. The limit on interrogatories was designed to avoid unnecessary burden on the parties and to serve the interests of expediency and efficiency in the discovery process. Plaintiff has failed to satisfy its burden to show the existence of any "good cause" for the Court to make an exception to the Rules in this case.

Further undermining any "good cause" for Plaintiff are Defendant's well grounded objections to Plaintiff's interrogatories. <u>Morrision v. Philadelphia Hous. Auth.</u>, 203 F.R.D. 195, 196 (E.D. Pa. 2001) ("A party moving to compel bears the initial burden of showing the relevance of the requested information."). Plaintiff has not met this burden as Plaintiff has failed

to identify which Interrogatories it is attempting to compel answers to, and has made no showing of the relevance or significance of any particular interrogatory objected to by Defendant.[3]

For example, Interrogatory No. 1 concerns the identity of vendors for Arbitron's survey equipment, installation, purchase orders, etc. Such information has absolutely nothing to do with the commercial disparagement/negligence issues in this case. Plaintiff's commercial disparagement claim concerns alleged statements which disparage Plaintiff. Plaintiff's negligence claim concerns Arbitron's alleged legal duty to include Plaintiff in the Arbitron survey because Arbitron should have known that the failure to include Plaintiff in the survey would result in harm to Plaintiff. No reasonable explanation exists as to how an interrogatory such as Interrogatory No. 1, concerning Arbitron's survey equipment, and the vendors therefor, relates back to either of Plaintiff's claims. Plaintiff cites to the testimony of Arbitron's Kevin Smith concerning Arbitron's lack of equipment as somehow justifying Interrogatory No. 1. But whether or not Arbitron had a sufficient inventory of encoders or decoders in the Spring of 2002 is totally irrelevant to both the disparagement and the negligence claims. The pertinent question is whether Arbitron had a legal duty to encode all of the stations in the market not whether Arbitron intentionally failed to encode Brunson. Negligence is not an intentional tort. Consequently, Interrogatory No. 1 is simply irrelevant and overly broad, and should be stricken.

---

[3] Importantly, Arbitron provided complete responses to a number of the very Interrogatories that Plaintiff may now be moving to compel. Arbitron provided complete response to, inter alia, Interrogatory Nos. 1(d), 1(e), 1(g), 2(b), 2(c), 2(d), 5, 6, and 7. Moreover, a number of Plaintiff's Interrogatories call for the disclosure of confidential information, to which Arbitron requested that Plaintiff move for entry of a suitable protective order, i.e., Interrogatories No. 1(a), 1(b), 1(c), 1(f), [No Number in Original], 1(h), 1(i), 1(j), 1(k), 3 and 4. Plaintiff has made no attempt to move for the entry of a protective order.

Interrogatory Nos. 3, 4, 8 and 9 should also be stricken because they too request information that is completely unrelated to the disparagement and negligence claims described in Plaintiff's Second Amended Complaint. Many of plaintiff's interrogatories relate to the nature of the business relationships between Arbitron and Nielsen. This information is no longer relevant to any pending claim.

For the reasons set forth above and in Defendant's Answers and Objections to Plaintiff's Interrogatories, the remaining interrogatories that Defendant objected to should be deemed as vague, irrelevant and/or overly broad, and accordingly, stricken.[4]

## II.     PLAINTIFF'S DOCUMENT REQUESTS DEMAND MATERIAL THAT IS IRRELEVANT, OVERLY BROAD AND HIGHLY CONFIDENTIAL

### A. Plaintiff's Document Requests Violate the Federal Rules

Fed. R. Civ. P. Rule 34 provides that "any party may serve on any other party a request (1) to produce . . . any designated documents . . . which constitute or contain matters within the scope of Rue 26(b)." Fed. R. Civ. P. Rule 26(b) provides that "parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party."

Here, Plaintiff has exceeded the bounds of rationality and requested documents from Defendant that are so far removed from the disparagement and negligence claims alleged in this

---

[4] Arbitron also objected to many of Plaintiff's Interrogatories on the ground that the information requested was confidential. Plaintiff never proposed a stipulated protective order to Arbitron, and hence, Arbitron cannot produce non-objectionable confidential information until the stipulation to, and entry of, a protective order.

00614345.1                                       9

case that the court should consider sanctioning Plaintiff for making its motion, and awarding Defendant its attorney fees for having to respond.

### B. Plaintiff's Document Demands Are Improper As They Relate to Plaintiff's Dismissed Antitrust and Unfair Competition Actions

Plaintiff's Document Request Nos. 1, 2 and 4 are improper for being irrelevant to the disparagement and negligence claims at issue as follows:

**DOCUMENT REQUEST NO. 1:**
Please produce a full set of specifications for the defendant's survey system.

**DOCUMENT REQUEST NO. 2:**
Please produce a list of each and every vendor of each and every piece of equipment identified in response to Request No. 1.

**DOCUMENT REQUEST NO. 4:**
Please produce each and every document constituting and relating to the relationship of the defendant and Nielsen, involving the Philadelphia market, in whole or in part.

Arbitron rightfully objected to these requests as overly broad and unduly burdensome. Arbitron further objects to the relevance of these request as the specifications for Arbitron's proprietary survey system, equipment vendors, and "relationship" with Nielsen, if any, has no rational relationship to Plaintiff's commercial disparagement or negligence claims and has no tendency to make the existence of any fact that is of consequence to the determination of either Plaintiff's negligence or commercial disparagement claims more probable or less probable than it would be without the evidence. These requests only relate to Plaintiff's antitrust and other claims, which the court has dismissed with prejudice. A copy of Arbitron's Responses and Objections are also annexed to Plaintiff's moving papers.

With respect to Document Request Nos. 3 and 7, Arbitron already produced over 1000 responsive documents concerning correspondence and other documents related to the Philadelphia test market, including, presentations to the Philadelphia market, press releases, correspondence with Brunson, test data, and CD-ROMS containing the test data. Arbitron has properly objected to producing documents to Document Request Nos. 3, 5-9 on the ground that no protective order has been entered, and therefore, Arbitron cannot produce its highly confidential information to Plaintiff until one is agreed upon and entered by the court. Arbitron has objected to these document requests on other grounds as well, namely, that they were overly broad, requested irrelevant information, and/or were vague. While Arbitron agreed to provide documents to Plaintiff in response to these requests, Plaintiff should be ordered to clarify and narrow each request so that each is tailored to request information that relates to the disparagement and negligence claims at issue.

### III. CONCLUSION

Plaintiff's Motion should be denied in its entirety.

Dated: May 27, 2003

Respectfully submitted,

Alfred Fabricant, Esq.
Marc Lieberstein, Esq.
Douglas Q. Hahn, Esq.
OSTROLENK, FABER, GERB & SOFFEN, LLP
1180 Avenue of the Americas
New York, New York 10036
Telephone: (212) 382-0700
Facsimile: (212) 382-0888

- and -

SPECTOR GADON & ROSEN, P.C.

By: /s/ David Picker
David B. Picker, Esq.
1635 Market Street, 7th Floor
Philadelphia, Pennsylvania 19103
Telephone: (215) 241-8888
Facsimile: (215) 241-8844

Attorneys for Defendant

## CERTIFICATE OF SERVICE

It is hereby certified that a true copy of the foregoing **DEFENDANT'S MEMORANDUM LAW IN OPPOSITION TO PLAINTIFF'S MOTION/SUPPLEMENTAL MOTION TO COMPEL**, was served by first class mail, postage prepaid on this 27th day of May, 2003 as follows:

>Robert J. Sugarman, Esq.
>Sugarman & Associates, PC
>Robert Morris Building, 11th Floor
>100 North 17th Street
>Philadelphia, Pennsylvania 19103
>Telephone: (215) 864-2500
>Facsimile: (215) 864-2501
>
>Attorney for Plaintiff

_____
David B. Picker

F:\27745\001\pleadings\MotCompelOpp.wpd

00614345.1